# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Related with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**PLAINTIFFS' *UNOPPOSED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL, AND <u>APPOINTMENT OF SPECIAL MASTER FOR MEDIATION</u>**

Dated: October 13, 2025

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

[additional counsel listed on signature page]

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................ iv

I.     INTRODUCTION ....................................................................................... 1

II.    BACKGROUND ........................................................................................ 2

     A.    Summary Of Plaintiffs' Claims And Allegations. ................................... 2

     B.    Procedural History And Settlement Negotiations. ................................. 4

III.   THE PROPOSED SETTLEMENT ............................................................. 6

     A.    Settlement Class Definition. ................................................................... 6

     B.    Monetary Relief And The Global Settlement Fund. ............................... 7

     C.    Opt-In Procedure ..................................................................................... 8

     D.    Appointment of the Special Master For Mediation. ............................... 9

     E.    Notice And Settlement Administration. .................................................. 9

     F.    Release. ................................................................................................. 10

     G.    Attorneys' Fees And Service Awards. ................................................... 10

IV.   DISCUSSION ............................................................................................ 11

     A.    The Proposed Settlement Class Should Be Certified For Settlement Purposes ..... 11

          1.    The Settlement Class is sufficiently numerous. ......................... 12

          2.    Common questions of law and fact predominate. ...................... 13

          3.    Plaintiffs' claims are typical of the Settlement Class Members they seek to represent. ......................................................................... 15

          4.    Plaintiffs and Class Counsel have fairly represented the Settlement Class and will continue to protect their interests. ............................................... 16

          5.    A class action is a superior method of resolving this controversy. ............ 18

          6.    The Settlement Class is ascertainable. ...................................... 19

| | | | |
|---|---|---|---|
| B. | | The Proposed Settlement Warrants Preliminary Approval. | 20 |
| | 1. | Plaintiffs and Class Counsel have capably represented the Settlement Class Members. | 21 |
| | 2. | The Settlement was negotiated at arm's length. | 22 |
| | 3. | The relief provided for the Settlement Class is fair given the real risks should this Litigation proceed. | 23 |
| | | a. The benefits of settlement outweigh the cost, risk, and delay of further litigation. | 24 |
| | | b. The proposed method of distributing relief to the Settlement Class is effective. | 26 |
| | | c. The Settlement Agreement does not present any concerns regarding Class Counsel's fee award. | 27 |
| | | d. There are no agreements to be identified under Rule 23(e)(3). | 28 |
| | 4. | The Settlement treats all Settlement Class Members equitably. | 28 |
| C. | | Plaintiffs' Counsel Should Be Appointed As Class Counsel. | 28 |
| V. | | PROPOSED SCHEDULE | 29 |
| VI. | | CONCLUSION | 29 |
| | | Certificate of Service | 31 |

## TABLE OF AUTHORITIES

**Supreme Court Cases** **(pages)**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ........................................................................... 15, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ................................................................................. 11

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ................................................................................. 19

*Gen. Tel Co. of Sw. v. Falcon,*
   457 U.S. 147 (1982) ................................................................................. 19

*Ill. Brick Co. v. Ill.,*
   431 U.S. 720 (1977) ................................................................................. 25

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ................................................................................. 19

*Tyson Foods, Inc. v. Bouaphakeo,*
   577 U.S. 442 (2016) ................................................................................. 14

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ................................. 13

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................. 21

*Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.,*
   747 F.3d 489 (7th Cir. 2014) .................................................................. 12

*Arreola v. Godinez,*
   546 F.3d 788 (7th Cir. 2008) .................................................................. 11

*Barnes v. Air Line Pilots Ass'n, Int'l,*
   310 F.R.D. 551 (N.D. Ill. 2015) ............................................................. 12

*Beaton v. SpeedyPC Software,*
   907 F.3d 1018 (7th Cir. 2018) ................................................................ 14

*Bell v. PNC Bank, Nat'l Ass'n,*
   800 F.3d 360 (7th Cir. 2015) .................................................................. 13

*Bynum v. Cmty. Loans of Am., Inc.*,
   20-CV-1564-PP, 2022 WL 10073493 (E.D. Wis. Oct. 17, 2022) ............................................ 22

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................................................. 16

*Charvat v. Valente*,
   No. 12-CV-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ....................................... 22, 26

*Fischer v. Instant Checkmate LLC*,
   19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ........................................................ 16

*Goldsmith v. Tech. Sols. Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................ 24

*Golon v. Ohio Savs. Bank*,
   No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) .................................................. 14

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ................................................................................................. 17

*Howard v. Cook Cnty. Sheriff's Off.*,
   989 F.3d 587 (7th Cir. 2021) ............................................................................................ 13, 15

*Hudson v. Libre Tech., Inc.*,
   No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ......................... 25

*In re Steel Antitrust Litig.*,
   No. 08 C 5214, 2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ............................................ 15, 16

*In re Urethane Antitrust Litig.*,
   251 F.R.D. 629 (D. Kan. 2008) .............................................................................................. 16

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ............................................................................................. 14

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................................................. 18

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ................................................................................................. 12

*Lechuga v. Elite Eng'g, Inc.*,
   559 F. Supp. 3d 736 (N.D. Ill. 2021) ..................................................................................... 16

*Leeder v. Nat'l Assoc. of Realtors*,
    601 F. Supp. 3d 301 (N.D. Ill. 2022) ................................................................. 25

*Maxwell v. Arrow Fin. Servs., LLC.*,
    No. 03-cv-1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004) ............................ 18

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ........................................................................... 14

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
    No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020) ............................ 29

*Muir v. Nature's Bounty (DE), Inc.*,
    No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) .............................. 15

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ............................................................. 12, 19, 20

*Mulvania v. Sheriff of Rock Island Cnty.*,
    850 F.3d 849 (7th Cir. 2017) ........................................................................... 12

*Murray v. E*Trade Fin. Corp.*,
    240 F.R.D. 392 (N.D. Ill. 2006) ....................................................................... 13

*Parker v. Risk Mgmt. Alternatives, Inc.*,
    206 F.R.D. 211 (N.D. Ill. 2002) ....................................................................... 16

