# Exhibit A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Related with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement ("Agreement") is made and entered into this 10th day of October, 2025 ("Execution Date"), by and between Plaintiffs James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez a/k/a Aleandro Lopez (collectively, "Plaintiffs"), both individually and on behalf of a Settlement Class (defined below) of similarly situated individuals, and the Settling Defendants (defined below) (the Plaintiffs and the Settling Defendants are collectively referred to herein as the "Parties" or "Settling Parties").

**A.** **Recitals**

WHEREAS, the cases covered by this Agreement include: *Tuccori v. At World Properties, LLC*, 1:24-cv-00150 (N.D. Ill.); *Maslanka et al. v. Baird & Warner, Inc.*, No. 1:24-cv-02399 (N.D. Ill.); *Hartz v. Real Estate One, Inc.*, No. 1:24-cv-03160 (N.D. Ill.); *Wallach et al. v. Silvercreek Realty Group LLC*, No. 1:24-cv-3356 (N.D. Ill.); *Zawislak et al. v. Equity Realtors L.L.C. d/b/a Equity Real Estate et al.*, No. 24-cv-9039 (N.D. Ill.); *Lopez v. NextHome, Inc. et al.*, No. 24-cv-

11735 (N.D. Ill.); *Lopez v. Jennifer Ames Chicago, Inc.*, No. 1:25-cv-04207 (N.D. Ill.) (collectively, the "Litigation");

WHEREAS, on May 28, 2025 and October 1, 2025, the Hon. Lindsay C. Jenkins entered Orders granting Plaintiffs' Motions to Relate and Reassign Cases Pursuant to Local Rule 40.4, and held that each of the actions comprising the Litigation are related under Northern District Local Rule 40.4;

WHEREAS, on October 6, 2025, Plaintiffs moved for an order consolidating the actions comprising the Litigation solely for settlement purposes;

WHEREAS, Plaintiffs allege that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, the Settling Defendants deny Plaintiffs' allegations and any charges of wrongdoing or liability of any kind for Plaintiffs' claims;

WHEREAS, Plaintiffs' counsel and counsel for the Settling Defendants engaged in extensive arm's-length settlement negotiations, including multiple formal, full-day mediations between certain Plaintiffs and certain Settling Defendants conducted by the Honorable James F. Holderman (Ret.) of JAMS Chicago, the former Chief Judge of the U.S. District Court for the Northern District of Illinois, ultimately culminating in this Agreement;

WHEREAS, Plaintiffs, through their counsel, conducted an investigation into the facts and law regarding the Settling Defendants' alleged participation in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that resolving their claims

2

against the Settling Defendants according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, the Settling Defendants believe that they are not liable for the claims asserted and have strong defenses to Plaintiffs' claims, but nevertheless have decided to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the nationwide releases, orders, and judgment contemplated by this Agreement, thereby resolving with finality all claims that Plaintiffs and the Settlement Class Members (defined below) have or could have asserted against the Released Parties (defined below);

WHEREAS, the Settling Defendants, in addition to the monetary compensation set forth below, have agreed to implement or maintain certain practice changes, as set forth in this Agreement;

WHEREAS, Plaintiffs and the Settling Defendants recognize the "ice-breaker" nature of this Agreement, and contemplate that Plaintiffs will reach settlements with other alleged co-conspirators;

WHEREAS, any claims asserted by the Settlement Class Members against non-settling defendants will continue notwithstanding this Settlement unless and until they agree to participate as Opt-In Settlors (defined below);

WHEREAS, Plaintiffs and the Settling Defendants understand that Plaintiffs will not move for approval of a Notice Plan (defined below) or seek final approval of this Agreement until additional settlements, with Opt-In Settlors or otherwise, are reached in conjunction with this Settlement.

WHEREAS, together with this Agreement, the Settling Defendants are executing individual addenda to this Agreement, attached hereto, that include terms unique or specific to each Settling Defendant (collectively, the "Addenda");

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and the Settling Defendants that the Litigation be settled, compromised, and dismissed with prejudice as to the Settling Defendants and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or the Settling Defendants, subject to the approval of the Court, on the following terms and conditions:

B.      **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Burnett" means the case captioned *Burnett v. The Nat'l Assoc. of REALTORS®*, No. 19-cv-00332 (W.D. Mo.), pending in the U.S. District Court for the Western District of Missouri, in which certain Settling Defendants have reached class settlements.

2.      "Class Period" means:

i.      from December 8, 2017, to date of Class Notice for homes in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, and Wyoming;

ii.     from December 8, 2018, to the date of Class Notice for homes in Arkansas, Illinois, Kentucky, and Missouri;

iii.    from December 8, 2019, to the date of Class Notice for all other homes across the United States.

3.     "Court" means the U.S. District Court for the Northern District of Illinois, Eastern Division.

4.     "Effective Date" means the date when both of the following conditions have occurred as to all Settling Defendants: (a) the Court has entered a final judgment and order approving the Settlement set forth in this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation as against the Settling Defendants with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Settlement and the entry of final judgment has expired or, if appealed, approval of the Settlement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

5.     "Gibson" means the case captioned *Gibson et al. v. The Nat'l Assoc. of REALTORS® et al.*, No. 4:23-cv-00788-SRB, pending in the U.S. District Court for the Western District of Missouri, in which certain Settling Defendants have reached class settlements.

6.     "Global Settlement Fund" means the balance in the Escrow Account (defined below) established as a qualified settlement fund by the Settlement Administrator (defined below) in which the Settling Defendants' Monetary Amounts shall be deposited, along with settlement payments from Opt-In Settlors. Pursuant to the terms of this Agreement, the Global Settlement Fund will be distributed to Settlement Class Members (defined below) less any (i) court-approved award of reasonable attorneys' fees; (ii) court-approved award of reasonable litigation expenses; (iii) court-approved notice and administration costs; (iv) court-approved service award(s); and (v) any other court-approved settlement-related costs.

