**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TUCCORI, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>AT WORLD PROPERTIES, LLC, *et al*.,<br><br>     Defendants. | Case No. 24-cv-00150<br><br>Hon. Lindsay C. Jenkins |

**<u>MEMORANDUM IN SUPPORT OF FATHOM REALTY, LLC AND HOMESMART INTERNATIONAL, LLC'S JOINT MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTUAL ALLEGATIONS ........................................................................................... 3

ARGUMENT .................................................................................................................. 5

I.    As a Threshold Matter, Home Buyers' Federal Antitrust Claim Continues to Suffer from a Lack of Standing and Their Request for Relief Is Moot (Count I). ................................. 5

    A.    Home Buyers Do Not Have Article III or Antitrust Standing to Pursue Injunctive Relief. ........................................................................................................ 5

    B.    Home Buyers' Request for an Injunction Is Independently Moot. ........................ 8

II.   Like Their Federal Antitrust Claim, Plaintiffs' State Antitrust Claim Suffers Several Fatal Flaws (Count II). ........................................................................................................ 9

    A.    The IAA Cannot Proceed as a Class Action. ....................................................... 10

    B.    Plaintiffs Do Not Have Article III Standing Required to Maintain a Cause of Action under the Illinois Antitrust Act. ................................................................. 10

    C.    Plaintiffs Fail to Allege Antitrust Standing .......................................................... 11

    D.    The Amount in Controversy Is Not Sufficiently Pleaded. ................................... 13

III.  Plaintiffs Fail to Plead an Anticompetitive Agreement in Violation of Federal Law, the Illinois Antitrust Act, or any other State Antitrust Law (Counts I and II). ....................... 13

    A.    Plaintiffs' Amended Complaint Amounts to Nothing More than Impermissible Group Pleading. ................................................................................................... 14

    B.    Defendants' Participation in NAR Does Not Allege an Agreement. ..................... 16

    C.    Plaintiffs Have Alleged No Horizontal Agreement Among Brokerages. ............. 18

IV.   Plaintiffs Failed to State a Viable Claim under the Illinois Consumer Fraud and Deceptive Business Practices Act and Various "State Consumer Protection Laws" (Count III). ........................................................................................................................... 20

V.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count IV). ................................. 23

VI.   Plaintiffs' State Law Claims Are Time Barred (Counts II, III, IV). ................................. 24

VII.  Plaintiffs Should Not Receive Another Opportunity to Amend the Flawed Complaint ... 25

CONCLUSION ............................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n,*
    683 F.3d 328 (7th Cir. 2012) ...............................................................................18

*Already, LLC v. Nike, Inc.,*
    568 U.S. 85 (2013) .................................................................................................9

*Apple Inc. v. Pepper,*
    587 U.S. 273 (2019) ...............................................................................................5

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters,*
    459 U.S. 519 (1983) .............................................................................................12

*Bank of Am., N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013) ...............................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................14, 15, 18

*Benson v. Fannie May Confections Brands, Inc.,*
    944 F.3d 639 (7th Cir. 2019) ..........................................................................20, 21

*Bost v. Illinois State Bd. of Elections,*
    114 F.4th 634 (7th Cir. 2024) ................................................................................6

*Bower v. Jones,*
    978 F.2d 1004 (7th Cir. 1992) .............................................................................25

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962).......................................................................................18, 19

*Cancer Found., Inc. v. Cerberus Cap. Mgmt.,*
    559 F.3d 671 (7th Cir. 2009) ...............................................................................24

*Cargill, Inc. v. Monfort of Colo., Inc.,*
    479 U.S. 104 (1986)...............................................................................................6

*Chafin v. Chafin,*
    568 U.S. 165 (2013)...............................................................................................9

*Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.,*
    No. 16 CV 06113, 2017 WL 4269005 (N.D. Ill. Sept. 26, 2017).........................16

*Crabtree v. Experian Info. Sols., Inc.,*
    948 F.3d 872,877 (7th Cir. 2020) ........................................................................11

*Cummings v. TVI, Inc.,*
    No. 19-CV-1082-JPG, 2020 WL 1065433 (S.D. Ill. Mar. 5, 2020) .......................22

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 09-cv-3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ...............................7

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009) ....................................................................................22

*In re EpiPen Direct Purchaser Litig.*,
No. 20-CV-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022) ..............................19

*Footlick v. Topstep LLC*,
No. 1:22-CV-6152, 2024 WL 1283702 (N.D. Ill. Mar. 26, 2024) .........................23

*Gandhi v. Sitara Capital Management, LLC*,
721 F.3d 865 (7th Cir. 2013) ................................................................................25

*Gibson v. Nat'l Ass'n of Realtors*,
Docket No. 4:23-cv-00788 (W.D. Mo.).................................................................7, 8

*Hackman v. Dickerson Realtors, Inc.*,
520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) ............................................................15

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010).................................................................................17

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) ..............................................................................17

*Kotteakos v. United States*,
328 U.S. 750 (1946) ..............................................................................................19

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
No. 11-cv-8808, 2023 WL 6065308 (N.D. Ill. Sept. 18, 2023)..............................17

*In re Laverdure*,
399 B.R. 310 (Bankr. N.D. Ill. 2008) ...................................................................22

*Leeder v. Nat'l Ass'n of Realtors*,
601 F. Supp. 3d 301 (N.D. Ill. 2022) ..................................................................7, 24

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)..............................................................................................18

*Loeb Indus. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) ..................................................................................7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ..............................................................................................11

*Martis v. Grinnell Mut. Reinsurance Co.*,
905 N.E.2d 920 (Ill. App. 2009) ...........................................................................23

*McClure v. Owens Corning Fiberglas Corp.*,
720 N.E.2d 242 (Ill. 1999) ...................................................................................14

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,
937 F.3d 1056 (7th Cir. 2019) ..............................................................................12

*McGarry & McGarry LLP v. Bankr. Mgmt. Solutions, Inc.*,
No. 17 CV 5779, 2018 WL 3218659 (N.D. Ill. July 2, 2018) .............................................11

*MetroPCS v. Devor*,
215 F. Supp. 3d 626 (N.D. Ill. 2016) .....................................................................................23

*Moehrl v. Nat'l Ass'n of Realtors*,
No. 1:19-cv-1610 (N.D. Ill.) ..........................................................................................3, 7, 24

*Moore v. Boating Indus. Ass'n*,
819 F.2d 693 (7th Cir. 1987), *cert. denied*, 484 U.S. 854 (1987)...........................................17

*MSP Recovery Claims, Series LLC v. Mallinckrodt ARD Inc.*,
No. 18 C 00379, 2019 WL 11658793 (N.D. Ill. Jan. 25, 2019) .............................................15

*Norton v. City of Chicago*,
642 N.E.2d 839 (Ill. App. Ct. 1994) .....................................................................................22

*O'Regan v. Arbitration Forums, Inc.*,
121 F.3d 1060 (7th Cir. 1997) ..............................................................................................11

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) ..........................................................................................14, 18

