**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TUCCORI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AT WORLD PROPERTIES, LLC, *et al.*,<br><br>Defendants. | Case No. 24-cv-00150<br><br>Hon. Lindsay C. Jenkins |

**REPLY IN FURTHER SUPPORT OF FATHOM REALTY, LLC'S MOTION TO STRIKE THE CONSOLIDATED CLASS ACTION COMPLAINT**

In its Memorandum in Support of its Motion to Strike Class Allegations in the Amended Complaint to Protect Arbitration and Class Action Waiver Rights and Memorandum in Support (ECF No. 79-1) (the "Motion"), Fathom Realty, LLC ("Fathom") demonstrated that the Court should strike Plaintiffs' class allegations as to those absent class members who signed arbitration agreements and/or class action waivers with Fathom and/or Fathom's affiliates. Fathom is entitled to enforce those agreements, and the Court can consider the issue now.

## ARGUMENT

### I. Fathom's Motion to Strike Is Timely and the Agreements at Issue Have Been Incorporated into the Consolidated Class Action Complaint.

First and foremost, Fathom has timely moved this Court to strike the Consolidated Class Action Complaint (the "Complaint")'s class allegations to enforce its arbitration agreements and class action waivers against absent class members at the earliest possible opportunity. The Seventh Circuit has repeatedly held that the "failure of [the moving party] to move promptly for arbitration is powerful evidence that they made their election—against arbitration." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). And, "[i]f the plaintiff's class

allegations are facially and inherently deficient . . . a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Buonomo v. Optimum Outcomes, Inc*., 301 F.R.D. 292, 295 (N.D. Ill. 2014) (internal citation omitted). Fathom's Motion is not premature.

While Plaintiffs protest that Fathom's Motion requires improper inquiry into factual matters outside the pleadings, that is not true. Matters outside of the pleadings can be incorporated by reference "if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (internal citation omitted). While Plaintiffs did not explicitly list every agreement between each class member and the alleged conspirators,[1] the heart of the Complaint is the relationship between plaintiff homebuyers and buyer-brokers—and the allegedly artificially inflated commissions paid via the home-sellers to those buyer-brokers. *See, e.g.*, Compl. ¶¶ 1, 3, 4. And, that relationship between a homebuyer and a buyer-broker is governed by an agreement.

As the class definition is both vague and expansive, Fathom has provided just one example of such an agreement governing the relationship between a putative class member and their Fathom-affiliated broker. *See* Mot., Ex. A. (ECF 79-2). As noted in Fathom's Motion, Exhibit A was submitted as an exemplar and expressly explains the commission structure—that is, the heart of the claims at issue in this case—and includes a binding arbitration provision regarding, inter alia, these claims. It states: "Compensation rates/amounts are not set by law or REALTOR® Association rules. Compensation is set by each Broker individually and is negotiable between

[1] This task would be admittedly difficult to accomplish in a single document as Plaintiffs have alleged a nationwide class, spanning an unknown number of years, that allegedly interacted with Defendants and the co-conspirators—co-conspirators which Plaintiffs define as "numerous other entities, such as the NAR, NAR MLSs, and NAR-affiliated brokerages and realtor associations." Compl. ¶ 47.

Buyer and Buyer's Broker." Mot., Fregenal Decl., Ex. A ¶ 3(a). The agreement then mandates that "[a]ll claims relating to this Agreement . . . will be resolved by binding arbitration." *Id.* at ¶ 14.

At the same time as Plaintiffs complain that Fathom's submission of a single exemplar goes beyond the bounds of the pleading, they simultaneously protest that Fathom has not offered the Court enough proof that such agreements impact a significant portion of the class. *See* Opp'n 7. Plaintiffs criticize the exemplar for being not with "any Fathom affiliates in Illinois," not with "any Illinois class members," and for being a recent agreement from July 2024. *Id.* But none of these arguments move the needle as the exemplary agreement demonstrates to this Court that this is one of likely many class members who have agreed to arbitrate their claims. *See* Mot. 3-5. And, Plaintiffs have alleged a nationwide class that spans an undefined time period.

Plaintiffs also set up the strawman argument that it is Fathom's burden to set forth evidence to compel arbitration. But, this is not about compelling arbitration against unnamed class members; this Motion requests this Court strike unnamed members from the class who would be subject to arbitration or class action waivers when and if they sought to sue. Their claims should not proceed in this case. Fathom has timely raised the arbitration issue and given the Court a reasonable basis to strike the relevant absent class members.

