UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TUCCORI, *et al.*, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs*, | ) ) ) | No. 1:24-cv-00150 Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, *et al.*, | ) ) | No. 24-cv-02399 No. 24-cv-03160 |
| *Defendants.* | ) ) ) ) ) | No. 24-cv-3356 No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM FOR
PRELIMINARY APPROVAL OF SETTLEMENTS WITH BROKERAGES
OPTING INTO THE COURT APPROVED CLASS SETTLEMENT AGREEMENT**

Plaintiffs, James Tuccori, Courtney Foregger, Kevin Cwynar, Dawid Zawislak, Michael D'Acquisto, and Alejandro Lopez a/k/a Aleandro Lopez, by and through their undersigned counsel, and pursuant to Section G of the Court-approved Class Settlement Agreement in this matter, respectfully move for preliminary approval of the Opt-In Agreements being filed herewith. In support of this Motion, Plaintiffs state as follows:

**I.      INTRODUCTION**

On October 16, 2025, the Court granted preliminary approval to the Class Settlement Agreement[1] with the Settling Defendants. (Preliminary Approval Order, Dkt. 65). As described in the Agreement and Plaintiffs' Preliminary Approval Motion (Dkt. 58), the Settlement includes an opt-in procedure by which other real estate brokerages and real estate companies can elect to

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to be interpreted in accordance with the definitions in the Court-approved Class Settlement Agreement. (Dkt. 58-1).

1

participate in the Settlement in exchange for, among other things: (1) contributing a payment to the Settlement's Global Settlement Fund; (2) committing to certain practice changes; and (3) agreeing to terms substantially similar to those of the Opt-In Agreement attached as Appendix A to the Agreement. (*Id.* at 8) (summarizing the Settlement's opt-in procedure); (Settlement Agreement ¶¶ 35-41). This opt-in mechanism "deliver[s] significant value to the Settlement Class by . . . grow[ing] the Global Settlement Fund" over time and providing additional monetary compensation to the Settlement Class Members. (Dkt. 58 at 2).

The Settlement's Opt-In Period is open until April 13, 2026. (Dkt. 62). Plaintiffs are pleased to report that they have already secured Opt-In Agreements from a number of entities to join the Settlement and make significant monetary contributions that will collectively exceed the settlement's "Threshold Amount." (Dkt. 58 at 9). Each of these agreements is the result of extensive, arms-length negotiations, including separate mediations overseen by the Court-appointed Special Master for Mediation, Judge James F. Holderman (ret.) of JAMS Chicago.

Although the Court has already preliminarily approved the Settlement and its opt-in procedures, out of an abundance of caution, Plaintiffs respectfully request that the Court enter an order preliminarily approving the Opt-In Agreements with the Opt-In Settlors submitted with this Motion. To avoid repetition, Plaintiffs incorporate by reference their Preliminary Approval Motion (Dkt. 58), the Parties' Class Settlement Agreement (Dkt. 58-1), and the Court's Preliminary Approval Order (Dkt. 65), which fully describe the Settlement's terms and support the fairness and adequacy of the Settlement and Opt-In Agreements.

**II.    DISCUSSION**

    **A.    The Opt-In Agreements Are Fair, Reasonable, And Adequate And Consistent With The Court-Approved Class Settlement Agreement.**

By this Motion, Plaintiffs seek preliminary approval of Opt-In Agreements reached with

the following Opt-In Settlors: The Keyes Company and Illustrated Properties, LLC; Anywhere Real Estate Inc.[2]; The Real Brokerage Inc. and Real Broker, LLC; and Vanguard Properties, Inc. As stated above, each of these Opt-In Settlors participated in a separate mediation with the Special Master for Mediation. *T.K. ex. rel. Leshore v. Bytedance Technology Co., Ltd.*, No. 19-CV-7915, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) ("The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." (quoting 4 William Rubenstein, *Newberg on Class Actions* § 13:50 (5th ed. 2021))).

These mediations were attended by lead counsel for Plaintiffs, lead counsel for each Opt-In Settlor, and key executives from each entity. (Declaration of Paul T. Geske ¶ 8, hereinafter "Geske Decl."). Further, each agreement was reached only after intensive negotiations, the exchange of mediation briefs and other relevant information, and weeks of direct negotiations over limited modifications to the terms of each Opt-In Settlor's Opt-In Agreement, where appropriate. (*Id.* ¶¶ 8-10); (*see also* Settlement Agreement ¶ 36) (directing Class Counsel to "use their best efforts to resolve Released Claims with the National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to this Settlement Agreement during the Opt-In Period.").