*Randolph v. Crown Asset Mgmt., LLC*,
    254 F.R.D. 513 (N.D. Ill. 2008) ....................................................................... 13

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) .............................................................................. 17

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ........................ 21, 23

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ........................................................................... 15

*Starr v. Chi. Cut Steakhouse*,
    75 F. Supp. 3d 859 (N.D. Ill. 2014) ................................................................. 17

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................................... 13

*T.K. ex rel. Leshore v. Bytedance Tech. Co., Ltd.*,
   No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022)............................................ passim

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
   97 F.R.D. 668 (N.D. Ill. 1983) ................................................................................................. 14

*Wahl v. Midland Credit Mgmt., Inc.*,
   243 F.R.D. 291 (N.D. Ill. 2007) .............................................................................................. 18

*Young v. Rolling in the Dough, Inc.*,
   No. 17-cv- 07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ......................................... 22, 26

**Other Authorities**

Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment ........................... 20, 21, 22

*Manual for Complex Litigation (Fourth)* § 21.63 (2004) ........................................................... 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... passim

**Treatises**

Newberg & Rubenstein on Class Actions § 13:1 (6th ed.).................................................... 11, 18

## I.    **INTRODUCTION**

Plaintiffs James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez a/k/a Aleandro Lopez (collectively, "Plaintiffs") hereby move for preliminary approval their proposed Class Settlement Agreement with the Settling Defendants.[1] Plaintiffs and Class Counsel are pleased to report that this Settlement could favorably resolve on a nationwide basis Plaintiffs' claims for damages and injunctive relief against thirteen Defendants named in seven related cases before this Court.[2] This Settlement comes after numerous mediations and months of complex negotiations overseen by the Hon. James F. Holderman (Ret.), former chief judge of the Northern District of Illinois.

The claims in each of the related cases arise out of an alleged antitrust conspiracy among the National Association of REALTORS® ("NAR") and real estate brokers and franchisors. Plaintiffs allege that the NAR promulgated anticompetitive rules designed to keep brokers' commissions artificially elevated, and that the Defendants and their co-conspirators adopted, implemented, and enforced those unlawful restraints in residential real estate transactions. This conspiracy allegedly impaired competition in the market for residential real estate broker services nationwide to the detriment of homebuyers, who unwittingly paid the inflated commissions as part of their respective home purchases.

With the assistance of Judge Holderman, Plaintiffs have negotiated an early "icebreaker"

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to be interpreted in accordance with the definitions in Parties' Settlement Agreement, a true and accurate copy of which is attached hereto as Exhibit A.

[2] The related cases include: *Tuccori v. At World Properties, LLC*, 1:24-cv-00150; *Maslanka et al. v. Baird & Warner, Inc.*, No. 1:24-cv-02399; *Hartz v. Real Estate One, Inc.*, No. 1:24-cv-03160; *Wallach et al. v. Silvercreek Realty Group LLC*, No. 1:24-cv-3356; *Zawislak et al. v. Equity Realtors L.L.C. d/b/a Equity Real Estate et al.*, No. 24-cv-9039; *Lopez v. NextHome, Inc. et al.*, No. 24-cv-11735; and *Lopez v. Jennifer Ames Chicago, Inc.*, No. 1:25-cv-04207.

settlement. The Settlement establishes a Global Settlement Fund that will pool payments from the initial Settling Defendants and grow over time through an opt-in procedure. The Settling Defendants have committed to contribute a total of $3,202,000.00 if the Settlement is finally approved, and Class Counsel have already secured agreements from several additional Defendants to opt in and make material contributions to the Settlement following approval. Thus, preliminarily approving this Settlement now will deliver significant value to the Settlement Class by encouraging further opt-in settlements that will continue to grow the Global Settlement Fund going forward.

In light of this relief, as well as other considerations discussed below, the proposed Settlement readily satisfies the prerequisites for preliminary approval under Federal Rule 23(e) and applicable precedent. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, certify the proposed Settlement Class for settlement purposes, appoint Plaintiffs as the Class Representatives for the Settlement Class, appoint Plaintiffs' undersigned attorneys as Class Counsel, and appoint Judge James F. Holderman (Ret.) as Special Master for Mediation.

## II. <u>BACKGROUND</u>

### A. Summary Of Plaintiffs' Claims And Allegations.

The claims in this Litigation arise out of alleged anticompetitive conduct in the market for residential real estate broker services. (*See, e.g., Tuccori* Class Action Compl. ¶¶ 1-24, Dkt. 1-2). Plaintiffs claim that the Defendants conspired with the NAR and its members such as real estate brokerages, real estate franchisors, and other real estate companies, to artificially stabilize real estate broker commissions at elevated rates in violation of Section 1 of the Sherman Antitrust Act and certain state antitrust and consumer protection laws. (*Id.* ¶¶ 2, 10-18, 21-22, 34-46).

Specifically, Plaintiffs allege that the Defendants and their alleged co-conspirators agreed to implement and follow certain anticompetitive restraints governing residential real estate transactions, and that this agreement constituted an unlawful conspiracy in restraint of trade. (*Id.* ¶¶ 38-84). These anticompetitive restraints include certain NAR rules, policies, and practices that:

 i. required every seller broker, when listing a property on an multiple listing service ("MLS"), to make a blanket unilateral offer of compensation to any buyer broker who may find a buyer for the home;

 ii. required that identical compensation terms be simultaneously offered to every buyer broker without regard to their experience, the services they are providing to the buyer, or the financial arrangement they have made with the buyer;

 iii. concealed the disclosure of the commission due to the seller broker and the portion of the commission earmarked for the buyer broker;

 iv. permitted buyer brokers to misrepresent that their services are free;

 v. permitted buyer brokers to filter listings based on the offered commissions and to steer homebuyers toward higher-commission listings;

 vi. severely restricted the ability to modify the buyer broker commission after the buyer broker conveys a purchase offer; and

 vii. limited access to the lockboxes that provide physical access to homes to NAR members.