7.     "Keel" means the case captioned *Keel et al. v. House of Seven Gables Real Estate, Inc.*, No. 4:25-00055 (W.D. Mo.), pending in the U.S. District Court for the Western District of Missouri, in which certain Settling Defendants have reached class settlements.

8.     "Opt-In Period" means the period of time beginning the day after the Court enters an order granting the Preliminary Approval Motion (defined below) and continuing for 180 days thereafter.

9.     "MLS" means any residential real estate multiple listing service in the U.S., whether or not it is NAR-affiliated, which, for avoidance of doubt, shall include, but is not limited to, the Real Estate Board of New York ("REBNY"), the REBNY Residential Listing Service ("RLS"), the Northwest Multiple Listing Service ("NWMLS"), West-Penn Multi-List, Inc. ("WPMLS"), and MLS Property Information Network ("MLS PIN").

10.    "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

11.    "Released Parties" means the Settling Defendants, including all of their respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders,

members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Settlement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

12.     "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or Settlement Class Members.

13.     "Settlement" means the settlement of the Litigation contemplated by this Agreement.

14.     "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc. or other independent third-party entity chosen by the Plaintiffs, subject to Court approval, to administer the notice and claims process.

15.     "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes, defined as: All persons who purchased a home that was listed on an MLS anywhere in the United States where a commission was paid to any brokerage in connection with the transaction during the Class Period. Notwithstanding the foregoing, the Settlement Class does

not include: persons who submit a valid request to be excluded from the Settlement Class; persons

who have separately released the Released Claims against a Settling Defendant in a court approved

class settlement in Burnett, Gibson or Keel, but only as to that Settling Defendant; the Parties'

counsel; the Special Master for Mediation; the Court and staff to whom this case is assigned, and

any immediate family members of the Court or its staff.

16.     "Settlement Class Counsel" means the following counsel:

Jonathan M. Jagher
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fklmlaw.com

Matthew W. Ruan
FREED KANNER LONDON & MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
mruan@fklmlaw.com

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

17.     "Settlement Class Member" means a member of the Settlement Class.

18.     "Settling Defendants" means, collectively, Defendant At World Properties, LLC

("@properties"), Defendant Baird & Warner, Inc. ("Baird & Warner"), Defendant Real Estate One,

Inc. ("Real Estate One"), Defendant Silvercreek Realty Group LLC ("Silvercreek"), Defendant

Equity Realtors, L.L.C. d/b/a Equity Real Estate ("Equity Realtors"), Defendant NextHome, Inc. ("NextHome"), Defendant Realty Executives Intl. Svcs. LLC ("Realty Executives"), Defendant Shorewest Realtors, Inc. ("Shorewest"), Defendant Side, Inc. ("Side"), Defendant Engel & Völkers Americas, Inc. and Defendant Engel & Völkers GmbH (together, the "E&V Entities").

19.     "Settling Defendants' Monetary Amounts" means, collectively, the @properties Monetary Amount, the Baird & Warner Monetary Amount, the Real Estate One Monetary Amount, the Silvercreek Monetary Amount, the Equity Realtors Monetary Amount, the NextHome Monetary Amount, the Realty Executives Monetary Amount, the Shorewest Monetary Amount, the Side Monetary Amount, and the E&V Entities Monetary Amount, which are set forth in the respective Addenda.

## C.     <u>Stipulation to Class Certification</u>

20.     The Settling Parties hereby stipulate, for purposes of this Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class described in Paragraph 15 shall be certified for settlement purposes only. The Settling Parties further stipulate that if, for any reason, the Settlement is rescinded, then the Settling Parties' stipulation to class certification as part of the Settlement shall become null and void.

21.     Neither this Agreement, nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement is intended to, or shall be construed as, or deemed to be evidence of an admission or concession by the Settling Defendants that a class should be or should have been certified for any purposes other than this Settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

D.      **Approval of this Agreement and Dismissal of the Litigation**

22.      The Settling Parties agree to make reasonable best efforts to effectuate this Agreement, including, but not limited to, seeking the Court's approval of procedures (including the giving of Class Notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against Settling Defendants.

23.      Within thirty (30) days after the Execution Date, or at any other time agreed to by the Settling Parties or ordered by the Court, Plaintiffs shall submit to the Court a motion seeking preliminary approval of this Settlement ("Preliminary Approval Motion"). The Preliminary Approval Motion shall include a proposed form of Order preliminarily approving the Settlement and enjoining the Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date. The text of the proposed order shall be agreed on by the Parties before submission of the Preliminary Approval Motion, and such agreement will not be unreasonably withheld. The Settling Defendants shall have a reasonable opportunity to review and comment on the Preliminary Approval Motion, and Plaintiffs shall reasonably consider the Settling Defendants' comments. To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Settling Parties will negotiate in good faith to attempt to modify the Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation.

24.      Within ten (10) days after the filing with the Court of this Agreement and the Preliminary Approval Motion, the Settlement Administrator shall, on behalf of the Settling Defendants, cause notice of the Agreement to be served upon the appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

Docusign Envelope ID: 0931FE37-80DD-4AA0-894B-AD6452EC926D

25.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of this Settlement and any other settlements that have been or are reached by the time of the Notice Motion.

26.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek the entry of an Order and final judgment ("Final Judgment Order"), the text of which the Settling Parties shall agree upon, and such agreement will not be unreasonably withheld by any Party. The terms of the proposed Final Judgment Order will include, at a minimum, the substance of the following provisions:

  i.     certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this Settlement;

  ii.     approving finally this Settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

  iii.     as to the Settling Defendants, directing that the Litigation be dismissed with prejudice and, except as provided for in this Agreement, without costs;

  iv.     reserving exclusive jurisdiction over the Settlement and this Agreement, including the interpretation, administration, consummation, and enforcement of this Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

  v.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal in the Litigation as to the Settling Defendants shall be final.