*In re Opana ER Antritrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) .....................................................................................10

*PepsiCo, Inc. v. Coca-Cola, Co.*,
315 F.3d 101 (2d Cir. 2002)..................................................................................................19

*In re Plasma-Derivative, Protein Therapies Antitrust Litig.*,
No. 09-cv-7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012)......................................................7

*QJ Team, LLC v. Tex. Ass'n of Realtors*,
No. 4:23-cv-01013 (E.D. Tex.)...............................................................................................7

*Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n*,
666 F.2d 1130 (8th Cir. 1981) ..............................................................................................19

*People ex rel. Scott v. College Hills Corp.*,
435 N.E.2d 463 (Ill. 1982) ....................................................................................................14

*Serfecz v. Jewel Food Stores*,
67 F.3d 591 (7th Cir. 1995) ..................................................................................................12

*Sitzer v. Nat'l Ass'n of Realtors*,
No. 4:19-cv-00332 (W.D. Mo.), Dkt. No. 1458-1 .........................................................7, 8, 9

*Stanard v. Nygren*,
658 F.3d 792 (7th Cir. 2011) ................................................................................................15

*Steinberg v. Chicago Med. Sch.*,
371 N.E.2d 634 (Ill. 1977)....................................................................................................22

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ................................................................................................11

*Texaco Inc. v. Dagher*,
547 U.S. 1 (2006) ................................................................................................ 19

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
552 F.3d 430 (6th Cir. 2008) ............................................................................. 15

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ............................................................................. 20

*Wilk v. Am. Med. Ass'n*,
895 F.2d 352 (7th Cir. 1990) ............................................................................. 17

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
395 U.S. 100 (1969) ............................................................................................. 5

**Statutes**

735 ILCS 5/13-205 .................................................................................................... 24

Illinois Antitrust Act, 740 ILCS 10/1, et seq. ................................................... 14, 24

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1,
et seq. ..................................................................................... 2, 20, 21, 22, 23, 24

Sherman Antitrust Act, 15 U.S.C. § 1 ............................................................. *passim*

## INTRODUCTION

This is a newly consolidated action. In *Zawislak v. Equity Realty*, one of the recently-consolidated matters, the Court already considered and dismissed federal and state law claims as to Defendants Fathom Realty, LLC ("Fathom") and HomeSmart International, LLC ("HomeSmart") (collectively, "Defendants") based on the same factual allegations.[1] *See* Compl., *Zawislak v. Equity Realty*, Case No. 1:24-cv-09039 (N.D. Ill.) ("*Zawislak*"), ECF Nos. 1, 41; Transcript, *Zawislak* ECF No. 74. The Court based its dismissal on the *Zawislak* complaint's fatal flaws, and yet after more than three months to amend their filing, Plaintiffs' Consolidated Class Action Complaint (the "Complaint") has done nothing to cure the numerous deficiencies noted by this Court.

*First*, Plaintiffs' request for an injunction under Section 1 of the Sherman Act contains several threshold flaws. Plaintiffs yet again have not alleged any "certainly impending" injury, which Plaintiffs must do to plead Article III standing. Independently, Plaintiffs, who are indirect purchasers, failed to allege antitrust standing as other better-situated individuals are already seeking injunctive relief. Moreover, due to a series of settlements with those better-situated plaintiffs, Plaintiffs' requested relief has been mooted.

*Second*, Plaintiffs' request for damages under the Illinois Antitrust Act and "materially similar" state laws has its own threshold issues. Alleging violation of "materially similar" unnamed state laws does not meet federal pleading standards. Moreover, as this Court already ruled, the Illinois Antitrust Act does not permit indirect purchasers, like Plaintiffs here, to bring a class action for damages. And, even if Plaintiffs were to overcome that hurdle, like federal law, Plaintiffs must plead standing, and they do not.

---

[1] While the Consolidated Class Action Complaint named a number of other defendants (*see* Compl. at 1), only Fathom and HomeSmart bring this motion to dismiss.

*Third*, even if this Court does not dismiss Plaintiffs' claims for standing, mootness, or failure to meet statutory requirements, Plaintiffs' federal, Illinois, and any "materially similar" antitrust claims fail to allege any agreement in restraint of trade. Rather than pleading specific actions by either Fathom or HomeSmart, Plaintiffs rely on insufficient group pleading to allege a conspiracy without any temporal bounds. And, even if the Court considers the nonspecific, group allegations, Plaintiffs ask this Court to find that Defendants' mere participation in a trade association suggests a violation of federal and state antitrust law. But, the Complaint cannot survive solely because of alleged trade association participation. The Complaint must do more, but it does not plausibly allege any agreement in restraint of trade—either between Defendants and NAR or between Defendants and any other brokerage firm.

*Fourth*, Plaintiffs have yet again failed to meet Rule 9 of the Federal Rule of Civil Procedure's particularity requirement to plead a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (or the unnamed "materially similar" laws of various states). The Complaint contains no detailed fraudulent statement, no allegations as to when any allegedly fraudulent statement was made nor whether such statements were made to the Plaintiffs—during the (un-defined) class period.

*Fifth*, Plaintiffs fail to state a claim for unjust enrichment. Like their first amended complaint in *Zawislak*, this cause of action is based on the same underlying insufficient allegations; so, it too fails.

*Sixth*, as an independent basis for dismissal, Plaintiffs' state law claims are time-barred. Plaintiffs filed suit against Fathom and HomeSmart on September 26, 2024, seeking to represent a class of home buyers all the way back to some unnamed "applicable limitations period." Compl. ¶ 172. Without a ruling on the statute of limitations issues, Plaintiffs' Complaint alleges a

boundless class period. But, the filing of the *Moehrl v. Nat'l Ass'n of Realtors* lawsuit over five years ago, on March 6, 2019, in this very District should have put Plaintiffs on notice of their claims—not to mention NAR's publicly available guidance or the numerous articles from the 2000s that Plaintiffs cite to in their Complaint. Plaintiffs should not be permitted to sit on their hands and then bring the state law claims against Defendants.

**Finally**, this is Plaintiffs' third attempt to allege claims against Defendants Fathom and HomeSmart. After a detailed ruling by the Court and more than three months to file this Complaint, Plaintiffs have not remedied the prior complaint's numerous deficiencies. The Court should dismiss this time with prejudice.

## FACTUAL ALLEGATIONS

As in the *Zawislak* case,[2] Named Plaintiffs, five Illinois residents and an Idaho resident, each allegedly purchased a single home in the early 2020s. They seek to represent a nationwide class of homebuyers who "purchased residential real estate listed on a NAR MLS in the United States" during some undefined time period. Compl. ¶ 172.[3] Plaintiffs allege that their purchased residences were listed on a particular multiple listing services ("MLS"), which they further allege is run by "associations with boards of directors comprised of NAR members who must adhere to NAR's guidelines and policies." *Id*. But, Plaintiffs do not allege any relationship between Defendants and that MLS or between Plaintiffs and Defendants.