## II. The Exemplary Agreement Applies to the Claim in this Case.

Plaintiffs' next argument is succinctly summarized as follows: since Fathom's affiliate—Fathom Realty Alabama, LLC—signed the exemplary agreement, Fathom cannot seek to enforce the arbitration clause within the agreement. However, this is not where the inquiry must end. Instead, courts, including this Court, have recognized that a "non-signatory to an arbitration agreement <u>can</u> enforce the agreement" under certain circumstances. *Thompson v. Sutherland Glob. Servs., Inc.*, No. 17-C-3607, 2019 WL 1470238, at *4 (N.D. Ill. Apr. 3, 2019). "While the particulars vary by state, 'traditional principles' of state law generally allow a contract to be

enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *O'Connor v. Ford Motor Co*., No. 19-CV-5045, 2023 WL 130522, at *3 (N.D. Ill. Jan. 9, 2023) (internal citation omitted).[2] And, "courts regularly allow non-signatory entities to enforce an arbitration agreement against a signatory on the basis of equitable estoppel." *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015).

Equitable estoppel "allows a non-signatory to compel arbitration in two distinct circumstances." *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001) (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)).

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.
>
> Second, application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*MS Dealer*, 177 F.3d at 947 (internal citation and quotation marks omitted).

While either of the two bases for equitable estoppel would be enough, the Complaint's minimal allegations appear to invoke both.[3] First, as discussed *supra*, the heart of the Complaint is the relationship between plaintiff homebuyers and brokers—and the allegedly artificially

---

[2] The same is true under Alabama state law. *See Ex parte Stamey*, 776 So. 2d 85, 89 (Ala. 2000) ("[B]oth Federal courts and Alabama courts . . . allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract.").

[3] As further argued in the pending Joint Motion to Dismiss (ECF No. 78), the Complaint's sparse allegations do not state a claim.

inflated commissions paid via the home-sellers to those brokers. *See, e.g.*, Compl. ¶¶ 1, 3, 4. While Plaintiffs seek damages against Fathom, Plaintiffs allege that Defendants generally conduct business through their real estate agents and affiliates. *See* Compl. ¶ 38; *see also* Compl. ¶ 53 ("each of the Defendants has, through their affiliates, franchisees, officers, agents, and/or employees, transacted with members of the Class and Subclass"). Plaintiffs' claim for relief is dependent on the very agreements with arbitration provisions between the homebuyers and buyer-brokers.

Moreover, consistent with the second prong of equitable estoppel, Plaintiffs allege that Defendants conducted business with Plaintiffs via their affiliates and agents, and Plaintiffs raised allegations of concerted conduct by the signatory affiliates and Defendants. *See*, *e.g.*, Compl. ¶ 8 (generically alleging that "each of the Defendants have agreed to participate in, facilitate, and implement the conspiracy by requiring their franchisees, brokers, and individual agents to join in and implement NAR's anticompetitive practices"). Plaintiffs' entire theory is that "Defendants knowingly adopted, followed, and enforced NAR's regulations and guidelines relating to broker commissions, and required their franchisees, affiliates, subsidiaries, and individual agents to do the same." Compl. ¶ 8. Plaintiffs' conclusory argument that a non-signatory cannot enforce an arbitration agreement falls short, and this Court should find that Fathom can enforce its affiliates' agreements in this context.

## III. Striking the Class Allegations as to Fathom Would Meaningfully Reduce the Size of the Class and Scope of Discovery.

While Plaintiffs' final argument misapplies joint and several liability to baldly assert that arbitration provisions with Fathom affiliates are irrelevant to Fathom's liability, Plaintiffs nevertheless do concede that "if some individuals entered into enforceable arbitration agreements with a Fathom affiliate . . . the impact would be limited to just the arbitrating class members' ability

to assert claims specifically against Fathom." Opp'n 11. That is exactly the request here. As set forth in the Motion, absent class members who signed an arbitration agreement or class action waiver with a Fathom affiliate would be barred from suing Fathom directly. Contrary to Plaintiffs' argument, Fathom does not seek to expand the scope of the arbitration provisions and/or class action waivers. Those have a meaningful impact on Fathom's involvement in the case, as well as any liability and damages, and they should be considered now.

## CONCLUSION

For the reasons stated above, the Court should strike Plaintiffs' class allegations or, at a minimum, exclude from the class any individual who agreed to arbitrate their dispute, engage in any other alternative dispute resolution, or waive their right to proceed via class action litigation.

Dated: January 13, 2026

Respectfully submitted,

By: */s/ Lindsay Sklar Johnson*

James D. Lawrence (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1200 Main St., Suite 3800
Kansas City, MO 64105
Telephone: (816) 374-3200
Email: jim.lawrence@bclplaw.com

Timothy R. Beyer (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1700 Lincoln Street, #4100
Denver, CO 80203
Telephone: (303) 866-7000
Email: tim.beyer@bclplaw.com

Lindsay S. Johnson (*admitted pro hac vice*)
**Bryan Cave Leighton Paisner LLP**
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309-3471
Telephone: (404) 572-6600
Email: lindsay.johnson@bclplaw.com

Emilee L. Hargis, IL #6325656
**Bryan Cave Leighton Paisner LLP**
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2028
Email: emilee.hargis@bclplaw.com

*Attorneys for Defendant Fathom Realty, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Lindsay Sklar Johnson*
Lindsay Sklar Johnson