The proposed Opt-In Agreements incorporate the same Settlement Class definition as in the original Class Settlement Agreement and provide prospective relief to the Settlement Class Members by requiring that the Opt-In Settlors agree to implement or maintain practice changes identical to those set forth in the Settlement Agreement. (*See generally* Exs. 1-4 to Geske Decl.). These practice changes are aimed at addressing the conduct that led to the Litigation. (Settlement

---

[2] On January 9, 2026, Anywhere Real Estate Inc. ("Anywhere") was acquired by Compass, Inc. and became a corporate affiliate of At World Properties ("@properties"), one of the original Settling Defendants in this case. After Anywhere became a corporate affiliate of @properties, it engaged in a mediation with Plaintiffs.

3

Agreement ¶ 78); (Dkt. 58 at 8, 24).

In addition to practice changes, the Opt-In Settlors have agreed to collectively contribute $10,787,500.00 to the Global Settlement Fund, bringing the total of all monetary contributions thus far to $13,989,500.00. (Geske Decl. ¶¶ 16-17).[3] Following final approval, the Global Settlement Fund—including contributions from both the initial Settling Defendants and all Opt-In Settlors—will be distributed in accordance with the Settlement Agreement and the Court-approved plan of allocation. (Settlement Agreement ¶¶ 69-71). When Plaintiffs submit their plan of allocation, they will propose a formula under which each payment to a Settlement Class Member will be determined equitably according to a pro rata formula for allocation. Thus, no group or individual will be unfairly advantaged or disadvantaged, and the Settlement will fully comply with the Rule 23(e)(2) requirement that the Settlement "treats class members equitably relative to each other."

The Opt-In Settlors' monetary contributions are fair, reasonable, and adequate when considering the substantial benefits to the Settlement Class Members balanced against the risks, cost, and delay of litigation, as well as limitations on certain Opt-In Settlors' ability to pay the full amount of any trial judgment entered against them. (Geske Decl. ¶ 19). Further, as noted above, the Opt-In Settlors' contributions will take the Global Settlement Fund past the Threshold Amount and thus secure the Settlement's benefits for Class Members. (*Id.* ¶ 17); (*see also* Dkt. 58 at 9 n.5).

Indeed, the monetary relief contributed by the Opt-In Settlors delivers an excellent result for the Settlement Class given the risks of this indirect-purchaser litigation. (Dkt. 58 at 24-26); (Geske Decl. ¶ 19). Another court in this District has already held that homebuyers are indirect

---

[3] As with the Settling Defendants, the amount of each individual Opt-In Settlor's payment is being submitted to the Court for *in camera* review and will remain confidential until the dissemination of Class Notice. (*See* Agreement ¶ 43).

4

purchasers who cannot seek damages under the Sherman Act. *See generally Leeder v. Nat'l Assoc. of Realtors*, 601 F. Supp. 3d 301, 309 (N.D. Ill. 2022) (citing *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 729 (1977)). This finding creates a risk that recovering damages for homebuyers' state law claims would be limited to only those states with *Illinois Brick* repealer statutes.

Further, proving the amount of damages poses challenges here, since homebuyers must establish that the allegedly higher buyer-broker commissions were passed on to them through the increased prices of the homes they bought. Proving up a passthrough theory will require significant expert work and attorney investment, driving up the costs and risk to the Settlement Class.

It's also worth emphasizing that a litigation class has not yet been certified and would be highly contested. The prospect of adversarial class certification presents serious risks on its own. *See* Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment; *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *6 (S.D. Cal. May 13, 2020) ("Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a class."). Additionally, Plaintiffs' claims have not yet reached the summary judgment stage. Although Plaintiffs are confident they would prevail on the merits and at class certification, they recognize the risks posed by further litigation.

In sum, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 29, 2019). In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 WL 969616, at *5 (N.D. Ill. Feb. 27, 2020) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."). The Opt-In Settlement provides meaningful relief to the Settlement Class, avoiding

potentially years of complex litigation and appeals with a risk of no recovery whatsoever.

Prior to reaching agreement with each Opt-In Settlor, Class Counsel undertook significant research into each Opt-In Settlor's involvement in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, including their participation in the National Association of Realtors® ("NAR"), their role and relative size in the real estate broker services market, and their adoption, implementation, and enforcement of the challenged NAR rules at issue. As one example, Class Counsel issued a document subpoena to Anywhere and received an extensive document production comprising 7,076 documents, totaling 155,874 pages and 2,496 native documents, for a total production size of 57.27 gigabytes.[4] This gave Class Counsel more than "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943, at *11.