(*Id.*). Plaintiffs claim that these rules and the alleged conspiracy reduced or eliminated competition among buyer-brokers, effectively raising, fixing, and maintaining commissions at artificially high levels that would not have existed in a competitive marketplace. (*Id.* ¶¶ 85-99). Plaintiffs further allege that buyer-broker commissions are incorporated into a home's purchase price, such that the conspiracy resulted in harm to homebuyers who paid elevated home prices incorporating the commissions. (*Id.*). The effects of the conspiracy allegedly extended nationwide and affected all residential real estate multiple listing services in the U.S., whether NAR-affiliated or not. (*Id.* ¶¶ 1, 91).

Plaintiffs assert claims for violations of (I) the Sherman Antitrust Act, 15 U.S.C. § 1; (II) violations of the Illinois Antitrust Act ("IAA"), 740 ILCS 10/1 *et seq.* and substantially similar antitrust statutes in other states; (III) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. and substantially similar consumer fraud statutes in other states; and (IV) unjust enrichment. (*See generally id.* ¶¶ 115-152). Each Plaintiff, both individually and on behalf of a putative nationwide class, seeks damages stemming from the elevated commissions as well as injunctive and declaratory relief.

### B. Procedural History And Settlement Negotiations.

Plaintiff Tuccori initiated the earliest-filed *Tuccori* action against Defendant At World Properties, LLC ("@properties") on December 8, 2023 in the Circuit Court of Cook County, Illinois. @properties removed the *Tuccori* action to federal court on January 5, 2024, where it was assigned to the Hon. Lindsay C. Jenkins. (Dkt. 1). Each of the other cases related with *Tuccori* was either removed to or filed directly in this District. The related cases include *Maslanka et al. v. Baird & Warner, Inc.*, No. 1:24-cv-02399, filed on February 22, 2024; *Hartz v. Real Estate One, Inc.*, No. 1:24-cv-03160, filed on March 20, 2024; *Wallach et al. v. Silvercreek Realty Group LLC*, No. 1:24-cv-3356, filed on April 25, 2024; *Zawislak et al. v. Equity Realtors L.L.C. d/b/a Equity Real Estate et al.*, No. 24-cv-9039, filed on September 26, 2024; *Lopez v. NextHome, Inc. et al.*, No. 24-cv-11735 (*Lopez I*), filed on November 14, 2024; and *Lopez v. Jennifer Ames Chicago, Inc.*, No. 1:25-cv-04207 (*Lopez II*), filed on April 17, 2025.

On May 28, 2025, the Court granted Plaintiffs' Motion to Relate and Reassign Cases Pursuant to Local Rule 40.4. (Dkt. 43). The Court's May 28, 2025 Order deemed *Tuccori*, *Maslanka*, *Hartz*, *Wallach*, *Zawislak*, and *Lopez I* related pursuant to L.R. 40.4. Additionally, the other related cases were reassigned to this Court pursuant to L.R. 40.4(b) (if they were not already

assigned). On October 1, 2025, the Court entered an Order holding that *Lopez II* was also related and reassigning that case to this Court's calendar as well. (Dkt. 51). On October 6, 2025, Plaintiffs moved for an order consolidating the seven related cases in the Litigation for settlement purposes. (Dkt. 55).[3]

On April 15, 2024, this Court maintained a stay of proceedings in *Tuccori* at an early stage of the litigation to enable the Parties to engage in mediation. (Dkt. 18). The Parties in the *Tuccori* matter attended a mediation on May 21, 2025 before the Honorable James F. Holderman of JAMS Chicago. (Declaration of Judge James F. Holderman (Ret.) ¶ 7, hereinafter "Holderman Decl."); (Declaration of Paul T. Geske in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ¶ 17, hereinafter "Geske Decl."). That mediation was productive and led to a potential framework for a class settlement. (*Id.*); (Dkt. 21). All the other cases in the Litigation followed a similar path with respect to the Settling Defendants. (Holderman Decl. ¶¶ 8-12); (Geske Decl. ¶¶ 18-19). The settlement negotiations in the Litigation spanned many months and included nine other, separate mediation sessions, including mediations with:

- Defendant Baird & Warner, Inc. before Judge Holderman on August 1, 2024;

- Defendant Real Estate One, Inc. before Tom McNeill of Tom McNeill ADR on June 13, 2024;

- Defendant NextHome, Inc. before Judge Holderman on February 11, 2025;

- Defendant Shorewest, Inc. before Judge Holderman on March 6, 2025;

- Defendant Realty Executives Intl. Svcs. LLC before the Hon. Morton Denlow (Ret.) of JAMS Chicago on July 8, 2025;

---

[3] Following consolidation, Plaintiffs intend to file an amended consolidated complaint to unify Plaintiffs' claims and allegations and further streamline the procedure for approval of the settlements with the settling Defendants.

- Defendant Side, Inc. before Judge Holderman on August 21, 2025;

- Defendants The Keyes Company and Illustrated Properties, LLC before Judge Holderman on August 27, 2025;

- Defendant Vanguard Properties, Inc. before Judge Holderman on September 25, 2025; and

- Defendants Engel & Völkers Americas, Inc. and Engel & Völkers GmbH before Judge Holderman on September 29, 2025.

(Holderman Decl. ¶¶ 8-12); (Geske Decl. ¶¶ 18-19). Each of these mediations was conducted at arms-length and in an adversarial manner, as were the discussions with Settling Defendants who chose to engage in direct negotiations. (Holderman Decl. ¶¶ 10-15); (Geske Decl. ¶¶ 19-20). Even after each mediation session, negotiations continued through numerous calls and email exchanges that spanned many months. (Holderman Decl. ¶ 12); (Geske Decl. ¶ 20). Throughout this time, the Settling Parties discussed the framework and contours of the Settlement Agreement, including the appropriate class definition, the scope of the release, and the various provisions governing implementation of the Settlement. (Geske Decl. ¶ 20-22). Once negotiations concluded, the Settling Parties executed the final Settlement Agreement that is now being submitted to the Court for approval. (*Id.* ¶ 21).

## III.  **THE PROPOSED SETTLEMENT**

### A.  **Settlement Class Definition.**

The proposed Settlement entails certification of the Settlement Class defined as follows:

All persons who purchased a home that was listed on an MLS anywhere in the United States where a commission was paid to any brokerage in connection with the transaction during the Class Period.