Docusign Envelope ID: 0931FE37-80DD-4AA0-894B-AD6452EC926D

27.     As of the Execution Date of the Agreement, the Settling Parties shall be bound by the terms of the Agreement and the Agreement shall not be rescinded except in accordance with Section P. This Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

28.     This Agreement (whether or not it becomes final), the final judgment, any and all negotiations, documents, and discussions associated with them, and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of any kind by the Settling Defendants or any other Released Party, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by the Settling Defendants or any other Released Party, or of the truth or validity of any of the claims or allegations or point of fact or law contained in any complaint or any other pleading filed in the Litigation, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Litigation, or in any other arbitration, action, or proceeding whatsoever against the Settling Defendants or any other Released Party. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by the Settling Defendants or any other Released Party, shall be referred to or offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

E.     **Release, Discharge, and Covenant Not to Sue**

29.     Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether

individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

30. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

13

Docusign Envelope ID: 0931FE37-80DD-4AA0-894B-AD6452EC926D

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

31.     The Releasing Parties intend by this Agreement to settle with and release only the Released Parties, and the Settling Parties do not intend this Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in this Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice,

negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

**F.**     **Appointment of the Special Master for Mediation**

32.     In the Preliminary Approval Motion, Plaintiffs will seek the appointment of the Hon. James F. Holderman (Ret.) of JAMS Chicago as Special Master for Mediation.

33.     Plaintiffs will request that the Court's Order approving the Preliminary Approval Motion state that the Special Master for Mediation:

     i.    will perform duties of conducting, supervising, and overseeing mediations with non-parties who elect to use the Special Master for Mediation pursuant to Option 1 in an effort to become an Opt-In Settlor;

     ii.    will carry out all duties personally or through others working under the supervision of or in conjunction with the Special Master for Mediation with reasonable diligence;

     iii.    has the authority to carry out the duties to facilitate mediations and settlements with non-parties, including the authority to require a non-party and/or its counsel to appear in person or remotely by videoconference for settlement conferences and mediations, but not have the authority to compel any entity to make or accept any specific offer of compromise;

     iv.    may communicate with negotiating parties or the Court *ex parte* to the extent required, in the exercise of the Special Master for Mediation's individual judgment, to carry out his duties;

     v.    is not required to preserve or file records related to the Special Master for Mediation's activities;

15

vi.    shall provide the Court reports upon the Court's request and subject to the
Court's discretion; and

vii.    will split charges for reasonable compensation and reimbursement for expenses
reasonably incurred in connection with the Special Master for Mediation's
duties evenly between Settlement Class Counsel and the non-party participating
in a particular mediation.

34.    The Parties are aware of no grounds for disqualification under 28 U.S.C. § 455 as
to the potential appointment of Judge Holderman as Special Master for Mediation.

**G.    <u>Non-Party Opt-Ins.</u>**

35.    The National Association of REALTORS®, and any real estate brokerage,
franchisor, or real estate company that is not a Party to this Settlement Agreement will be deemed
an Opt-In Settlor if, during the Opt-In Period, they fulfill the conditions in one of the Options
below:

i.    **<u>Option 1:</u>** The non-party and one or more Plaintiffs reach an agreement that
resolves Released Claims following non-binding mediation or otherwise. Any non-binding
mediation will occur before the Special Master for Mediation or another agreed upon
mediator. The costs of the mediation shall be split evenly between Settlement Class
Counsel and the non-party. All settlement discussions and materials exchanged during such
settlement negotiations, including the mediation, will be kept strictly confidential unless
and until filed with the Court.

ii.    **<u>Option 2:</u>** If the non-party is a party to a class settlement finally approved
in Burnett, Gibson or Keel, the non-party agrees to be bound by the terms of an Opt-In
Agreement, substantially in the form attached hereto as Appendix A, deemed offered by

Docusign Envelope ID: 0931FE37-80DD-4AA0-894B-AD6452EC926D

Plaintiffs as resolution for the claims against the non-party specified therein, and agrees among other things to pay total monetary consideration into the Global Settlement Fund equal to 25% of the non-party's settlement payment amount in Burnett, Gibson, or Keel.

       iii.    **Option 3:** If the non-party is a real estate brokerage, franchisor, or other real estate company, the non-party agrees to be bound by the terms of an Opt-In Agreement, substantially in the form attached hereto as Appendix A, deemed offered by Plaintiffs as resolution for the claims against the non-party specified therein, and agrees among other things to pay total monetary consideration into the Global Settlement Fund equal to 0.0005 multiplied by the non-party's average annual Total Transaction Volume (as defined in the Opt-In Agreement) over the most recent four calendar years.

36.     Plaintiffs and Settlement Class Counsel shall use their best efforts to resolve Released Claims with the National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to this Settlement Agreement during the Opt-In Period.

37.     The Settling Parties can agree that other non-parties who reach settlements of Released Claims, but who do not otherwise qualify under Paragraph 35 as Opt-In Settlors, are Opt-In Settlors.

38.     Plaintiffs shall not reach any agreement with an Opt-In Settlor that adversely impacts any rights under this Settlement.

39.     The day after the Opt-In Period ends, Settlement Class Counsel shall disclose to Settling Defendants the total of: (a) the Settling Defendants' Monetary Amounts; and (b) the monetary consideration to be paid into the Escrow Account (defined below) by the Opt-In Settlors (in aggregate, "Total Settlement Contributions").

40.     Plaintiffs shall move the Court for preliminary approval of any settlements they reach with Opt-In Settlors no later than 35 days after the end of the Opt-In Period.