Instead, Plaintiffs summarily allege that Defendants participated in a conspiracy through their relationship with non-party NAR—"the largest trade group in the U.S." (Compl. ¶ 77):

(1) Defendants' and their co-conspirators' brokers and leadership attend NAR meetings, provide input on NAR's operations, and review, lobby for, and vote on

---

[2] The Named Plaintiffs here include the two named plaintiffs from *Zawislak*.

[3] Plaintiffs list Plaintiff Foregger as purchasing a home in "Boise, Idaho Illinois" (Compl. ¶ 27), which Defendants construe to mean that she purchased a home in Idaho for purposes of this motion.

> NAR rules; (2) Defendants and their co-conspirators assist in NAR's enforcement of the rules; (3) Defendants and their co-conspirators required their brokers and agents to comply with NAR rules, including the Mandatory Commission Rule; and (4) Defendants and their co-conspirators, through their participation in NAR MLSs and their officers' and employees' membership in NAR, agreed to adhere to anticompetitive restraints, including those reflected in MLS rules and NAR's Code of Ethics.

Compl. ¶ 55.

Plaintiffs do not allege how, if at all, each individual Defendant participated in NAR. Instead, Plaintiffs allege that "NAR promulgates and enforces rules and policies that its members implement and follow in real estate transactions" (Compl. ¶ 78), and they state that "Defendants each adopted the Mandatory Commission Rule within their respective rules and regulations" and "aided the NAR in promulgating and codifying the other anti-competitive practices . . . through the positions their brokers hold within NAR." Compl. ¶ 83. While Plaintiffs allege that individuals affiliated with Defendants served various NAR committee or council functions and HomeSmart brokers were part of an MLS, Plaintiffs do not allege that these individuals drafted or developed any of the challenged practices:

- HomeSmart "founder and CEO, Matt Widows, has been a member of the NAR's Real Estate Services ("RES") Advisory Group." Compl. ¶ 103b.

- HomeSmart "broker Miguel Fernandez" served various local association roles. Compl. ¶ 103c.

- HomeSmart "broker Harriet Kubicz is an instructor" for the NAR-associated MRED MLS. Compl. ¶ 103c.

- HomeSmart "brokers Mike Jeppson, Wendy Lapham, and Sandi Mosley, have each served" on a California committee. Compl. ¶ 89.

- "Fathom's Tom Campbell" served various local association and NAR committee roles. Compl. ¶ 103d.

- Fathom "broker Kim Sitton was elected as the National Treasurer of the Women's Council of REALTORS® for 2025." Compl. ¶ 103e.

Plaintiffs further allege that Fathom's and HomeSmart's CEOs were each named to a 200-person power list (Compl. ¶ 85), but Plaintiffs fail to connect those long influencer lists to any anticompetitive action. There are no other allegations regarding specific conduct of Fathom or HomeSmart.

Instead, Plaintiffs' Complaint cites extensively to NAR rules, practices, and policies that have been publicly available since as early as 2002. *See*, *e.g.*, Compl. ¶¶ 11-12, 16-17, 76, 95-96, 99, 108-09, 118, 121, 124, 134-35, 137. Yet, Plaintiffs allege that they could not have discovered their claims, because Class members "had no knowledge of Defendants' unlawful conspiracy with NAR." Compl. ¶ 155. Plaintiffs have not alleged how the alleged conspiracy was purportedly concealed notwithstanding these publicly available sources.

## ARGUMENT

I. **As a Threshold Matter, Home Buyers' Federal Antitrust Claim Continues to Suffer from a Lack of Standing and Their Request for Relief Is Moot (Count I).**

A. **Home Buyers Do Not Have Article III or Antitrust Standing to Pursue Injunctive Relief.** [4]

First, as this Court found in *Zawislak*, Plaintiffs failed to allege that they intend to purchase another home or use a buyer-broker to do so, and so Plaintiffs lack Article III standing to pursue injunctive relief. To establish Article III standing in this context, Plaintiffs must allege "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,

---

[4] To the extent Plaintiffs yet again seek damages pursuant to Section 1 of the Sherman Act (*see* Compl. ¶ 189), that claim is contrary to blackletter antitrust law and must be dismissed as only "direct purchasers—that is, those who are 'the immediate buyers from the alleged antitrust violators'—may sue" for antitrust damages. *See Apple Inc. v. Pepper*, 587 U.S. 273, 280 (2019) (quoting *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 207 (1990)); *see also* Transcript, *Zawislak* ECF No. 74, at 6:8-10 ("a plaintiff who asserts that he indirectly bore the brunt of an overcharge passed on by the direct purchaser has no claim").

395 U.S. 100, 130 (1969); *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986) ("a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful'"); *Bost v. Illinois State Bd. of Elections*, 114 F.4th 634, 642 (7th Cir. 2024) ("when a claimant premises standing on a future harm, the harm must be more than just 'possible'—the allegedly threatened injury must be 'certainly impending'").

Given an opportunity to replead any such injury, Plaintiffs have still alleged no more than a hypothetical risk, pleading that "Plaintiffs would like to be able to engage a real estate agent to assist them with the sale of their homes and any future home purchases"—a far cry from "an impending" or "contemporary violation." *See* Compl. ¶ 168. Not only do Plaintiffs not allege any threat of loss or damages, but they affirmatively plead that "[m]ost people purchase and sell homes only a few times in their lives." Compl. ¶ 72. They do not allege that they will purchase another home in the near future and will engage a buyer-broker to do so. They simply say they would "like to" at some unknown point in the future. Compl. ¶ 168. As this Court has already found,[5] Plaintiffs have no standing to seek injunctive relief, and this Court should again dismiss Plaintiffs' Section 1 claim.

Second, Plaintiffs' federal law claim for injunctive relief under Section 1 of the Sherman Act should be dismissed for lack of standing as Plaintiffs are indirect purchasers of buyer-broker services, and home sellers are better situated to seek injunctive relief. To pursue injunctive relief

---

[5] Not only did the Court dismiss nearly identical allegations in *Zawislak* (*see* Transcript, *Zawislak* ECF No. 74, at 5:4-16), but this District also dismissed a claim for injunctive relief based on similar allegations, finding that "because people typically buy homes only a few times in their life, the [complaint] failed to show that homebuyers faced 'a significant threat of injury'" *Batton v. Nat'l Ass'n of Realtors*, No. 21-CV-00430, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024) (quoting *Zenith Radio*, 395 U.S. at 130).

under the Sherman Act, plaintiffs must demonstrate that they have antitrust standing. *See Cargill*, 479 U.S. at 110-11 (requiring the party seeking injunctive relief to show antitrust standing). Plaintiffs "cannot recover when others more directly injured are better able to state a claim." *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469, 489 (7th Cir. 2002). This is especially true when the direct purchasers are already pursuing the same course of allegedly wrongful conduct. *See, e.g.*, *In re Plasma-Derivative, Protein Therapies Antitrust Litig.*, No. 09-cv-7666, 2012 WL 39766, at *1 (N.D. Ill. Jan. 9, 2012); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2013 WL 4506000, at *14 (N.D. Ill. Aug. 23, 2013).