Lastly, the Opt-In Agreements also include other edits or additions where appropriate to address each Opt-In Settlor's potential exposure and other company-specific matters. For example, in Anywhere's Opt-In Agreement, the Class Period was extended to include all time periods covered by this case and other, concurrent homebuyer antitrust litigation such as *Batton v. The Nat'l Assoc. of REALTORS®*, No. 21-cv-00430 (N.D. Ill.).[5] (Ex. 4 to Geske Decl. at 2-3). This modified Class Period was necessary to provide finality against all litigation for Opt-In Settlors who are defendants in separate litigation, such as Anywhere.

---

[4] This production included documents Anywhere originally produced in connection with home seller antitrust litigation, including *Sitzer, et al. v. The National Association of Realtors, et al.*, No. 4:19-cv-00332 (W.D. Mo.), *Moehrl, et al. v. The National Association of Realtors, et al.*, No. 1:19-cv-01610 (N.D. Ill.), and *Nosalek, et al. v. MLS Property Information Network, Inc., et al.*, No 1:20-cv-12244 (D. Mass.)).

[5] On February 2, 2026, Plaintiffs in *Batton, et al. v. The National Association of Realtors, et al.*, No. 1:21-cv-00430 (N.D. Ill.) filed a Motion for Preliminary Approval of a settlement with Keller Williams Realty. (Dkt. 262). That settlement was preliminarily approved on February 12, 2026. (*Id.* Dkt. 269.) Unlike the Opt-In Settlements here, the Keller Williams settlement encompasses homebuyer claims that have already been released (76-79% of all such claims) in home seller settlements, not just the buyer-only claims that were not released (21-24% of buyer claims).

Plaintiffs may reach additional settlements with other Opt-In Settlors or Defendants in this case. To promote efficient use of Settlement funds and class notice resources, and to avoid confusion to the Class Members, Plaintiffs intend to combine the dissemination of Class Notice of the Settlement. Plaintiffs will file, at a later date, a separate Notice Motion for approval of the form and manner of class notice. (Settlement Agreement ¶ 19).

### B. The Opt-In Settlors Should Be Added To Plaintiffs' Consolidated Class Action Complaint To Facilitate Their Participation In The Settlement.

Together with this Motion, Plaintiffs have moved for leave to file an amended consolidated class action complaint that includes the Opt-In Settlors that have not already been named as Defendants in this action. Plaintiffs' operative Consolidated Class Action Complaint (Dkt. 70, the "Consolidated Complaint") already references the Opt-In Settlors as co-conspirators (*see, e.g., id.* ¶¶ 47-50), so the claims against the Opt-In Settlors share numerous common questions of law and fact with the existing action, including because they involve the same or similar allegedly unlawful conduct and the same alleged commission-fixing conspiracy.

In addition, permitting the Opt-In Settlors to join will not delay the proceedings or otherwise prejudice the adjudication of the underlying case. To the contrary, adding the Opt-In Settlors as defendants provides an efficient procedural mechanism to allow them to participate in the existing Settlement. Accordingly, Plaintiffs seek to amend their Consolidated Complaint to formally bring these entities into the case and the Settlement.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: 1) granting this Motion; 2) granting preliminary approval to the Opt-In Agreements with each Opt-In Settlor; and 3) granting such further and additional relief as the Court deems reasonable and just.

Dated: February 23, 2026

Respectfully Submitted,

JAMES TUCCORI, COURTNEY FOREGGER, KEVIN CWYNAR, DAWID ZAWISLAK, MICHAEL D'ACQUISTO, and ALEJANDRO LOPEZ A/K/A ALEANDRO LOPEZ, individually and on behalf of similarly situated individuals

By: */s/ Paul T. Geske*
One of Plaintiffs' attorneys

Myles McGuire
Evan Meyers
Paul T. Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
pgeske@mcgpc.com

Jonathan M. Jagher
FREED KANNER LONDON
& MILLEN LLC
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 234-6487
jjagher@fklmlaw.com

Matthew W. Ruan
FREED KANNER LONDON
& MILLEN LLC
100 Tri-State International, Ste. 128
Lincolnshire, IL 60069
Tel: (224) 632-4500
mruan@fklmlaw.com

*Counsel for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on February 23, 2026 I caused the foregoing *Plaintiffs' Unopposed Motion and Memorandum for Preliminary Approval of Settlements With Brokerages Opting Into the Court Approved Class Settlement Agreement* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Paul T. Geske*