6

(Ex. A ¶¶ 2, 9, 15, 20). In accordance with the Parties' Settlement Agreement, expressly excluded from the Settlement Class are persons who submit a valid request to be excluded, the Parties' counsel, the Special Master for Mediation, the Court and staff to whom this case is assigned, and any immediate family members of the Court or its staff. (*Id.* ¶ 15). These exclusions are standard in class action settlements and do not materially affect the size or makeup of the Settlement Class. The Settlement Class definition also excludes persons who have separately released their claims against a Settling Defendant as part of certain other court approved class settlements, but only as to that Settling Defendant (as those individuals would have already released the Released Claims against such Settling Defendant). (*Id.*).

### B. Monetary Relief And The Global Settlement Fund.

The Settlement provides, among other things, for the establishment of a Global Settlement Fund comprised of the contribution payments from all Settling Defendants and any Opt-In Settlors. (*Id.* ¶¶ 6, 42, 69-73) Upon final approval, the Global Settlement Fund will be distributed to Settlement Class Members after deductions for any court-approved award of reasonable attorneys' fees and litigation expenses; court-approved notice and administration costs; court-approved service award(s); and any other court-approved settlement-related costs. (*Id.*). The Global Settlement Fund is non-reversionary in that the net funds after any Court-approved deductions, awards, and expenses will be distributed to Settlement Class Members according to a plan of allocation with no amount reverting to the Settling Defendants or Opt-In Settlors, regardless of the number of claims made. (*Id.* ¶¶ 69-70, 73).

As stated above, the Settling Defendants have agreed to contribute a total of $3,202,000.00 according to the terms of each Settling Defendant's respective addendum.[4] Plaintiffs and Class

---

[4] True and accurate copies of all Settling Defendants' addenda are attached hereto as <u>Exhibit B</u>.

Counsel have also secured agreements from several additional entities to participate as Opt-In Settlors and make contributions that will further increase the Global Settlement Fund. (Geske Decl. ¶ 24). Plaintiffs and Class Counsel anticipate that the Global Settlement Fund will continue to grow following preliminary approval once other real estate industry participants are given the opportunity to opt in. (*Id.*).

### C. Opt-In Procedure.

As noted above, the proposed Settlement would establish an opt-in procedure where non-parties, such as other real estate brokerages, could elect to participate in the Settlement and obtain a release for the Released Claims in exchange for contributing a payment to the Global Settlement Fund and adopting the Settlement's practice changes. (Ex. A ¶¶ 35-36). There are three pathways to opt-in: 1) option 1 involves attending a mediation before the Special Master for Mediation or another agreed upon mediator; 2) option 2 provides a formula for a contribution payment and is available only to entities that have entered into a court-approved class settlement with home sellers in the *Burnett*, *Gibson*, or *Keel* cases; 3) and option 3 allows real estate brokerages to opt in by making a payment based a formula applied to their Total Transaction Volume (as defined in the Opt-In Agreement) over the most recent four calendar years. (*Id.*).

Opt-In Settlors must also agree to an Opt-In Agreement substantially similar to Appendix A attached to the Settlement Agreement. (*Id.*). All Opt-In Agreements will be subject to Court approval. (*Id.* ¶ 40). Plaintiffs will move for preliminary approval of any settlements they reach with Opt-In Settlors no later than 35 days after the end of the 180-day Opt-In Period, which beings following entry of an order granting preliminary approval to the Settlement Agreement. (*Id.* ¶¶ 8, 40).

**D.      Appointment of the Special Master For Mediation.**

As part of this Motion, Plaintiffs are seeking the appointment of Judge James F. Holderman (Ret.) of JAMS Chicago as Special Master for Mediation. (Ex. A ¶¶ 32-33); (Holderman Decl. ¶ 16). In this role, Judge Holderman will be available to conduct, supervise, and oversee mediations with non-parties who elect to pursue Option 1 of the Settlement's opt-in procedures to become an Opt-In Settlor. (*Id.*). Judge Holderman is exceptionally qualified and particularly well-suited for this appointment because he is already familiar with the claims and history of this Litigation, having successfully mediated the claims against Defendants @properties, Baird & Warner, NextHome, Shorewest, Side, and others. (Holderman Decl. ¶¶ 8, 16).

**E.      Notice And Settlement Administration.**

Under this Settlement, notice and claims administration will be held in abeyance until the Global Settlement Fund reaches a certain "Threshold Amount." (Ex. A ¶¶ 25, 51).[5] The Parties have agreed to engage Epiq Class Action & Claims Solutions, Inc. – a nationally recognized class action settlement administrator with substantial experience in antitrust matters – to assist with administering the Settlement. (*Id.* ¶ 14); (*see generally* Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ¶¶ 1-7, 9, hereinafter "Azari Decl."). The Settlement Administrator will be responsible for carrying out the Settlement's Notice Plan and administering the claims process subject to Class Counsel's supervision. (Ex. A ¶¶ 51-52); (Azari Decl. ¶¶ 9, 17-49). The Settlement contemplates a two-pronged notice plan with direct notice by email to Class Members for whom

---

[5] The Settlement is contingent on the Global Settlement Fund reaching the "Threshold Amount," unless some or all of the Settling Parties agree to proceed at a lower amount in connection with the rescission rights described in Section P of the Settlement Agreement. (Ex. A ¶¶ 82-84). By confidential filing submitted herewith as <u>Exhibit C</u>, Plaintiffs are disclosing the "Threshold Amount" to the Court for in camera review. Plaintiffs are confident that, by the end of the Opt-In Period, the Global Settlement Fund will exceed the Threshold Amount, which is designed to ensure that the Settlement provides substantial relief to class members after accounting for the anticipated costs of notice and administration.

contact information is reasonably available, and notice by publication to all other Class Members, including via a settlement website. (Ex. A ¶¶ 51-52); (Azari Decl. ¶¶ 17-42).