41.     If any of the settlements reached with Opt-In Settlors are not preliminarily approved, Settlement Class Counsel must provide Settling Defendants, the day after the Court has decided all motions seeking preliminary approval of settlements with Opt-In Settlors, the total of: (a) the Settling Defendants' Monetary Amounts; and (b) the monetary consideration to be paid into the Escrow Account by the Opt-In Settlors whose settlements were preliminarily approved by the Court (in aggregate, "Revised Total Settlement Contributions").

**H.     Settling Defendants' Monetary Amounts**

42.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, the Settling Defendants shall pay their respective Monetary Amounts (defined in their respective Addenda) into the Escrow Account (defined below) according to the terms of their respective Addenda.

43.     Plaintiffs will include the total sum of the Settling Defendants' Monetary Amounts in their Preliminary Approval Motion. However, the dollar amount of each individual Settling Defendant's Monetary Amount shall remain confidential and shall not be disclosed to the public or any other Settling Defendant unless and until the dissemination of Class Notice occurs in accordance with Section J, below. Notwithstanding the foregoing, the Settling Parties agree that Plaintiffs will submit unredacted copies of each Settling Defendant's Addenda, including the Settling Defendants' Monetary Amounts, to the Court *in camera* confidentially and concurrently with the Preliminary Approval Motion.

44.     No part of the Settling Defendants' Monetary Amounts shall constitute, nor shall it be construed or treated as constituting, a payment for treble damages, fines, penalties, forfeitures, or punitive recoveries.

## I.      **Escrow Account**

45.     The Settlement Administrator shall open and maintain a special interest-bearing settlement escrow account established as a qualified settlement fund as defined in Section I .468B-l(a) of the United States Treasury Regulations (the "Escrow Account"). The Escrow Account shall be administered under the Court's continuing supervision and control.

46.     All payments into the Escrow Account shall be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government of an agency thereof, including U.S. Treasury Bills, U.S. Treasury Money Market Funds or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.

47.     The funds held in the Escrow Account, including any interest earned thereon, shall be deemed the Global Settlement Fund and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the Global Settlement Fund shall be distributed pursuant to this Agreement or further order(s) of the Court.

48.     The Settling Defendants shall have no responsibility for, or liability in connection with, the Global Settlement Fund or Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

49.     Taxes and expenses incurred in connection with taxation matters may be paid from the Global Settlement Fund without additional approval from the Court, and these taxes and expenses shall not be refundable in the event the Agreement is rescinded to the extent such

expenses are actually expended or incurred. No other disbursements from or distribution of the Global Settlement Fund shall be made without prior approval of the Court.

50.     The Escrow Account is intended by the Settling Parties to be treated as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and to that end the Settling Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. A "relation back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Escrow Account to be treated as a qualified fund from the earliest date possible, and the Settling Parties shall take all actions as may be necessary or appropriate to this end. At the direction of the Settlement Administrator, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not the Court has entered an Order finally approving the Settlement. In the event federal or state income tax liability is finally assessed against and paid by any of the Settling Defendants because of any income earned on the funds in the Escrow Account, the Settling Defendants shall be entitled to reimbursement of such payment from the funds in the Escrow Account after approval of the Court and whether or not the Settlement has been finally approved. The Settling Defendants will use reasonable efforts to resist any such assessment or payment. Except as set forth in this Paragraph, the Settling Defendants and any Released Party, and their respective counsel, shall have no responsibility to make any tax filings related to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and neither the Settling Defendants nor any Released Party nor their counsel shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.**      **Notice to the Settlement Class and Claims Process**

51.      Plaintiffs, no later than 30 days after all settlements with Opt-In Settlors have been ordered preliminarily approved by the Court, shall submit to the Court a motion for authorization to disseminate notice of the Settlement and any settlements with Opt-In Settlors to the Settlement Class (the "Notice Motion"). If, however, any settlements with Opt-In Settlors are denied preliminary approval, Plaintiffs shall instead submit the Notice Motion no later than 45 days, but not earlier than 31 days, after the Court has decided all motions seeking preliminary approval of settlements with Opt-In Settlors. The Notice Motion shall include a proposed form of, method for, and dates of dissemination of notice (the "Notice Plan"). The text of the notice shall be agreed on by the Parties before submission of the Notice Motion, and such agreement will not be unreasonably withheld by any Party. Before submission of the Notice Motion, the Settling Defendants shall have a reasonable opportunity to review and comment on the Notice Motion, and Plaintiffs shall reasonably consider the Settling Defendants' comments.

52.      The Notice Plan shall provide among other items:

    i.      for notice sufficient to satisfy Rule 23 of the Federal Rules of Civil Procedure and due process and sufficiently in advance of the date set by the Court for final approval so that Settlement Class Members have adequate time to review the Notice, submit a claim, and elect to exclude themselves from the Settlement Class or object to the Settlement if they so choose;

    ii.      a notice and claims process that shall be administered by the Settlement Administrator, approved by the Court, and will be subject to Settlement Class Counsels' supervision;

iii.    direct notice of the Settlement by email to Settlement Class Members to the extent the Settling Defendants have necessary contact information for individual Settlement Class Members

iv.    notice via publication and a settlement website established by the Settlement Administrator that will host copies of all relevant documents and a long-form notice in both English and Spanish.

53.    The Settling Defendants agree to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by that Settling Defendant (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel file the Notice Motion.

54.    The Settling Parties will confer regarding the specific details and content of any form of notice to be disseminated to the Settlement Class, as well as any content for the settlement website. The Settling Parties shall use their best efforts to resolve any disputes regarding notice and the settlement website, and if they are unable to resolve any issues regarding same, they shall have the option of referring such disputes to the Special Master for Mediation for binding resolution.

55.    Reasonable expenses associated with providing notice of the Settlement to the Settlement Class and expenses for maintaining and administering the Global Settlement Fund may be paid out of the Global Settlement Fund after the Court enters an Order granting the Notice Motion without additional approval from the Court, provided that such costs paid out of the Global Settlement Fund do not exceed 15% of the Global Settlement Fund. Payment of such costs from

the Global Settlement Fund, if they would exceed 15% of the Global Settlement Fund, is permitted only with written consent from the Settling Defendants and approval by the Court.