Plaintiffs admit that they, as home buyers, are not direct purchasers of buyer-broker services. *See, e.g.*, Compl. ¶ 74 (pleading that the seller-broker "typically make[s] a unilateral offer of 3% commission to any buyer-agent" and the home seller "enter[s] into a contract with a seller-broker."). Instead, in dozens of actions around the country, the direct purchasers (i.e., home sellers), have pursued allegations that NAR and member brokerage companies have violated the antitrust laws through the same conduct alleged by Plaintiffs. *See, e.g.*, *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-1610 (N.D. Ill.); *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-332 (W.D. Mo.); *QJ Team, LLC v. Tex. Ass'n of Realtors*, No. 4:23-cv-01013 (E.D. Tex.); *Gibson v. Nat'l Ass'n of Realtors*, Docket No. 4:23-cv-00788 (W.D. Mo.). This District Court has already reviewed a nearly identical set of allegations in *Batton v. National Association of Realtors*,[6] and in dismissing the homebuyers' claim for injunctive relief under Section 1 of the Sherman Act, it held that "home sellers, as the direct purchasers of buyer-broker services, are necessarily more directly injured by Defendants' alleged antitrust violations." *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301,

---

[6] This District has two earlier-filed cases before it which allege a nationwide class of homebuyers paid inflated commissions due to the challenged NAR practices. *See Batton v. Nat'l Ass'n of Realtors*, No. 1:21-cv-00430 (N.D. Ill.); *Batton v. Compass, Inc.*, No. 1:23-cv-15618 (N.D. Ill.).

313 (N.D. Ill. 2022). Plaintiffs therefore lack antitrust standing, and their claim for an injunction should be dismissed.

### B. Home Buyers' Request for an Injunction Is Independently Moot.

Separately, Plaintiffs' claim for injunctive relief also fails as it has been mooted by a series of court-approved settlements between the National Association of Realtors ("NAR"), brokerage companies, and a nationwide class of home sellers. Plaintiffs seek "injunction to permanently enjoin and restrain the Defendants from maintaining or reestablishing the same or similar anti-competitive rules, policies, or practices as those challenged in this action in the future." Compl. at 71. The allegedly anticompetitive rules, policies, and practices are NAR guidelines concerning buyer-broker commissions. *See*, *e.g.*, Compl. ¶¶ 11-12. But, NAR and each of the moving defendants here—Fathom and HomeSmart—have secured court-appointed settlements with classes of home sellers, which include practice changes to eliminate those complained of guidelines. *See* Corrected Settlement Agreement 27-31, 81-82, *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332 (W.D. Mo.), Dkt. No. 1458-1 (listing practice changes within NAR settlement agreement and brokerage opt-in); Mot. For Prelim. Approval 2, *Sitzer*, No. 4:19-cv-00332, Dkt. No. 1538 (listing Fathom as opting into the NAR settlement and practice changes); Order, *Sitzer*, No. 4:19-cv-00332, Dkt. No. 1622 (approving NAR settlement and practice changes); HomeSmart Settlement Agreement 66-68, *Gibson v. Nat'l Ass'n of Realtors*, No. 4:23-cv-00788 (W.D. Mo.), Dkt. No. 303-1 (listing practice changes); Order, *Gibson*, No. 4:23-cv-00788, Dkt. No. 530 (approving HomeSmart settlement and practice changes). While Plaintiffs emptily allege that "the changes do not eliminate all of the buyer-specific concerns raised in this matter" (Compl. ¶ 164), they fail to state in any manner what further practice changes they seek here.[7]

---

[7] Defendants have already agreed, among other things, to:

The agreements moot Plaintiffs' request for an injunction in Count I. "[A] suit becomes moot[] 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Mootness is an independent basis to dismiss Plaintiffs' Sherman Act claim, and a case is rightfully dismissed where defendants have signed a "covenant promising" no future violation of the type complained of in the complaint. *See Already, LLC v. Nike, Inc*., 568 U.S. 85, 97 (2013). As Fathom and HomeSmart have agreed to change the allegedly anticompetitive conduct, Plaintiffs' requested injunction under federal law is moot and should be dismissed.

## II. Like Their Federal Antitrust Claim, Plaintiffs' State Antitrust Claim Suffers Several Fatal Flaws (Count II).

Plaintiffs purport to bring a claim under the Illinois Antitrust Act (hereinafter referred to as "IAA") "as well as other materially similar antitrust statutes enacted by states throughout the country[.]" Compl. ¶ 192. As a threshold matter, the undefined invocation of other state laws is improper, as it does not put the moving defendants on proper notice of any antitrust state law claims beyond Illinois. Thus, any "claims" under unnamed statutes should be dismissed. Additionally, the

---

1. "disclose to prospective home sellers and <u>buyers</u> and state in conspicuous language that broker commissions are not set by law and are fully negotiable";
2. "prohibit all Stipulating Party company-owned brokerages and their agents acting as <u>buyer</u> representatives (and recommend and encourage that franchisees and their agents acting as <u>buyer</u> representatives refrain) from advertising or otherwise representing that their services are free";
3. "require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each active listing shared with prospective <u>buyers</u> in any format"; and
4. "advise and periodically remind company owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to <u>buyer</u> brokers or other <u>buyer</u> representatives provided that each such property meets the <u>buyer's</u> articulated purchasing priorities."

*See* Corrected Settlement Agreement 81-82, *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332 (W.D. Mo.), Dkt. No. 1458-1 (emphasis added).

Plaintiffs' claim under the IAA cannot proceed as a class action, and like their federal claim, Plaintiffs have failed to plead the requisite standing.

### A. The IAA Cannot Proceed as a Class Action.

This Court previously found that the IAA provides that no indirect purchaser may maintain a class action under the Act. *Zawislak* ECF 74, 7:15-20. As the IAA claim cannot proceed as a class action, the Class Action Fairness Act cannot serve as the jurisdictional basis for the cause of action to be in Federal Court. *Id.* at 7:22-24. Despite the Court's prior holding, Plaintiffs continue to allege a class action under the IAA and cite cases that found that individuals can bring class action claims for damages under the IAA. *See* Compl. 198. However, the Seventh Circuit has not weighed in on this question, and several cases have held—like this Court—that the "Illinois restrictions on indirect purchaser actions are intertwined with Illinois substantive rights and remedies...[such that] application of Rule 23 would 'abridge, enlarge or modify' Illinois' substantive rights, and therefore Illinois' restrictions on indirect purchaser actions must be applied in federal court." *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) (citing *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010)).

Defendants request the Court grant its motion to dismiss, finding, as it did previously, that the IAA and substantive Illinois case law hold that the IAA does not permit indirect purchaser to pursue a class action for claims under the statute.

### B. Plaintiffs Do Not Have Article III Standing Required to Maintain a Cause of Action under the Illinois Antitrust Act.