Notice will not begin immediately upon preliminary approval. Rather, following the conclusion of the Opt-In Period, and after the Court has ruled on the approval of any agreements with any Opt-In Settlors, Class Counsel will submit a Notice Motion that includes the proposed form of, method for, and dates of dissemination of notice as well as the procedure for submission of claims. (Ex. A ¶¶ 51, 59).

### F. Release.

In exchange for the relief described above, the Settlement Class Members will provide the Settling Defendants and Opt-In Settlors, as well as affiliated persons, with a release of any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate. (*Id.* ¶¶ 11-12, 29-30). The Released Parties include the Settling Defendants, Opt-In Settlors, and their franchisees, sub-franchisors, and licensees and their respective employees, agents, and independent contractors. (*Id.* ¶ 11). The release is more fully described in Section E of the Settlement Agreement. (*Id.* ¶¶ 29-31).

### G. Attorneys' Fees And Service Awards.

Subject to Court approval, any award of attorneys' fees, costs, and expenses to Class Counsel, and any service awards to the Class Representatives, are to be paid from the Gross Settlement Fund. (*Id.* ¶¶ 6, 74). When class notice is issued following the conclusion of the Opt-

In Period, the notices will disclose Class Counsel's requested award for fees and costs and for service awards. Following an opportunity for the Settlement Class to review and consider the requested awards, Class Counsel will move for approval of the requested awards in advance of final approval.

## IV.    <u>DISCUSSION</u>

There are three stages for the approval of a class action settlement. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. Fed. R. Civ. P. 23(e); Newberg & Rubenstein on Class Actions § 13:1 (6th ed.); *see generally Manual for Complex Litigation (Fourth)* § 21.63 (2004).

At this first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A.    **The Proposed Settlement Class Should Be Certified For Settlement Purposes.**

Taking the second prong first, the Court can readily certify the Settlement Class for settlement purposes. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, the Settlement Class must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, where, as here, certification is sought pursuant to Rule 23(b)(3), it must be

shown that (i) common questions of law or fact predominate over individual issues, and (ii) a class action the superior device to resolve the claims. *Id.*

Finally, Rule 23 also contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all relevant Rule 23(a) and (b)(3) prerequisites, as well as Rule 23's implicit ascertainability requirement.

### 1. The Settlement Class is sufficiently numerous.

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017); *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (collecting cases).

Here, based on home transaction statistics, the Settlement Class is dispersed throughout the United States and likely numbers at least in the hundreds of thousands of individuals.[6] *See Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) (finding that numerosity was satisfied where "it's reasonable to believe [the class is] large enough to make joinder impracticable and thus justify a class action suit.") (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677-78 (7th Cir. 2009)). Thus, the Settlement Class is large enough that

---

[6] Quick Real Estate Statistics, NAR.Realtor.com, https://www.nar.realtor/research-and-statistics/quick-real-estate-statistics (reporting over 4 million existing home sales for 2023). Although many claims arising out of home purchases will be excluded from this Settlement by virtue of the class settlements in the *Burnett*, *Gibson*, and *Keel* cases, there is still a sufficiently numerous population of homebuyers who are not part of those settlement classes, which do not include persons with buyer-only claims during the settlements' class periods. *See* Highlights From the Profile of Home Buyers and Sellers, NAR.Realtor.com, https://www.nar.realtor/research-and-statistics/research-reports/highlights-from-the-profile-of-home-buyers-and-sellers (finding in a 2023 Profile of Home Buyers and Sellers that 32% of all home purchasers were first-time homebuyers).

individual joinder would be impractical. *See Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008) ("As few forty class members can render joinder impractical, especially when the members are 'widely scattered and their holdings are generally too small to warrant undertaking individual actions.'" (quoting *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006)). The numerosity requirement is therefore met.

### 2. Common questions of law and fact predominate.

Rule 23(a) next requires that the claims of a certified class present at least one common question of law or fact. Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Even a single common question will do.") (cleaned up). Rule 23(a)(2)'s commonality requirement and Rule 23(b)(3)'s predominance requirement—that common questions "predominate over any questions affecting only individual members"—are both closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately").

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Dukes*, 564 U.S. at 350). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* Therefore, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted).

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 607 (7th Cir. 2021). Predominance is satisfied "when there exists generalized evidence

that proves or disproves an element on a simultaneous, class-wide basis . . . [since s]uch proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Predominance is satisfied "when common questions represent a significant aspect of [the] case and can be resolved for all members of [the] class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (cleaned up). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

In this case, there are numerous common questions of law and fact including (1) whether the Defendants joined in an alleged conspiracy to artificially inflate the cost of commissions in residential real estate transactions; (2) whether the NAR rules at issue constitute restraints of trade in violation of federal and/or state antitrust and consumer protection laws; (3) whether the alleged conspiracy violates Section 1 of the Sherman Act and analogous state antitrust and consumer protection statutes; (4) whether a per se or rule of reason analysis should apply; and (5) whether Plaintiffs and other members of the Settlement Class are entitled to, among other things, damages, and/or injunctive relief. Each of these issues presents questions that are common across the Settlement Class. *See, e.g.*, *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy . . . ."); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1256 (10th Cir. 2014) (affirming trial court's

14

certification of class in price-fixing case where "two common questions . . . could yield common answers at trial: the existence of a conspiracy and the existence of impact").

Because answering each of these questions would resolve all Settlement Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is satisfied with respect to the Settlement Class. *In re Steel Antitrust Litig.*, No. 08 C 5214, 2015 WL 5304629, at *5 (N.D. Ill. Sept. 9, 2015) ("In many cases alleging a violation of antitrust laws, predominance is a test 'readily met.'" (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *see also Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (recognizing that predominance is satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues") (internal quotations omitted). Accordingly, the commonality and predominance requirements are satisfied.