56.     Neither the Parties, nor their counsel, shall be required to contribute additional funds for the costs of notice and administration.

57.     Each Settling Defendant shall be obligated to pay no more than its Settling Defendant Monetary Amount, as set forth in its respective Addenda.

58.     Once approved, notice and administration costs paid out of the Global Settlement Fund shall not be refundable in the event the Agreement is rescinded to the extent such expenses have been approved by the Court and actually been expended or incurred.

59.     The Notice Motion will outline the procedure for Settlement Class Members' submission of claims to receive payment from the Global Settlement Fund and their eligibility to do so. Among other things, the Notice Motion will provide that the Settlement Administrator will establish a claim submission module on the settlement website that allows Settlement Class Members to submit a claim electronically, and that all submitted claims will be subject to review and approval by the Settlement Administrator.

## K.     **Requests for Exclusion**

60.     The Notice Plan shall provide that the notice sets forth the requirements for Settlement Class Members to be excluded from the Settlement Class, including the method for requesting exclusion and the date by which such a request must be made.

61.     Plaintiffs will request that the Court Order approving the Notice Motion state that a request for exclusion that does not comply with all of the requirements set forth in the notice will be invalid and will not exclude any Settlement Class Member(s) from the Settlement Class.

62.     The Settlement Administrator shall, within seven (7) days after the last date for Settlement Class Members to request to be excluded from the Settlement Class, provide the Parties with a list and copies of all opt out requests it has received, and Plaintiffs shall file with the Court a list of all members of the Settlement Class who have submitted valid requests for exclusion.

63.     Subject to Court Approval, any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member and shall not be bound by the terms of this Agreement. The Settling Defendants reserve all of their legal rights and defenses with respect to any claims brought by individuals who request exclusion from the Settlement Class, including, but not limited to, any defenses relating to whether the Settlement Class Members validly excluded themselves from the Settlement Class.

64.     The Notice Motion will request that requests for exclusion be submitted in writing, personally signed by the Settlement Class Member requesting exclusion, and in the written request for exclusion, the member of the Settlement Class must state his, her, or its full name, address, and telephone number, and a statement in the written request for exclusion that he, she, or it wishes to be excluded from the Settlement.

65.     If any Settling Party disputes the validity of an exclusion request, it shall, if possible, resolve the disputed exclusion request by agreement and shall inform the Court of their position, and, if necessary, obtain a ruling thereon within thirty (30) days after the date for Settlement Class Members to request to be excluded from the Settlement Class.

**L.      Procedure for Objections**

66.     The Notice Plan shall provide that Settlement Class Members shall have the right to object to the Settlement, if they wish to do so, by serving a written objection to the Parties and the Court and filing it on or before the deadline set by the Court that contains: the objector's full

name and the case name and case number(s) of the Litigation; the objector's current address, email, and phone number; the reasons why the objector objects to the Settlement along with any supporting legal authority; a list of any objections they or their counsel have filed in any state or federal court class action in the last five (5) years, identified by the name of the case, the case number, the court in which the objection was filed, and the outcome of the objection; whether or not the objector intends to appear at the final fairness hearing on the motion for final approval of the Settlement, and if so, the reasons for seeking to appear; and the objector's signature.

67.     Plaintiffs will request that the Court Order approving the Notice Motion state that:

i.      failure to comply timely and fully with these procedures shall result in the invalidity and rejection of an objection;

ii.     no Settlement Class Member shall be entitled to appear at the final approval hearing (whether individually or through the objector's counsel) or to object to the Settlement unless a valid objection is made and notice of the objection is provided to all Parties in accordance with this Agreement;

iii.    failure to submit a valid objection waives any objections to the Settlement and forever forecloses a Settlement Class Member from making any objection (whether by appeal or otherwise) to the Settlement, any aspect of the Settlement, including, without limitation, the fairness, reasonableness, or adequacy of the proposed Settlement, any award of attorneys' fees or reimbursement of costs and expenses, or to the certification of the Settlement Class or to the Settlement Agreement;

iv.     any Settlement Class Member who submits a valid request to exclude themselves from the Settlement Class forfeits the right to object to this

Settlement Agreement or any of its terms; and

v.     any Settlement Class Member who objects to the Settlement and wishes to appear and speak at the final approval hearing must include in his or her written objection a statement expressing intention to appear and speak at the final approval hearing, or send a "Notice of Intent to Appear" at the final approval hearing to the Clerk of the Court and to the Settling Parties' Counsel, postmarked on or before the Objection Deadline. The Notice of Intent to Appear must include: the case name and case number of the Litigation; the Settlement Class Member's full name, address, email address, and phone number; a statement clearly indicating the intention to appear at the final approval hearing and the reasons for seeking to appear; copies of any papers or information to be presented to the Court, if any; and the Settlement Class Member's signature.

68.     In the event one or more of the Settling Parties determines that an objection is frivolous or otherwise without merit, they shall request that the Court, within its discretion, overrule the objection and award appropriate costs and fees in opposing such objection(s).

**M.     Distribution of the Global Settlement Fund**

69.     The Releasing Parties shall look solely to the Global Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Released Parties, and shall have no other recovery against the Settling Defendants or any other Released Parties.

70.     After the Effective Date, the Global Settlement Fund shall be distributed in accordance with a Plan of Allocation approved by the Court at the request of Settlement Class Counsel (in consultation with the Settlement Administrator).

71.    The Plan of Allocation shall be proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. The Settling Defendants will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by the Settling Parties that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement Agreement. Plaintiffs and the Settling Defendants shall be bound by the terms of this Settlement, irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Settlement or otherwise operate to terminate, modify, or cancel this Agreement.