Count II of Plaintiffs' Complaint should be dismissed for failure to plead facts demonstrating Plaintiffs have standing to assert their claims under Article III of the Constitution. With regard to Article III standing, a plaintiff must show: (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not

conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "At the pleading stage, the plaintiff must allege facts that demonstrate each element of Article III standing." *Crabtree v. Experian Info. Sols., Inc*., 948 F.3d 872,877 (7th Cir. 2020).

A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." *Crabtree*, 948 F.3d at 877 (quoting *Lujan*, 504 U.S. at 560 n.1). "Concreteness means that the injury must exist: it must be 'real,' not abstract." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Plaintiffs do not allege what, if anything, attributed to HomeSmart and/or Fathom, constitutes a "substantial and identifiable portion of the pricing" for the purchase of their home, and therefore Count II should be dismissed for failing to meet the pleading requirements.

To satisfy the causation prong of Article III standing, the injury complained of "must be fairly traceable to the challenged action of the defendant—i.e., there must be a causal connection between the injury and the conduct." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014). Plaintiffs allege that they purchased a home "through a transaction involving a buyer-agent and seller-agent who were both NAR Realtors." Compl. ¶¶ 26-31. Plaintiffs do not allege who the agents were. They gloss over this deficiency by alleging that all named agents in the complaint, including Fathom and HomeSmart, were NAR members, and because of that, they were overcharged a commission. Plaintiffs' conclusory allegations are not fairly traceable to Fathom and/or HomeSmart, as Plaintiffs allege no conduct by them.

### C.     Plaintiffs Fail to Allege Antitrust Standing.

Antitrust injury and antitrust standing are required under the Illinois Antitrust Act. *O'Regan v. Arbitration Forums, Inc*., 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act."); *McGarry & McGarry LLP v. Bankr. Mgmt.*

*Solutions*, *Inc.,* No. 17 CV 5779, 2018 WL 3218659, at *2 (N.D. Ill. July 2, 2018), *aff'd sub nom.*

*McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.,* 937 F.3d 1056 (7th Cir. 2019) ("Illinois

courts have adopted a common-law harmonization provision, meaning that they interpret their

antitrust laws in harmony with federal-court decisions interpreting federal antitrust law.").

Even if Plaintiffs adequately pleaded antitrust injury, they must also demonstrate antitrust

standing, *i.e.*, that they are the proper plaintiff to bring the claim. "From the class of injured persons

suffering an 'antitrust injury' only those parties who can most efficiently vindicate the purposes of

the antitrust laws have antitrust standing to maintain a private action under § 4." *Serfecz v. Jewel

Food Stores*, 67 F.3d 591, 598 (7th Cir. 1995). The Seventh Circuit has "recognized the need to

balance the interests of deterrence through private antitrust enforcement and avoidance of

excessive treble damages litigation," which is achieved by allowing only those who "suffer

immediate injuries with respect to their business or property, while excluding persons whose

injuries were more indirectly caused by the antitrust conduct." *Id.* Courts should weigh six factors

in making this assessment:

> (1) [t]he causal connection between the alleged anti-trust violation and the harm
> to the plaintiff; (2) [i]mproper motive; (3) [w]hether the injury was of a type that
> Congress sought to redress with the antitrust laws; (4) [t]he directness between
> the injury and the market restraint; (5) [t]he speculative nature of the damages;
> (6) [t]he risk of duplicate recoveries or complex damages apportionment.

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459

U.S. 519, 537-46 (1983). Plaintiffs' Complaint fails to satisfy multiple of the enumerated pleading

requirements.

First, the causal connection here is weak; second, Plaintiffs do not establish the directness

between the alleged injury and the alleged "market restraint"; third, Plaintiffs' damages are

completely speculative; and fourth, other plaintiffs seeking damages which make duplicative

recoveries likely. Plaintiffs allege they overpaid for a home in some unknown amount, on account

of Defendants' association with unnamed third-party NAR, but they have not alleged that any specific charge they paid was due to the alleged price fixing conspiracy. Plaintiffs allege generally that, "...Defendants have consistently charged and collected, and continue to collect, excessive buyer-broker commissions and total commissions." Compl. ¶ 154. Plaintiffs allege that NAR required brokers to set commission rates, that Defendants were members of NAR, therefore Defendants charged commission rates set by NAR (in the abstract, although not specifically with respect to Plaintiffs), and therefore Plaintiffs must have overpaid commissions and been damaged. However, among other gaps, Plaintiffs provide no information on how much commission was charged or how the unalleged commission was an overcharge. All Plaintiffs' allegations concerning the alleged damages (i.e., commission charge) are speculative and conclusory.

### D. The Amount in Controversy Is Not Sufficiently Pleaded.

Plaintiffs allege that they meet the amount in controversy "pursuant to the Class Action Fairness Act ("CAFA") . . . because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." Compl. ¶ 52. Named Plaintiffs do not allege that they would meet the $75,000 threshold for diversity jurisdiction. While Plaintiffs allege they "have suffered significant monetary damages, each incurring hundreds if not thousands of dollars in excess commissions" (Compl. ¶ 24), Plaintiffs provide no factual support. As such, the Complaint should be dismissed for failing to plead facts that bring this matter within the Court's jurisdiction.

### III. Plaintiffs Fail to Plead an Anticompetitive Agreement in Violation of Federal Law, the Illinois Antitrust Act, or any other State Antitrust Law (Counts I and II).

Plaintiffs' Complaint fails to state a claim under Section 1 of the Sherman Act, the IAA, and "materially similar" laws of other unidentified states, based on Defendants' alleged adherence to the challenged NAR guidance. To state a claim for an agreement in restraint of trade, Plaintiffs must

allege that, "Defendants had a contract, combination, or conspiracy ('an agreement')." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *see also McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (under Illinois law, an "agreement is 'a necessary and important' element of this cause of action").[8] Such an allegation of an agreement must satisfy the precedent set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Plaintiffs' Complaint lumps together more than a dozen defendants, does not allege in any detail of an agreement involving Fathom or HomeSmart, and yet summarily seeks millions for a conspiracy with no stated timeframe. For the reasons laid out below, the Complaint fails to allege an actionable agreement under *Twombly*, and the Court should dismiss Count II.

### A. Plaintiffs' Amended Complaint Amounts to Nothing More than Impermissible Group Pleading.

To plausibly allege an agreement, Plaintiffs' Complaint must include "enough factual matter (taken as true) to suggest that an agreement was made"—that is, facts that exclude the possibility that the purported conspirators acted independently. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). What will not suffice is "an allegation of parallel conduct and a bare assertion of conspiracy." *Id.* Nor will "a conclusory allegation of agreement at some unidentified point." *Id.* at 557; *see also id.* at 565 n.10 (emphasis added) (the failure to allege a "specific <u>time</u>, place, or person involved in the alleged conspiracies" left "no clue as to which of the [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place"). The pleading requirements under the Sherman Act inform the pleading requirements under the Illinois Antitrust

---

[8] Section 3 of the Illinois Antitrust Act was patterned after Section 1 of the Sherman Act, so Illinois courts "are guided by Federal case law construing analogous provisions of Federal legislation." *People ex rel. Scott v. College Hills Corp.*, 435 N.E.2d 463, 469 (Ill. 1982); *see also* 740 ILCS 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act").