### 3. Plaintiffs' claims are typical of the Settlement Class Members they seek to represent.

The next certification prerequisite – typicality – requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the settlement class, typicality is generally satisfied. *See Fischer v. Instant Checkmate*

15

*LLC*, 19 C 4892, 2022 WL 971479, at *7 (N.D. Ill. Mar. 31, 2022) ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Typicality is met here because the Plaintiffs each allege the same legal theories based on the same central facts: that Defendants conspired to inflate real estate brokerage commissions by restraining negotiations and competition over commissions. *See In re Steel*, 2015 WL 5304629, at *4 (finding typicality where "the claims of each named representative and class members are based on the same legal theory and arise from the same course of conduct"). Indeed, courts regularly find typicality satisfied in cases alleging a price-fixing conspiracy. *See*, *e.g., id.* at *3 (finding typicality satisfied where "plaintiffs and all class members alleg[e] the same antitrust violations by defendants") (citation and quotation marks omitted); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 640 (D. Kan. 2008) *aff'd*, 768 F.3d 1245 (10th Cir. 2014)). Thus, Plaintiffs' claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker v. Risk Mgmt. Alternatives, Inc*., 206 F.R.D. 211, 213 (N.D. Ill. 2002). Moreover, Plaintiffs and the other putative Class members all seek the same damages: the overpaid commissions. Accordingly, the typicality requirement of Rule 23(a) is satisfied for purposes of preliminary approval.

### 4. Plaintiffs and Class Counsel have fairly represented the Settlement Class and will continue to protect their interests.

The final Rule 23(a) prerequisite – adequacy – requires a finding that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v. St. Vincent Health,*

*Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, Plaintiffs and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiffs must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Where "the claims of the named Plaintiffs are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede the named Plaintiffs' ability to adequately represent the interest of the class members," the named plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874.

Plaintiffs have no conflicts nor adverse interests with the Settlement Class, as their claims and interests in this Litigation are completely aligned with the Settlement Class Members that they seek to represent. Plaintiffs suffered the same alleged injury as every other member of the Settlement Class – the alleged overpayment of broker commissions incorporated into the purchase price of their homes – and their interest in redressing the alleged antitrust violations of is identical to the interests of all other members of the Settlement Class. To pursue that interest, Plaintiffs retained counsel, brought the Litigation, and considered and approved the Settlement terms.

Likewise, proposed Class Counsel readily satisfy the adequacy requirement. Class Counsel are highly experienced in prosecuting class actions generally and antitrust class actions in particular. (Geske Decl. ¶¶ 5-12); (Declaration of Jonathan M. Jagher ¶¶ 4-8, hereinafter "Jagher Decl."). Plaintiffs' counsel have been appointed as class counsel in numerous class actions in the Northern District of Illinois, Illinois state courts, and other courts throughout the country. (*Id.*) (identifying cases). Accordingly, because Plaintiffs and Class Counsel will fairly and adequately

protect the interests of the Class, the adequacy requirement – like the other Rule 23(a) factors – is satisfied.

### 5. A class action is a superior method of resolving this controversy.

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. A class action is superior to multiple individual actions where "litigation costs are high, the likely recovery is limited," and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell v. Arrow Fin. Servs., LLC.*, No. 03-cv-1995, 2004 WL 719278, at *6 (N.D. Ill. Mar. 31, 2004). When a large, relatively diffuse class is allegedly entitled to relief on account of uniform, widespread conduct, a class action is often the superior method of adjudicating the particular controversy. *See Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 301 (N.D. Ill. 2007) (finding superiority satisfied where the defendant "engaged in standardized conduct . . . that affected many consumers" but individual claims "would likely be too small to vindicate through an individual suit").

In this case, as in most antitrust class actions, although the alleged conduct at issue generates widespread harm, individual recoveries are relatively modest. *See* 2 Newberg & Rubenstein on Class Actions § 4:69 ("representative litigation is superior" when class members' claims "may be so small that it would be a waste of their time and/or resources to litigate individually"). Additionally, many Settlement Class Members may not have access to competent counsel willing to invest the time and resources to prosecute their claims. Absent a class action, the only option is to bring many small, individual actions resulting in minimal recovery, so it is unlikely that the Settlement Class Members would be able to obtain relief through individual lawsuits. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (recognizing that antitrust litigation can be "prohibitively expensive for class members with small claims to proceed

18

individually" as litigation "require[s] significant fees toward expert analysis and testimony"). As such, adjudicating the Settlement Class Members' claims as part of a classwide settlement will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion[.]" *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually).

Moreover, because the Class would be certified for settlement purposes, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, the Court can resolve the claims of the Class Members in one stroke, substantially serving "economies of time, effort, and expense, and promot[ing] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615 (quoting Fed. R. Civ. P. 23 advisory committee's notes). Accordingly, superiority is satisfied and the Court should provisionally certify the Class for purposes of settlement.

### 6. The Settlement Class is ascertainable.

In addition to satisfying the explicit requirements of Rule 23(a) and (b)(3), the proposed Settlement Class satisfies Rule 23's implicit ascertainability requirement, which requires that the class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the

19

adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. ex rel. Leshore v. Bytedance Tech. Co., Ltd.*, No. 19-cv-7915, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

The proposed Settlement Class is objectively defined, with membership turning on whether a person (1) purchased a home listed on an MLS (2) during the applicable Class Period. (*See* Ex. A ¶ 15). This definition is, as required, clear and based on objective criteria. Because the Settlement Class satisfies all of Rule 23(a) and (b)(2)'s explicit requirements for certification, as well as the implicit ascertainability requirement, it can be certified for purposes of settlement and for entry of a final judgment after final approval, if granted.

### B. The Proposed Settlement Warrants Preliminary Approval.

In addition to finding that the Settlement Class is certifiable, the Court must also consider whether it "will likely be able to . . . approve the [settlement] proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the Settlement is "fair, reasonable, and adequate" after considering whether: (A) the Class Representative and Class Counsel have adequately represented the class; (B) the Settlement was negotiated at arm's length; (C) the relief provided to the Settlement Class is adequate; and (D) the Settlement treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The proposed Settlement here readily satisfies these requirements.

#### 1. Plaintiffs and Class Counsel have capably represented the Settlement Class Members.

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This "look[s] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23

Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes"). Ultimately, this factor is satisfied where the named plaintiff "participated in the case diligently . . . [a]nd class counsel fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate information base' while negotiating for the settlement," *T.K.*, 2022 WL 888943, at *11 (quoting 2018 Committee Notes).