72.    In no event shall any Released Party have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Global Settlement Fund, including but not limited to, the costs and expenses of such distribution and administration, except as expressly otherwise provided in this Agreement.

73.    Except as otherwise provided by this Agreement, no portion of the Global Settlement Fund shall revert or escheat, except as may be ordered by the Court overseeing the Litigation.

**N.    <u>Attorneys' Fees, Expenses, and Service Awards</u>**

74.    Subject to Court approval, Plaintiffs and Settlement Class Counsel shall be reimbursed and paid solely out of the Global Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees. Any service award(s) to the class

representative(s), if approved by the Court, will also be paid solely out of the Global Settlement Fund. Attorneys' fees and costs and expenses awarded by the Court shall be payable from the Global Settlement Fund upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Global Settlement Fund with interest, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event this Agreement is rescinded.

75. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, none of the Settling Defendants nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation.

76. Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Global Settlement Fund for all expenses and costs, as provided by Court Order and the provisions of this Agreement. The Settling Defendants and the other Released Parties shall not be liable for any costs, fees, or expenses of the Plaintiffs or the Settlement Class's respective

attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court or authorized by this Agreement, shall be paid out of the Global Settlement Fund.

77. Neither the Settling Defendants nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

**O.** **Practice Changes**

78. As soon as practicable, and in no event later than thirty (30) days after the Effective Date, the Settling Defendants (defined for purposes of this Paragraph to include the Settling Defendants' present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

   i.   advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

   ii.  require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer

representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Settling Defendants will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.    prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv.    require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v.    prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and

eliminate any internal systems or technological processes that may currently facilitate such practices);

vi.    advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii.   for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

79.    If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 78 will sunset 5 years after the Effective Date.

80.    The Settling Defendants acknowledge that the Practice Changes set forth herein are a material component of this Agreement and agree to use their best efforts to implement the Practice Changes specified in this Section.

81.    If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, the Parties to the dispute shall attempt to resolve it by agreement. If the Parties are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

**P.    <u>Rescission</u>**

82.    By confidential filing submitted concurrently with their Preliminary Approval Motion, Plaintiffs will disclose the "Threshold Amount" for the Total Settlement Contributions, as

conveyed to Settling Defendants, in connection with rescission rights further described in this Section.

83.     The Agreement is deemed rescinded thirty (30) days after the end of the Opt-In Period if the Total Settlement Contributions do not equal or exceed the Threshold Amount, unless Plaintiffs and any Settling Defendant(s) agree in writing within twenty-nine (29) days of the end of the Opt-In Period that the Agreement shall continue as to those Parties.

84.     If any of the settlements reached with Opt-In Settlors are not preliminarily approved, the Agreement is deemed rescinded thirty (30) days after the Court has decided all motions seeking preliminary approval of settlements with Opt-In Settlors if the total of the Revised Total Settlement Contributions does not equal or exceed the Threshold Amount, unless Plaintiffs and any Settling Defendant(s) agree in writing within twenty-nine (29) days of the Court deciding all motions seeking preliminary approval of settlements with Opt-In Settlors that the Agreement shall continue as to those Parties.

85.     The Agreement is deemed rescinded as to Plaintiffs and any Settling Defendant(s) thirty (30) days after an Order from the Court declining to certify the Settlement Class(es) as defined in this Agreement as to such Settling Defendant(s), declining to grant preliminary or final approval of this Settlement in all material respects as to such Settling Defendant(s), or materially modifying or setting aside this Agreement or any judgment approving this Settlement in any material respects as to such Settling Defendant(s) on appeal, unless Plaintiffs and the Settling Defendant(s) agree in writing that the Agreement shall continue as to those Parties within twenty-nine (29) days of the order.

86.     If the Agreement is rescinded as to any Settling Parties, those Settling Parties shall provide written notice filed with the Court as soon as practicable.

87.     If this Agreement is rescinded as to any Settling Defendant, it will no longer be a Settling Party nor a Released Party, it will not be bound by this Agreement, and the Settlement Administrator shall return that Settling Defendant's Balance (defined below) to that Settling Defendant from the Escrow Account within thirty (30) days of the rescission of the Agreement as to that Settling Defendant (the "Rescission Date"). A Settling Defendant's Balance is equal to the Settling Defendant's individual Monetary Amount paid into the Escrow Account as of the Rescission Date, less the Settling Defendant's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Rescission Date, plus the Settling Defendant's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Rescission Date.  The Settling Defendant's Share is equal to that Settling Defendant's individual Monetary Amount paid into the Global Settlement Fund by such Settling Defendant as of the Rescission Date divided by the total of all Settling Defendants' Monetary Amounts paid into the Escrow Account and all monetary consideration paid into the Escrow Account by the Opt-In Settlors as of the Rescission Date.

88.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Agreement or Final Judgment Order.

89.     In the event this Agreement is rescinded, the Settling Parties agree that pending deadlines in the Litigation that were mooted by the execution of the Agreement shall be reset as to the Settling Parties for which this Agreement was rescinded by Order of the Court, and no Settling Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Agreement.

90.     The Settling Defendants do not waive, and hereby expressly reserve, all of their legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

91.     The Settling Parties' rights to rescind this Agreement are a material term of this Agreement.

**Q.     Miscellaneous**

92.     The Settlement resulted from extensive arm's-length settlement negotiations between the Plaintiffs' counsel and counsel for the Settlings Defendants, including multiple mediations between certain Plaintiffs and certain Settling Defendants conducted by the Hon. James Holderman (Ret.) of JAMS and lengthy negotiations over the terms and contours of this Settlement. The Settling Parties agreed to this Settlement after they considered the risks and costs of continuing litigation. The Settling Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The terms of the Settlement continue to be subject to mediation privilege and must be kept strictly confidential until a motion for preliminary approval is filed, except as necessary for a Settling Defendant to meet its financial reporting obligations or consult with any of its lenders or creditors, or as required by law.