Act. Plaintiffs' failure to establish the existence of any agreement— anticompetitive or otherwise— dooms Plaintiffs' Illinois antitrust claim as well. *See Hackman v. Dickerson Realtors*, *Inc*., 520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) (Plaintiff's failure to adequately allege the existence of an agreement or a conspiracy pursuant to the Sherman Act also doomed his IAA claim).

The Federal Rules of Civil Procedure and basic notions of due process require that a plaintiff plead plausible facts to support the allegations it levies against each defendant. *See Twombly*, 550 U.S. at 556. "To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him." *Stanard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011). *Twombly* "specifically reject[s]" the notion that a claim may survive a motion to dismiss by "[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) And so, "'group pleading'—where a plaintiff's allegations simply lump defendants together without describing which defendant is responsible for what conduct or when each defendant participated in that specified conduct—is insufficient at the motion-to-dismiss stage." *MSP Recovery Claims, Series LLC v. Mallinckrodt ARD Inc.*, No. 18 C 00379, 2019 WL 11658793, at *1 n.4 (N.D. Ill. Jan. 25, 2019).

Despite extending over an unknown and potentially extensive period of time, Plaintiffs' Complaint includes only the sparsest of references to the Defendants and fails to satisfy *Twombly*'s pleading standard. Beyond jurisdictional allegations, the only allegations specific to either Fathom or HomeSmart can be listed succinctly in the following categories. *First*, that certain affiliated individuals served various positions within NAR, an MLS, or a local Realtors association. *See* Compl. ¶ 103. *Second*, that Defendants are brokerages of a certain size:

- "HomeSmart had over $23 billion in sales volume in 2022, and its founder and CEO, Matt Widows, was recently named the 25th most powerful and influential leader in the residential real estate brokerage industry on the Swanepoel Power 200 list." Compl. ¶ 85b.

- "Fathom's CEO, Marco Fregenal, was also included on the Swanepoel Power 200 list in addition to being named one of the most influential leaders in the housing economy by HousingWire. Defendant Fathom had over $16 billion in sales volume in 2022 and in 2024 became one of the top 10 largest real estate brokerages in terms of closed transaction sides." Compl. ¶ 85c.

*Third*, that "Defendant HomeSmart requires that each real estate agent join and remain a member in good standing of the NAR and any local association or board of realtors in their respective territory.'" Compl. ¶ 105 (citing HomeSmart's parent company Form S-1).

These few, unspecific allegations cannot state a claim as to Fathom or HomeSmart because they do not put Defendants on notice of what they are alleged to have done wrong. Plaintiffs are required to plead facts against each defendant, because "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Any complaint—like Plaintiffs' before this Court—"based on a theory of collective responsibility <u>must</u> be dismissed." *Id.* (emphasis added). "Details about who did what are not merely nice-to-have features of an otherwise-valid complaint; to pass muster under Rule 8 of the Federal Rules of Civil Procedure, a claim to relief must include such particulars." *Chamberlain Grp., Inc. v. Techtronic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017). Plaintiffs have failed to state how each Defendant participated in the alleged conspiracy, and their antitrust claims must be dismissed.

## B. Defendants' Participation in NAR Does Not Allege an Agreement.

Even if this Court is willing to consider Plaintiffs' shotgun approach to pleading, the general allegations in the Complaint do not allege an <u>agreement</u> in restraint of trade. At most the allegations suggest that Defendants and their affiliated agents participated in a trade association. That is

16

insufficient. Well-established precedent holds that "a trade association is not . . . 'a walking conspiracy.'" *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 374 (7th Cir. 1990). And, any individual's "participation on [an] association's board of directors is not enough by itself" to support an antitrust claim. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

To establish an agreement, Plaintiffs must allege that the "alleged co-conspirators 'acted other than independently in adhering to the trade association's programming or guidelines.'" *Kraft Foods Glob., Inc. v. United Egg Producers, Inc*., No. 11-cv-8808, 2023 WL 6065308, at *13 (N.D. Ill. Sept. 18, 2023). "[M]ere membership in a trade association, attendance at trade association meetings, and participation in trade association activities are not, in and of themselves, condemned or even discouraged by the antitrust laws." *Moore v. Boating Indus. Ass'n*, 819 F.2d 693, 712 (7th Cir. 1987), *cert. denied*, 484 U.S. 854 (1987); *see also In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 349 (3d Cir. 2010) ("neither defendants' membership in the [trade group], nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy"); *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) ("merely charging, adopting or following the fees set by a Consortium is insufficient as a matter of law to constitute a violation of Section 1").

Nevertheless, Plaintiffs attempt to allege a conspiracy merely through Defendants' alleged participation in NAR:

> Defendants and their co-conspirators participated in, followed, implemented, facilitated, and enforced the conspiracy emanating from this District in at least four ways: (1) Defendants' and their co-conspirators' brokers and leadership attend NAR meetings, provide input on NAR's operations, and review, lobby for, and vote on NAR rules; (2) Defendants and their co-conspirators assist in NAR's enforcement of the rules; (3) Defendants and their co-conspirators required their brokers and agents to comply with NAR rules, including the Mandatory Commission Rule; and (4) Defendants and their co-conspirators, through their participation in NAR MLSs and their officers and employees membership in NAR, agreed to adhere to anticompetitive restraints, including those reflected in MLS rules and NAR's Code of Ethics.

Compl. ¶ 55.

17

Through these and other similar, conclusory allegations in the Amended Complaint, Plaintiffs have pleaded no more than, at most, parallel actions by alleging that each Defendant decided to join NAR and adhere to NAR guidelines for its own benefit. *See*, *e.g.*, Compl. ¶ 77 ("Being a NAR member carries benefits like insurance, access to property listings on preferred MLSs, training, and more"); ¶ 99 ("NAR offers many benefits to its realtor associations and the MLSs they own, including professional liability insurance"). But alleging only independent, parallel conduct with nothing more than "a bare assertion of conspiracy" is not enough to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. This Court should not permit this case to proceed to discovery based on such conclusory allegations.