Here, Class Counsel's capable prosecution of the Litigation demonstrates that this factor is satisfied. Class Counsel investigated Plaintiffs' and the Class Members' claims, pursued multiple separate actions simultaneously against well-defended companies, opposed attempts to dismiss the Litigation in the *Zawislak* action, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Class Counsel also engaged in months of complex negotiations and conducted ten separate mediation sessions. Prior to reaching a settlement in each instance, Class Counsel exchanged information and briefing as part of the mediation process, gaining "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943, at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting that the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case"). The results achieved follow from this diligence and preparation, demonstrating that the proposed Settlement Class was adequately represented.

Plaintiffs also participated in this Litigation, including by helping with the investigation of their claims, providing records about their respective home transactions, assisting in the preparation of the initial complaints before filing, becoming familiar with the Litigation generally, and reviewing and approving the Settlement Agreement before signing it. Plaintiffs also stood

ready to participate in discovery had this Litigation not settled. In other words, Plaintiffs have and continue to adequately represent the Settlement Class they seek to represent.

### 2.    The Settlement was negotiated at arm's length.

The second Rule 23(e)(2) factor – whether the settlement was negotiated at arm's length – addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. The arm's length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943, at *11 (internal quotation omitted).

As stated above, the proposed Settlement here is the product of arm's-length negotiations that spanned many months and ten separate mediations. (Holderman Decl. ¶¶ 8-15); (Geske Decl. ¶¶ 18-19). Each Settling Defendant's participation in the Settlement was separately negotiated, and every Settling Defendant is represented by different defense counsel. Most importantly, the negotiations that led to this Settlement involved three experienced and impartial mediators: Judge James Holderman, Judge Morton Denlow, and Mr. McNeill. (Geske Decl. ¶ 18). "The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). In particular, Judge Holderman's assistance both during and after the seven mediation sessions he personally oversaw was instrumental in bringing this Litigation to a negotiated resolution. *See, e.g.*, *Charvat v. Valente*, 12-CV-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019); *Young v. Rolling in the Dough, Inc.*, No. 17-cv- 07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020). Further, the fact that the Settling Parties' negotiations spanned many months before coming to conclusion is indicative of arm's-length negotiating. (*See* Holderman Decl. ¶¶ 8, 10-14); (Geske Decl. ¶¶ 18-20); *Bynum v. Cmty. Loans of Am., Inc.*, 20-CV-1564-PP, 2022 WL 10073493, at *2 (E.D. Wis. Oct. 17, 2022)

(fact that the settlement was negotiated "over a period of numerous months" is evidence of arm's-length negotiations) (quotations omitted).

The terms of the Settlement Agreement itself further underscore the arm's-length nature of the Settling Parties' negotiations. The Global Settlement Fund is non-reversionary and the Settlement Agreement contains no provisions that might suggest fraud or collusion. *See Snyder*, 2019 WL 2103379, at *4 (finding that a settlement was negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the Settlement's release is not overbroad. The Settling Defendants are not getting any release that they are not paying for, and the release is tethered to the factual underpinnings of the Litigation. Thus, there was no collusion between Class Counsel and the Settling Defendants.

> **3.     The relief provided for the Settlement Class is fair given the real risks should this Litigation proceed.**

The next Rule 23(e)(2) factor – whether "the relief provided for the class is adequate" – includes four express considerations to take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

        **a.**      **The benefits of settlement outweigh the cost, risk, and delay of further litigation.**

The Settlement's benefits are an excellent result for the Class Members when balanced against the downsides of continued litigation. The Settlement Class faced significant obstacles above and beyond the risks inherent in any trial or appeal, and this Settlement secures immediate relief rather than forcing the Settlement Class to endure years of costly and contentious litigation. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.").

*First*, the Settlement provides meaningful monetary compensation. As stated above, the Settling Defendants will be contributing to a Global Settlement Fund for distribution to Class Members who submit valid claims. The total of all Settling Defendants' contributions currently exceeds $3.2 million, and Class Counsel anticipates that this amount will grow substantially after other alleged co-conspirators are given an opportunity to opt into the Settlement. (Geske Decl. ¶ 24). In addition to the Settlement's monetary relief, the Settlement also provides prospective relief by implementing or maintaining certain practice changes aimed at addressing the conduct that led to the Litigation in the first place. (Ex. A ¶ 78).

*Second*, the Settlement's monetary relief is especially notable given the recent downturn in the real estate industry, which has put a strain on virtually all real estate brokerages and impacted the resources available to fund a settlement like the one here. The entire real estate industry has faced significant headwinds over the last several years due to challenging financial conditions and prolonged high interest rates. According to data from the NAR, home sales reached a nearly 30-year low in 2023, representing an 18.7% decline from 2022 after sales of homes declined by 18%

in 2022.[7] Many real estate brokerage companies suffered large financial losses during this period that have drained their cash balances and net assets and limited their ability to generate profits into the future. These conditions have introduced significant concerns about ability to pay issues. Continued litigation would only exacerbate these concerns. The expense and burden of protracted litigation would consume money that can instead be made available to the Class Members through this Settlement. The Settlement thus captures these available assets while still allowing the Settling Defendants to continue operations.

**Third**, the Settlement is a great outcome for the Settlement Class given the significant risks involved in continued litigation. Plaintiffs acknowledge that the Defendants have firmly denied the existence of an anticompetitive conspiracy and presented other challenges to Plaintiffs in proceeding with their claims. For example, another court in this District has held that homebuyers are merely indirect—rather than direct—purchasers, which deprives them of the ability to seek damages under the Sherman Act. *See generally Leeder v. Nat'l Assoc. of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022) (citing *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 729 (1977)). Further, in resolving motions to dismiss in the *Zawislak* action, this Court dismissed the Plaintiffs' claims without prejudice and with leave to replead. While Plaintiffs believe that this dismissal was the result of curable pleading errors, they acknowledge that the Defendants intend to raise other defenses if this case were to proceed further. These defenses, if successful, could result in Plaintiffs and the proposed Class Members receiving materially less in compensation, or potentially no recovery whatsoever.