93.     Any disputes relating to this Agreement will be governed by Illinois law without regard to conflicts of law provisions.

94.     This Agreement does not settle or compromise any claim by Plaintiffs or any other Settlement Class Member against any other person or entity other than the Released Parties.

95.     This Agreement, including the Exhibits and Appendices attached hereto, constitute the entire agreement among Plaintiffs and the Settling Defendants pertaining to the settlement of

the claims against the Settling Defendants in the Litigation. This Agreement may be modified or amended only by a writing executed by the Settling Parties.

96.     This Agreement may be executed in counterparts by Plaintiffs and the Settling Defendants, and a facsimile or pdf signature exchanged by hand, mail, or electronic mail shall be deemed an original signature for purposes of executing this Agreement.

97.     Neither Plaintiffs nor the Settling Defendants shall be considered the drafters of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter.

98.     The provisions of this Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

99.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of this Agreement and the Settlement, but will not use that stipulation or Settling Defendants' agreement to be governed by Illinois law as grounds for personal jurisdiction over a Settling Defendant in any litigation unrelated to the interpretation, approval, implementation or enforcement of this Agreement, including, but not limited to, continued litigation of the Litigation in the event that the Settlement is rescinded. For the avoidance of doubt, Settling Defendants do not waive but rather reserve all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

100.     The terms of the Agreement are and shall be binding upon and inure to the benefit of, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other persons and/or entities claiming any interest in the subject matter thereof through any of the Settling Parties, Releasing Parties, Released Parties, and any Settlement Class Members.

101.    Any disputes between Plaintiffs and a Settling Defendant concerning this Agreement shall, if they cannot be resolved directly by the Parties, be presented to a mutually agreeable mediator for his or her assistance in mediating a resolution.

102.    Each Settling Party acknowledges that he, she or it has been and is fully being advised by competent legal counsel of such Settling Party's own choice and fully understands the terms and conditions of this Agreement, and the meaning and import thereof, and that such Settling Party's execution of this Agreement is with the advice of such Settling Party's counsel and of such Settling Party's own free will. Each Settling Party represents and warrants that it has sufficient information regarding the Settlement and the other parties to reach an informed decision and has, independently and without relying upon the other parties and based on such information as it has deemed appropriate, made its own decision to enter into this Agreement and was not fraudulently or otherwise wrongly induced to enter into this Agreement.

103.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement.


**PLAINTIFF JAMES TUCCORI**

*James Tuccori*                    10/13/2025
C35B54B6D703436...

By: James Tuccori

Dated: __, 2025


**PLAINTIFF COURTNEY FOREGGER**

[signature]                    10/10/2025
1DFCF9D88AC149B...

By: Courtney Foregger

Dated: __, 2025

**PLAINTIFF KEVIN CWYNAR**

10/10/2025

By: Kevin Cwynar

Dated: __, 2025


**PLAINTIFF DAWID ZAWISLAK**

10/10/2025

By: Dawid Zawislak

Dated: __, 2025


**PLAINTIFF MICHAEL D'ACQUISTO**

10/13/2025

By: Michael D'Acquisto

Dated: __, 2025


**PLAINTIEF ALEANDRO LOPEZ A/K/A ALEJANDRO LOPEZ**

10/10/2025

By: ALEANDRO X LOPEZ

Dated: __, 2025


**FREED KANNER LONDON & MILLEN LLC**

_____

By:

Dated: __, 2025

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025


**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025


**DEFENDANT BARID & WARNER, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025


**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

By: _____

Dated: __, 2025


**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

By: _____

Dated: __, 2025


**DEFENDANT SHOREWEST REALTORS, INC.**

By: _____

Dated: __, 2025


**DEFENDANT SIDE, INC.**

By: _____

Dated: __, 2025


**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

By: _____

Dated: __, 2025

Docusign Envelope ID: 0931FE37-80DD-4AA0-894B-AD6452EC926D

**DEFENDANT ENGEL & VÖLKERS GMBH**

_____

By:

Dated: __, 2025

**PLAINTIFF KEVIN CWYNAR**

_____

By:

Dated: __, 2025

**PLAINTIFF DAWID ZAWISLAK**

_____

By:

Dated: __, 2025

**PLAINTIFF MICHAEL D'ACQUISTO**

_____

By:

Dated: __, 2025

**PLAINTIFF ALEANDRO LOPEZ A/K/A ALEJANDRO LOPEZ**

_____

By:

Dated: __, 2025

**FREED KANNER LONDON & MILLEN LLC**

_Jonathan M. Jagher_
_____

By: Jonathan Jagher

Dated: October 13, 2025

**MCGUIRE LAW, P.C.**

*Paul Geske*
_____
By: Paul Geske

Dated: October 13, 2025


**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025


**DEFENDANT BAIRD & WARNER, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025


**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

By: _____

Dated: __, 2025


**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

By: _____

Dated: __, 2025


**DEFENDANT SHOREWEST REALTORS, INC.**

By: _____

Dated: __, 2025


**DEFENDANT SIDE, INC.**

*Carmine Napolitano*

By: Carmine Napolitano

Dated: __, 2025  10/10/2025


**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

By: _____

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

_____

By:

Dated: __Oct 13__, 2025

**DEFENDANT SHOREWEST REALTORS, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT SIDE, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

By: _____

Dated: __, 2025


**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

By: _____

Dated: __, 2025


**DEFENDANT SHOREWEST REALTORS, INC.**

By: _____

Dated: __, 2025


**DEFENDANT SIDE, INC.**

By: _____

Dated: __, 2025


**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

By: Stuart Siegel

Dated: __, 2025    10/10/2025

**DEFENDANT ENGEL & VÖLKERS GMBH**

By: _Florian Wierer_

Dated: __, 2025  10/10/2025

**DEFENDANT ENGEL & VÖLKERS GMBH**

By: _____ Rainer Klipp

Dated: __, 2025 10.10.25

40

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025

**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025

**DEFENDANT BARID & WARNER, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025

**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_Tony Ketterling_
Tony Ketterling (Oct 12, 2025 15:56:34 CDT)
_____