## C. Plaintiffs Have Alleged No Horizontal Agreement Among Brokerages.

Moreover, even if the Court concludes that Defendants' alleged acquiescence to NAR's guidelines means that Plaintiffs have plausibly alleged an agreement between non-party NAR and each Defendant, Plaintiffs have still failed to state a claim. To state an agreement, Plaintiffs must plead that "the alleged conspirators had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011). The Complaint does not allege that either Fathom or HomeSmart—or either of their affiliates—ever agreed or communicated with each other—or any of their competitors— about the challenged NAR guidelines. Without an agreement among <u>Defendants</u>, Plaintiffs have only alleged, at most, that each Defendant had a vertical arrangement with a non-competitor (NAR).[9]

---

[9] The legality of a vertical agreement is governed by the rule of reason. *See Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007). To allege a Section 1 claim under the rule of reason, plaintiff must have alleged a plausible relevant market, which includes both a product market and a geographic market. See *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). Plaintiffs have done neither here. The geographic market "must . . . both 'correspond to the commercial realities' of the industry and be economically significant." *Brown*

Courts have repeatedly held that a series of such vertical relationships, making the proverbial spokes, are "rimless" where plaintiffs cannot allege the agreement among competitors. And, where there are "separate spokes meeting at a common center . . . without the rim of the wheel to enclose the spokes"—there is not "a single conspiracy" in violation of the antitrust laws at all. *Kotteakos v. United States*, 328 U.S. 750, 755 (1946); *see also PepsiCo, Inc. v. Coca-Cola, Co*., 315 F.3d 101, 110-11 (2d Cir. 2002) (holding that a hub-and-spoke conspiracy requires proof of a horizontal agreement, that is, an agreement on the "rim" of the wheel). Every circuit court to address the question has "uniformly held rimless hub-and-spokes conspiracies do not violate § 1 of the Sherman Act." *See In re EpiPen Direct Purchaser Litig*., No. 20-CV-0827, 2022 WL 1017770, at *6-7 (D. Minn. Apr. 5, 2022) (citing decisions from Second, Third, Fourth, and Sixth Circuits). Even if the Court accepts Plaintiffs' conclusory allegations that Fathom and HomeSmart each had individual agreements with NAR, Plaintiffs have not plausibly alleged a conspiracy among the brokerages themselves.[10]

---

*Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962). Here, Plaintiffs simply assert that "[t]he relevant geographic market is the set of regions in which MLSs in which Defendants participate are active." Compl. ¶ 87. But the geographic areas in which MLSs operate do not plausibly reflect the commercial realities of the market for buyer-broker services as required under *Brown Shoe*.

[10] Even if Plaintiffs plausibly alleged a horizontal agreement among Defendants and some unspecified co-conspirators, rule of reason treatment is still appropriate to apply as the practices Plaintiffs challenge are "restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on nonventure activities." *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006). Particularly, when "analyzing whether a trade association agreement restrains competition in the profession, federal courts have most frequently applied the 'rule of reason.'" *Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n*, 666 F.2d 1130, 1137 (8th Cir. 1981). And, under rule of reason treatment, Plaintiffs have failed—among other issues—to plead a plausible relevant market.

IV.     **Plaintiffs Failed to State a Viable Claim under the Illinois Consumer Fraud and Deceptive Business Practices Act and Various "State Consumer Protection Laws" (Count III).**

In Count III, Plaintiffs assert a claim for violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and purport to include "materially similar consumer protection statutes enacted in states throughout the country." Compl. ¶ 202.

*First*, Plaintiffs have not even bothered to identify the "materially similar consumer protection statutes." They make vague references to Michigan Consumer Protection Act ("MCPA") and Idaho Consumer Protection Act ("Idaho CPA") without stating what section of those acts Defendants' conduct allegedly violated.[11] And, for the remainder of the various states, Plaintiffs do not allege which states Plaintiffs are bringing a claim, let along which statutes Plaintiffs view as "materially similar." Defendants and this Court cannot be expected to do Plaintiffs work for them, and the unnamed statutes should be dismissed.

*Second*, in the *Zawislak* Plaintiffs' third attempt to do so, Plaintiffs have failed to plead any specific deceptive or unfair acts committed by Fathom or HomeSmart in violation of the ICFA. To prevail on a claim under the ICFA, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Benson v. Fannie May Confections Brands,*

---

[11] Even if the Court considers the MCPA statute, that claim should be dismissed as the MCPA provides for a "class action on behalf of persons residing or injured in this state." Mich. Comp. Laws § 445.911(4). Because the statute limits class actions to Michigan residents, nationwide classes, as Plaintiffs have provisionally defined the classes, are not maintainable.

*Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). This means as a practical matter that Plaintiffs must identify the "who, what, when, where, and how" of the alleged fraud. *Id.*

Here, not only have Plaintiffs failed to state the precise statement, but they have entirely abandoned any effort to state "when" these statements were made. Instead, Plaintiffs have asserted two acts based on "deceptive practice[s]": that Defendants falsely represented that buyer-broker services were paid by the seller and provided free of charge to buyers, and that buyer-brokers' commissions must be paid "uniformly." Compl. ¶¶ 206-09. However, despite Rule 9's mandate that they plead their claim with particularity, Plaintiffs have not done so. Their entire Complaint is devoid of any interactions between Plaintiffs and Fathom or HomeSmart, and that includes any representations whatsoever. The Court should dismiss their ICFA claim based on un-pleaded misrepresentations.

At best, Plaintiffs' new complaint adds two allegations that a single HomeSmart and a single Fathom broker operating out of California and Arkansas, respectively, made statements that

- From a "HomeSmart" affiliated broker: "If you are only purchasing, you get all the benefits of an experienced Realtor at no cost to you." *See* Compl. ¶ 129 (citing https://homesmart.com/real-estate-agent/hsca002/homer-farsad/3dcaaeb5-ec3d-536b-9e15-0b72c6424c3a)

- From a "Fathom" affiliated broker: "[In MOST CASES,] the seller pays the commission for both the buyer's and seller's agents." *See* Compl. ¶ 130 (omitted text included) (https://www.jimmywilliamsrealtor.com/the-benefits-of-using-a-buyers-agent-in-real-estate)

But, these <u>broker</u> statements do not meet Rule 9's pleading standard. Plaintiffs have not averred whether such statements were made to the Plaintiffs or if they were even made during the undefined class period. Plaintiffs' claim yet again fails, and the Court should dismiss the Count.

*Third*, Plaintiffs lack standing to bring a claim under the ICFA because Plaintiffs fail to meet the definition of "consumer" pursuant to Section 1(e) of the ICFA. To make a successful claim under the ICFA, Plaintiffs must meet the definition of "consumer." The ICFA defines

"consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." *See* 815 ILCS 505/1(e). Here, Plaintiffs did not purchase or contract to purchase any merchandise (real estate or otherwise) with the Defendants—in fact Plaintiffs made no allegation that they had any contact whatsoever with Defendants. *See generally*, Compl. The purchase, or contract for the purchase of merchandise not for resale, are essential elements for Plaintiffs to establish standing under the ICFA.

Plaintiffs are not a "consumer" of real estate with the Defendants pursuant to the ICFA if the Defendants were not party to either of the alleged real estate transactions. *See In re Laverdure*, 399 B.R. 310, 315 (Bankr. N.D. Ill. 2008) (finding a lender did not meet the ICFA's definition of consumer when they "did not purchase or contract for the purchase of any merchandise"); *Cummings v. TVI, Inc.*, No. 19-CV-1082-JPG, 2020 WL 1065433, at *3 (S.D. Ill. Mar. 5, 2020) (finding plaintiffs were not consumers under the ICFA because they did not purchase or contract to purchase any merchandise relevant to a decedent's tripping and falling); *Norton v. City of Chicago*, 642 N.E.2d 839, 841 (Ill. App. Ct. 1994) (holding Plaintiffs were merely private citizens who allegedly committed parking violations, not consumers under the ICFA); *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 638 (Ill. 1977) (holding applicants to medical school did not purchase or contract to purchase any goods or services, thus were not consumers under the ICFA). Simply put, Plaintiffs neither purchased nor contracted to purchase anything, even real estate, from Defendants. Thus, Plaintiffs lack standing to bring a claim under the ICFA.