Even if Plaintiffs were to prevail on the merits, they would also need to succeed in obtaining class certification, which would be highly contested. The prospect of adversarial class certification

---

[7] Home sales slowed to a crawl in 2023. Here's why., CBS News, https://www.cbsnews.com/news/nar-existing-home-sales-price-2023/ (citing publicly reported home sale statistics from the NAR).

presents serious risks on its own. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc*., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class.").

In sum, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."). The Settlement provides meaningful relief to the Settlement Class, avoiding potentially years of complex litigation and appeals with a risk of no recovery whatsoever.

**b.** **The proposed method of distributing relief to the Settlement Class is effective.**

Next, the Settlement's straightforward process for claims submission and distribution further confirms the adequacy of relief. In evaluating the "method of distributing relief," courts assess whether the methods proposed for processing claims are "so complex that they discourage class members from pursuing valid claims." *T.K.*, 2022 WL 888943, at *14. Here, that is not a concern. With the assistance of the Settlement Administrator, the Notices will provide a detailed summary of relevant information about the Settlement, including the settlement website address and how Settlement Class Members can submit a claim online or by mail. With any method of submitting a claim, members of the Settlement Class will be given a menu of digital payment options.

Further, this Settlement does not implicate any concerns that can arise in reversionary settlements where defendants may be incentivized to keep claims low. This is not a reversionary settlement, and upon final approval, the Settling Defendants and Opt-In Settlors will pay the full amount of their contributions to the Gross Settlement Fund with no possibility of any funds reverting. *See T.K.*, 2022 WL 888943, at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendants or class counsel.").

       **c.**    **The Settlement Agreement does not present any concerns regarding Class Counsel's fee award.**

The next consideration under Rule 23(e)(2)(C) is "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). It's worth emphasizing, however, that when evaluating the adequacy of relief under Rule 23(e)(2)(C), the Court's decision on settlement approval is completely distinct from its determination of fees. *T.K.*, 2022 WL 888943, at *15. ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement.").

Here, the Settlement Agreement does not purport to guarantee any specific amount or percentage of the Global Settlement Fund as attorneys' fees for Class Counsel. Further, there is no clear-sailing agreement, so the Settling Defendants are free to contest the amount of any fees requested. If the Settlement proceeds to final approval, the Settlement Class Members will have an opportunity to review and object to Class Counsel's requested fee award well in advance of final approval – as it will be disclosed in the class notices and posted on the Settlement website before the deadline to object or opt out of the Settlement. Further, no attorneys' fees will be paid until after the Settlement is finally approved. Accordingly, the Settlement Agreement does not contain any provisions that raise red flags about an award of attorneys' fees for Class Counsel.

        **d.**      **There are no agreements to be identified under Rule 23(e)(3).**

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). Here, there are no Agreements to be identified; all terms and agreements affecting Settlement Class Members are contained within the Settlement Agreement and its attachments.

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement militate in favor of finding that the Rule is satisfied here.

        **4.**      **The Settlement treats all Settlement Class Members equitably.**

The final Rule 23(e)(2) factor asks whether the settlement "treats class members equitably relative to each other." This Settlement plainly does. This Settlement involves only one Settlement Class, and the terms of the Settlement apply uniformly across the Settlement Class Members. Every Settlement Class Member will be eligible for monetary relief and entitled to submit a claim to receive a payment. The amount of each payment will be determined equitably and according to a formula for allocation developed with the assistance of a damages expert. And a neutral third-party, the Settlement Administrator, will be processing payments. No group or individual will be unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting preliminary approval.

        **C.**      **Plaintiffs' Counsel Should Be Appointed As Class Counsel.**

Finally, if the Court finds that the Settlement Class is certifiable, it should appoint Plaintiffs' counsel as Class Counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the

types of claims asserting in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience litigating class actions and have been appointed as class counsel in many cases in this District and in other courts; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Geske Decl. ¶¶ 8-12, 23-26; Jagher Decl. ¶¶ 4-12). All the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiffs' counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element into the class certification process.") (quotations omitted).

## V. PROPOSED SCHEDULE

| Event | Settlement Agreement Timeline |
|---|---|
| Conclusion of the Opt-In Period | 180 days following entry of an order preliminarily approving the Settlement |
| Plaintiffs' Deadline to Move for Approval of Opt-In Settlors | No later than 35 days after the end of the Opt-In Period |
| Plaintiffs' Deadline to File Notice Motion | No later than 45 days after all settlements with Opt-In Settlors have been ordered preliminarily approved by the Court |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order (1) granting this Motion; (2) preliminarily approving the proposed Settlement Agreement; (3) preliminarily certifying the proposed Settlement Class for purposes of settlement and/or finding that the Settlement Class is likely to be certified for purposes of entering a final approval order; (4) appointing Plaintiffs James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez as Class Representatives; (5) appointing Myles

29

McGuire, Evan Meyers, and Paul T. Geske of McGuire Law, P.C. and Jonathan M. Jagher and Matthew W. Ruan of Freed Kanner London & Millen LLC as Class Counsel; (6) appointing the Honorable James F. Holderman (Ret.) as Special Master for Mediation; (7) setting deadlines based on the schedule proposed above; (8) enjoining the Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date; and (9) granting such further and additional relief as the Court deems reasonable and just.

Dated: October 13, 2025

Respectfully Submitted,

JAMES TUCCORI, COURTNEY FOREGGER, KEVIN CWYNAR, DAWID ZAWISLAK, MICHAEL D'ACQUISTO, and ALEJANDRO LOPEZ, individually and on behalf of similarly situated individuals

By: */s/ Paul T. Geske*
One of Plaintiffs' attorneys

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fklmlaw.com

Matthew W. Ruan
FREED KANNER LONDON

& MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
mruan@fklmlaw.com

*Counsel for Plaintiffs and the putative class
members*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on October 13, 2025 I caused the foregoing *Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement, Certification of Settlement Class, Appointment of Class Representatives and Settlement Class Counsel, and Appointment of Special Master for Mediation* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Paul T. Geske*