By: Uniquely Different Holdings, LLC by Tony Ketterling, its Manager

Dated: October 12, 2025

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025

**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025

**DEFENDANT BAIRD & WARNER, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By: _Aaron Doughty, Owner_    10/13/2025

Dated: __, 2025

**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

By: James Dwiggins     Co-CEO

Dated: __, 2025    October 10, 2025

**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

By: _____

Dated: __, 2025

**DEFENDANT SHOREWEST REALTORS, INC.**

By: _____

Dated: __, 2025

**DEFENDANT SIDE, INC.**

By: _____

Dated: __, 2025

**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

By: _____

Dated: __, 2025

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025

**DEFENDANT AT WORLD PROPERTIES, LLC**

_Branden Lopez_____
By:

Dated: 10/13 2025

**DEFENDANT BARID & WARNER, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025

**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025

**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

38

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025


**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025


**DEFENDANT BARID & WARNER, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT REAL ESTATE ONE, INC.**

Signed by:

Jennifer Mazur

_____
4DBACD89A5464A2...

By:

10/10/2025 | 16:40 EDT

Dated: __, 2025


**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025


**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

**MCGUIRE LAW, P.C.**

_____

By:

Dated: __, 2025


**DEFENDANT AT WORLD PROPERTIES, LLC**

_____

By:

Dated: __, 2025


**DEFENDANT BAIRD & WARNER, INC.**

Marty Bozarth
_____
F93F93C2B38D442...

By:

10/13/2025 | 1:48 PM CDT

Dated: __, 2025


**DEFENDANT REAL ESTATE ONE, INC.**

_____

By:

Dated: __, 2025


**DEFENDANT SILVERCREEK REALTY GROUP LLC**

_____

By:

Dated: __, 2025


**DEFENDANT EQUITY REALTORS, L.L.C. D/B/A EQUITY REAL ESTATE**

_____

By:

Dated: __, 2025

**DEFENDANT NEXTHOME, INC.**

By: _____

Dated: __, 2025

**DEFENDANT REALTY EXECUTIVES INTL. SVCS. LLC**

By: _____

Dated: __, 2025

**DEFENDANT SHOREWEST REALTORS, INC.**

By: *Joseph Horwath President*

Dated: 10-6, 2025

**DEFENDANT SIDE, INC.**

By: _____

Dated: __, 2025

**DEFENDANT ENGEL & VÖLKERS AMERICAS, INC.**

By: _____

Dated: __, 2025

39

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) ) | Related with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Appendix A - Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and _____ ("Opt-In Settlor") as of the last signature date below.

**A.** **Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

2. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

3. "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

4. "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers,

3

employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

5.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

6.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

7.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

8.      [OPTION 3 ONLY: "Total Transaction Volume" means the aggregate value of all residential home sales and purchases in which the Opt-In Settlor and its direct and indirect parents

(including holding companies), subsidiaries, affiliates, associates (all as defined in SEC rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), and any of their franchisees represented in a real estate brokerage capacity either the buyer, the seller, or both. For any transactions in which a real estate broker represented both the buyer and the seller, that transaction shall be counted twice for purposes of calculating the "Total Transaction Volume."]

9.    "Opt-In Settlor Monetary Amount" shall be $_____.

**C.    Operation of the Settlement**

10.    Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor must deliver to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement Agreement both of the following: (i) an executed version of this Opt-In Agreement, and (ii) a confirmation in writing that Opt-In Settlor has selected either "Option 1," "Option 2," or "Option 3" as defined in Section G of the Class Settlement Agreement. In the event that Opt-In Settlor selects Option 3, Opt-In Settlor must also deliver to Settlement Class Counsel a declaration sworn pursuant 28 U.S.C. § 1746 by a competent officer of Opt-In Settlor accurately attesting to the Opt-In Settlor's Total Transaction Volume for each of the most recent four calendar years.

11.    As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.    Stipulation to Class Certification**

12.    Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded,

then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13.     The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     Approval of this Opt-In Agreement**

15.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

18.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

19.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible [OPTION 2 ONLY: and is the type of data

provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel], within 30 days after Settlement Class Counsel files the Notice Motion.

21.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

   a.     certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

   b.     approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

   c.     directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

   d.     reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

## F. Releases, Discharge, and Covenant Not to Sue

24. Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued

from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

25. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim,

10

whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

**G.     Practice Changes**

27.     As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

> i.     advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

11

ii.     require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.    prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv.     require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

     v.      prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

     vi.     advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

     vii.    for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

28.     If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

29.     Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

30.     If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to

resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

## H.     The Opt-In Settlor Monetary Amount

32.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows: [ ].

33.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

34.     [OPTION 3 ONLY: Opt-In Settlor must deliver to Settlement Class Counsel a declaration sworn pursuant 28 U.S.C. § 1746 by a competent officer of Opt-In Settlor accurately attesting to the Opt-In Settlor's Total Transaction Volume for each of the most recent four calendar years.]

35.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

36.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

37.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded

from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

38. As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

39. Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to

15

the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

40.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

41.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.    <u>Rescission</u>**

42.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this

16

Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

43.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

44.     If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

45.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

46.     If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-

In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

47.     Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

48.     Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

## K.     <u>Miscellaneous</u>

49.     This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of

any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

50.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

51.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

52.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

53.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

54.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In

Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

55.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

56.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

_____

By:

Dated: __, 2025

**FOR _____**

_____

20

By:

Dated: ___, 2025