The Illinois Supreme Court has unambiguously stated that "in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions." *De Bouse v. Bayer*, 922 N.E.2d

309, 316 (Ill. 2009). As there have been no interactions here between Plaintiffs and Defendants, the Court should dismiss the claim.[12]

Therefore, because Plaintiffs have failed to provide any specific deceptive or unfair acts committed by the Defendants in violation of the ICFA and failed to establish that they are a "consumer," this Court should find that Plaintiffs' ICFA claim fails in its entirety.

## V.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Count IV).

To state a cause of action for unjust enrichment, a plaintiff must establish: "(1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Illinois law makes it clear that a claim for unjust enrichment cannot stand on its own. *See, e.g.*, *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. 2009); *see also* Transcript, *Zawislak* ECF No. 74, 9:13-14 ("an unjust enrichment claim all on its own cannot stand").

The Complaint vaguely alleges that Defendants and their co-conspirators received "benefits" from Plaintiffs and "unjustly retained those benefits" at Plaintiffs' expense. Compl. ¶ 218. But, it is clear that Plaintiffs' claim against Defendants for unjust enrichment is based entirely on the same facts underlying their federal and state antitrust claims. Notably, Plaintiffs allege that they paid "supracompetitive commissions" and the "benefits" at issue are "economically traceable to overpayments for buyer-agent commissions by Plaintiffs." Compl. ¶ 218. Most courts, including Illinois courts, do not allow indirect purchasers like Plaintiffs to use unjust enrichment claims as

---

[12] Courts have applied a secondary nexus test where a defendant does not transact with the alleged consumer. *See Footlick v. Topstep LLC*, No. 1:22-CV-6152, 2024 WL 1283702, at *8 (N.D. Ill. Mar. 26, 2024). However, here, Plaintiffs have not presented allegations to meet that test.

an end-run around their inability to secure damages under federal or state antitrust statutes. *See Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 314 (N.D. Ill. 2022). As Plaintiffs' request for relief for unjust enrichment is based on the same flawed factual predicate as their other claims, their claim for unjust enrichment should be dismissed.

## VI.    Plaintiffs' State Law Claims Are Time Barred (Counts II, III, IV).

While this Court generally does not resolve cases on statutes of limitations grounds at the dismissal stage, the Court should consider doing so in this case since the allegations make it clear that Plaintiffs' claims are tardy. *See Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, 559 F.3d 671, 674-75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."). The Illinois Antitrust Act has a 4-year statute of limitations. *See* 740 ILCS 10/7. The Illinois Consumer Fraud and Deceptive Business Practices Act has a 3-year statute of limitations. *See* 815 ILCS 505/10a(e). Unjust enrichment claims have a 5-year statute of limitations. *See* 735 ILCS 5/13-205. And, Plaintiffs have the burden of showing that a tolling doctrine applies to render their claims timely back to their unknown start date, but no applicable doctrine saves their claims.

Plaintiffs' claims are at least as untimely here as they were in *Zawislak*.[13] No tolling doctrine can save Plaintiffs' untimeliness as even if the numerous, publicly available resources were not enough, *Moehrl v. Nat'l Ass'n of Realtors* was filed in this very District on March 6, <u>2019</u>, more than five years prior to the filing of the *Zawislak* complaint. *See* Compl., *Moehrl*, Case No. 1:19-cv-01610 (N.D. Ill.). Furthermore, Plaintiffs have now expanded their claims to plead a conspiracy with <u>*no alleged start time*</u>, instead seemingly abdicating the decision to this Court on

---

[13] Defendants refer the Court to the same arguments raised in their second round of motion to dismiss briefing (*Zawislak* ECF 49-1)**,** incorporate those arguments into this motion to dismiss, but will not reiterate those arguments here.

the contours of the "applicable limitations period." Compl. ¶ 172. Practically, Defendants should not be saddled with the significant expense and burden of fact, expert, and class discovery back to an unknown period of time for patently untimely claims. Moreover, the passage of time in this case greatly prejudices Defendants' ability to defend against Plaintiffs' broad accusations. Delaying a decision on the application of the statute of limitations to the summary judgment stage—even further into the discovery period—would defeat the purpose of statutes of limitations and the protections they are intended to provide. Plaintiffs' untimely claims should be dismissed.

**VII.    Plaintiffs Should Not Receive Another Opportunity to Amend the Flawed Complaint.**

While a motion for leave to file an amended complaint should "freely" be granted "where justice so requires," courts "may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *Gandhi v. Sitara Capital Management, LLC*, 721 F.3d 865, 869 (7th Cir. 2013); *see also Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) ("[A]n amendment may be futile when it fails to state a valid theory of liability or could not withstand a motion to dismiss."); Fed. R. Civ. P. 15. Here, Plaintiffs have had multiple chances to amend their complaint. *See, e.g.,* Compl., *Zawislak* ECF No. 1; Am. Compl., *Zawislak* ECF No. 41. And, with numerous extensions, they had more than three months to file this Complaint. Additional amendment would be futile, as Plaintiffs cannot cure the significant factual and legal deficiencies of their claims. Therefore, Defendants respectfully request this Court to dismiss Plaintiffs' Complaint with prejudice.

## CONCLUSION

Defendants respectfully request that the Consolidated Class Action Complaint be dismissed with prejudice.

25

Dated: November 26, 2025                    Respectfully submitted,

By: */s/ Emilee L. Hargis*

James D. Lawrence (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1200 Main St., Suite 3800
Kansas City, MO 64105
Telephone: (816) 374-3200
Email: jim.lawrence@bclplaw.com

Timothy R. Beyer (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1700 Lincoln Street, #4100
Denver, CO 80203
Telephone: (303) 866-7000
Email: tim.beyer@bclplaw.com

Lindsay S. Johnson (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309-3471
Telephone: (404) 572-6600
Email: lindsay.johnson@bclplaw.com

Emilee L. Hargis, IL #6325656
**Bryan Cave Leighton Paisner LLP**
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2028
Email: emilee.hargis@bclplaw.com

*Attorneys for Defendant Fathom Realty, LLC*

*/s/ Paul W. Daugherity*

Paul W. Daugherity
Patrick G. Meredith
**Kaufman Dolowich LLP**
30 North LaSalle St., Suite 1700
Chicago, IL 60602
Telephone: (312) 759-1400
Email: pdaugherity@kaufmandolowich.com
Email:
patrtick.meredith@kaufmandolowich.com

*Attorneys for HomeSmart International, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Emilee L. Hargis
Emilee L. Hargis