# Exhibit B

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI *et al.*, individually and on behalf of similarly situated individuals, | ) ) ) | |
| | ) | No. 1:24-cv-00150 |
| *Plaintiffs,* | ) ) | Hon. Lindsay C. Jenkins |
| | ) | |
| v. | ) | Consolidated with: |
| | ) | |
| AT WORLD PROPERTIES, LLC, *et al.*, | ) | No. 24-cv-02399 |
| | ) | No. 24-cv-03160 |
| *Defendants.* | ) | No. 24-cv-3356 |
| | ) | No. 24-cv-9039 |
| | ) | No. 24-cv-11735 |
| | ) | No. 25-cv-04207 |
| | ) | |

**DECLARATION OF PAUL T. GESKE IN SUPPORT OF PLAINTIFFS' SECOND
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS WITH PARTIES
OPTING INTO THE COURT APPROVED CLASS SETTLEMENT AGREEMENT**

I, Paul T. Geske, hereby aver pursuant to 28 U.S.C. § 1746 that I am fully competent to make this Declaration, I have personal knowledge of all matters set forth herein unless stated otherwise, and I would testify to all such matters if called as a witness.

1.      I am a licensed attorney and a partner at McGuire Law, P.C. I am admitted to practice in Illinois and before numerous federal courts throughout the country, including the U.S. District Court for the Northern District of Illinois and the U.S. Supreme Court.

2.      Along with my colleagues Myles McGuire and Evan Meyers at McGuire Law, P.C. and my co-counsel at Justice Jagher London & Millen LLC, I am counsel of record for Plaintiffs and the certified Settlement Class in this matter.

3.      This Declaration is being submitted in support of Plaintiffs' Second Motion for Preliminary Approval of Settlements With Parties Opting Into the Court Approved Class

1

Settlement Agreement being filed herewith.

4. On October 16, 2025, the Court entered its Preliminary Approval Order granting preliminary approval to the Class Settlement Agreement[1] with the Settling Defendants. (Dkt. 65).

5. The Court-approved Settlement includes a mechanism by which "The National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to th[e] Settlement Agreement" can elect to opt into the Settlement in exchange for fulfilling certain conditions and making a monetary contribution to the Settlement's Global Settlement Fund, among other things. (Dkt. 58-1 ¶¶ 35-36); (Dkt. 58 at 8) (summarizing the Settlement's opt-in procedure).

6. As part of the Court-approved opt-in procedure, the Court appointed Judge James F. Holderman (Ret.) of JAMS Chicago to serve as the Special Master for Mediation and conduct, supervise, and oversee mediations with non-parties who elected to attend a mediation in an effort to become an Opt-In Settlor. (Dkt. 58-1 ¶¶ 32-34); (Dkt. 65 ¶ 15).

7. Further, the Court-approved Settlement directed Class Counsel to "use their best efforts to resolve Released Claims with the National Association of REALTORS®, and any real estate brokerage, franchisor, or real estate company that is not a Party to this Settlement Agreement during the Opt-In Period." (*Id.* ¶ 36).

8. On February 23, 2026, Plaintiffs filed their Unopposed Motion and Memorandum for Preliminary Approval of Settlements with Brokerages Opting Into the Court Approved Class Settlement Agreement, in which they sought approval of Opt-In Agreements with five prospective Opt-In Settlors that agreed to contribute a total of $10,787,500 to the Settlement's Global Settlement Fund. (Dkt. 98). The Court granted that Motion on March 4, 2026. (Dkt. 119).

---

[1] Unless stated otherwise, capitalized terms used in this Declaration are intended to be interpreted in accordance with the definitions in the Court-approved Class Settlement Agreement. (Dkt. 58-1).

9. In accordance with the Settlement Agreement and the Court's Preliminary Approval Order, Class Counsel attended mediation sessions with a number of additional prospective Opt-In Settlors, including:

- With Hanna Holdings, Inc. conducted by Judge Holderman on March 13, 2026;

- With Douglas Elliman Inc. conducted by Judge Holderman on March 23, 2026;

- With HomeSmart International, LLC conducted by Judge Holderman on March 24, 2026;

- With The National Association of Realtors® conducted by Judge Holderman on March 27, 2026;

- With HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates LLC conducted by Judge Holderman on March 30, 2026;

- With Compass, Inc. before former Magistrate Judge Michael T. Mason (Ret.), conducted under Judge Holderman's supervision, on April 9, 2026; and

- With eXp World Holdings, Inc. conducted by Judge Holderman on April 10, 2026.

10. Each of these mediations was conducted separately and at arm's length. In many instances, the negotiating parties did not reach an agreement at the mediation itself, and the negotiations continued over the days and weeks following each mediation session. Even where the negotiating parties did reach an agreement in principle at the mediation, negotiations continued over the specific terms and contours of each opt-in agreement.

11. Additionally, Class Counsel engaged in arm's-length negotiations with counsel for the following prospective Opt-In Settlors:

- Fathom Realty, LLC;

3

- Realty ONE Group Inc. and Kempa and Associates LLC d/b/a Realty ONE Group Excel;

- Umro Realty Corp d/b/a The Agency; and

- United Real Estate Holdings, LLC d/b/a United Real Estate Group.

12. The mediation sessions and direct negotiations outlined above culminated in the execution of an Opt-In Agreement with each prospective Opt-In Settlor, which are being submitted to the Court for approval.

13. Attached hereto as Exhibit 1 is the executed Opt-In Agreement with Hanna Holdings, Inc.

14. Attached hereto as Exhibit 2 is the executed Opt-In Agreement with Douglas Elliman Inc.

15. Attached hereto as Exhibit 3 is the executed Opt-In Agreement with HomeSmart International, LLC.

16. Attached hereto as Exhibit 4 is the executed Opt-In Agreement with The National Association of Realtors®.

17. Attached hereto as Exhibit 5 is the executed Opt-In Agreement with HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates LLC.

18. Attached hereto as Exhibit 6 is the executed Opt-In Agreement with Compass, Inc.

19. Attached hereto as Exhibit 7 is the executed Opt-In Agreement with eXp World Holdings, Inc.

20. Attached hereto as Exhibit 8 is the executed Opt-In Agreement with Fathom Realty, LLC.

4

21. Attached hereto as Exhibit 9 is the executed Opt-In Agreement with Realty ONE Group Inc. and Kempa and Associates LLC d/b/a Realty ONE Group Excel.

22. Attached hereto as Exhibit 10 is the executed Opt-In Agreement with Umro Realty Corp d/b/a The Agency.

23. Attached hereto as Exhibit 11 is the executed Opt-In Agreement with United Real Estate Holdings, LLC d/b/a United Real Estate Group.

24. The Opt-In Period concluded on April 13, 2026 (Dkt. 62), and the Settlement's opt-in procedure has succeeded in growing the Global Settlement Fund and delivering significant value to the Settlement Class Members, who will all receive greater compensation by virtue of the contributions of the prospective Opt-In Settlors.

25. Pursuant to the above Opt-In Agreements, this group of prospective Opt-In Settlors have committed to pay a total of $106,345,000 into the Settlement's Global Settlement Fund following approval. These Opt-In Settlors' contributions, together with the $13,989,500 in payments from the initial Settling Defendants and the other Opt-In Settlors, will bring the total of all monetary relief provided under the Settlement to $120,334,500.

26. Based on Class Counsel's investigation of the potential claims against each Opt-In Settlor, together with years of experience prosecuting other class action litigation in courts nationwide, I believe that the above Opt-In Agreements are in the best interests of the Plaintiffs and the other Settlement Class Members. In particular, I, along with the other attorneys serving as Class Counsel, have concluded that the relief provided under each Opt-In Settlor's Opt-In Agreement is fair, reasonable, and adequate in light of the risks of further litigation.

27. While I believe that the Plaintiffs' and the Settlement Class Members' claims against each potential Opt-In Settlor have merit, I recognize the substantial risks that litigation

5

imposes on the Plaintiffs and the Settlement Class Members, particularly in light of the complexity of this litigation, the numerous parties involved, the uncertainty inherent in litigation, and the adverse financial conditions impacting the real estate broker industry, including the potential Opt-In Settlors. Further, given that the potential Opt-In Settlors have denied the existence of an unlawful conspiracy and demonstrated a willingness to vigorously defend the claims against them, the Opt-In Agreements reached here represent an excellent result for the Settlement Class Members.

28. Class Counsel have diligently prosecuted the Settlement Class Members' claims and dedicated substantial time and resources to this Litigation. We will continue to dedicate the time and resources necessary to effectuate the Settlement and to advocate on behalf of the Settlement Class Members through final approval.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2026 in Chicago, Illinois.

*/s/ Paul T. Geske*
Paul T. Geske, Esq.

6

# Exhibit 1

Docusign Envelope ID: B012398B-55ED-4E5E-A38C-5B1A85A77563

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al., | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al., | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Hanna Holdings, Inc. ("Opt-In Settlor") as of the last signature date below.

**A.    Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

Docusign Envelope ID: B012398B-55FD-4E5F-A38C-5B1A85A77563

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Class Period" with respect to Opt-In Settlor means:

    i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

ii. From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

iii. From January 25, 2013 to date of Class Notice for homes in Wyoming;

iv. From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

v. From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

vi. From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, and Virginia;

vii. From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington; and

viii. From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to

3

appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4.     "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or against Opt-In Settlor in *Davis v. Hanna Holdings*, 2:24-cv-02374 (E.D. Pa.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase or sale of residential real estate.

5.     "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect corporate parents (including holding companies), individual owners, subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, franchisors, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, brokers, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all

4

of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

6.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

7.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

8.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.   For the avoidance of doubt, Plaintiffs and Hanna Holdings intend this Settlement Agreement to provide for and the Settlement Class definition to encompass a nationwide class with a nationwide settlement and release, including, but not limited to, transactions associated with the West Penn Multi-List, Inc. and the Central New York Information Service.  Such release is intended to apply to all related cases in which a Hanna Holdings entity is a party defendant or may

5

be a party defendant, including but not limited to *Davis v. Hanna Holdings*, 2:24-cv-02374 (E.D. Pa.).

9.      "Opt-In Settlor Monetary Amount" shall be $8,250,000.00.

**C.      Operation of the Settlement**

10.      Plaintiffs and Opt-In Settlor agree that Opt-In Settlor has delivered to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement Agreement  an executed version of this Opt-In Agreement (as modified herein), in which Opt-in Settlor has selected "Option 1" as defined in Section G of the Class Settlement Agreement.

11.      As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.      Stipulation to Class Certification**

12.      Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13.      The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes

Docusign Envelope ID: B012398B-55FD-4E5E-A38C-5B1A85A77563

other than for purposes of the Settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     <u>Approval of this Opt-In Agreement</u>**

15.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall be accompanied by a proposed amended complaint adding Opt-In Settlor as a defendant in the Litigation.  The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

18.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

19.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible, within 30 days after Settlement Class Counsel files the Notice Motion.

21.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be

served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

     a.     certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

     b.     approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

     c.     directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

     d.     reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

     e.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23.     As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be

rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

24.      Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct.  In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

Docusign Envelope ID: B012398B-55FD-4E5F-A38C-5B1A85A77563

25.     The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

Docusign Envelope ID: B012398B-55FD-4F5F-A38C-5B1A85A77563

26.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.     **Practice Changes**

27.     As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

      i.    advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

      ii.    require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker

12

commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation

13

Docusign Envelope ID: B012398B-55FD-4E5F-A38C-5B1A85A77563

offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

28. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

29. Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

30. If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31. Opt-In Settlor agrees to use its reasonable best efforts to implement or maintain these practice changes to the extent not yet fully implemented.

14

## H.     The Opt-In Settlor Monetary Amount

32.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows:  within 30 business days after preliminary approval of the Settlement by the Court, Hanna Holdings will deposit $2,750,000 into the Escrow Account.  Hanna Holdings will pay another $2,750,000 into the Escrow Account on or before one year from preliminary approval. Hanna Holdings will pay an additional $2,750,000 into the Escrow Account on or before two years from preliminary approval. All interest accrued on the Opt-In Settlor Monetary Amount will remain in the Global Settlement Fund and be distributed in accordance with the terms of the Class Settlement Agreement.

33.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

34.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

35.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

36.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

Docusign Envelope ID: B012398B-55FD-4E5E-A38C-5B1A85A77563

37.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

38.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

39.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, neither Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

40.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.     Rescission**

41.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless

17

Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

42.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

43.     If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

44.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

45.     If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or

18

accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

46. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event this agreement is rescinded or no longer has effect, including but not limited to if any court of competent jurisdiction denies preliminary or final approval.

47. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

## K.      **Miscellaneous**

48. This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement,

the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49. Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50. The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51. Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52. The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

53. The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In

Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

By: _____

Dated: _____

**FOR HANNA HOLDINGS, INC.**

*Annie Hanna Engel*

By: _____

Dated: ___3/19/2026_____

21

Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*
By: Paul Geske

Dated: March 19, 2026

**FOR HANNA HOLDINGS, INC.**

By:

Dated:

21

# Exhibit 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al., | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al., | ) ) ) | No. 24-cv-02399<br>No. 24-cv-03160<br>No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039<br>No. 24-cv-11735<br>No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Douglas Elliman Inc. ("Opt-In Settlor") as of the last signature date below.

**A.     Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Class Period" with respect to Opt-In Settlor means:

    i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

ii. From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

iii. From January 25, 2013 to date of Class Notice for homes in Wyoming;

iv. From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

v. From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

vi. From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, and Virginia;

vii. from January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington;

viii. from January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to

3

appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4. "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or against Opt-In Settlor in *Lutz v. HomeServices of America, et al.*, No. 24-cv-10040 (S.D. Fl.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase or sale of residential real estate.

5. "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and

4

licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

6. "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

7. "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

8. "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

9. "Opt-In Settlor Monetary Amount" shall be $2,041,250.00.

**C.** **Operation of the Settlement**

10. Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor must deliver to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement

Agreement both of the following: (i) an executed version of this Opt-In Agreement, and (ii) a confirmation in writing that Opt-In Settlor has selected either "Option 1," "Option 2," or "Option 3" as defined in Section G of the Class Settlement Agreement. In the event that Opt-In Settlor selects Option 3, Opt-In Settlor must also deliver to Settlement Class Counsel a declaration sworn pursuant 28 U.S.C. § 1746 by a competent officer of Opt-In Settlor accurately attesting to the Opt-In Settlor's Total Transaction Volume for each of the most recent four calendar years.

11.     As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.      Stipulation to Class Certification**

12.     Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13.     The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.**      **Approval of this Opt-In Agreement**

15.      The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.      As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall be accompanied by a proposed amended complaint adding Opt-In Settlor as a defendant in the Litigation.  The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.      To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

18.      Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the

Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

19.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Gibson, within 30 days after Settlement Class Counsel files the Notice Motion.

21.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c. directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d. reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.** **Releases, Discharge, and Covenant Not to Sue**

24. Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties

from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

25. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

10

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty,

11

malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.      Practice Changes

27.      As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

   i.      advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

   ii.      require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend

and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.  prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv.  require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v.  prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi.  advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) to show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

28. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

29. Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

30. If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31. Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.      The Opt-In Settlor Monetary Amount**

32. As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account in four installments as follows: $100,000.00 within 30 days after entry of an order granting preliminary approval to this Opt-In Agreement; $647,083.00 within one year of the Effective Date; $647,083.00 within two years of the Effective Date; and $647,084.00 within three years of the Effective Date.

33. In no event will Opt-In Settlor's monetary liability with respect to the Settlement

14

exceed the Opt-In Settlor Monetary Amount.

34.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

35.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

36.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

37.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or

otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

38.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

39.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the

16

Released Parties.

40.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.      Rescission**

41.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

42.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

43.     If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

44.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the

execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

45.    If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

46.    Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

47.    Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is

18

required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

**K.      Miscellaneous**

48.      This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49.      Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50.      The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51.      Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52.      The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by

Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

53.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

By: _____

Dated: April 7, 2026

**FOR DOUGLAS ELLIMAN INC.**

Bradley Brodie

By: Bradley Brodie

Dated: 4/6/2026

21

# Exhibit 3

Envelope ID : 69c547142f382751629ec586

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Related with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and HomeSmart International, LLC ("Opt-In Settlor") as of the last signature date below.

**A.**     **Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **<u>Definitions</u>**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

2

2.      "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

3.      "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

4.      "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers,

3

employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

5.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

6.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

7.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

8.      "Opt-In Settlor Monetary Amount" shall be $600,000.00.

4

### C.   Operation of the Settlement

9.   Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor will deliver to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement Agreement an executed version of this Opt-In Agreement confirming that Opt-In Settlor has selected "Option 1" as defined in Section G of the Class Settlement Agreement.

10.   As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

### D.   Stipulation to Class Certification

11.   Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

12.   The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

13.   Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.      Approval of this Opt-In Agreement**

14.      The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

15.      As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

16.      To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

17.      Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil

Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

18.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

19.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

20.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

21.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

7

a.  certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b.  approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c.  directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d.  reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

22.  As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.   Releases, Discharge, and Covenant Not to Sue**

23.  Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties

8

from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

24. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

9

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

25. The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty,

10

malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G. Practice Changes

26. As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

   i. advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

   ii. require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend

11

and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

12

vii.    for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

27.    If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 26 will sunset 5 years after the Effective Date.

28.    Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

29.    If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

30.    Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.    The Opt-In Settlor Monetary Amount**

31.    As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows: in one lump sum within 14 days of the Effective Date.

32.    In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

33. The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

34. Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

35. There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

36. As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor

14

nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

37.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

38.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

15

39.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.     Rescission**

40.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

41.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

42.     If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

43.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal

16

of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

44. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

45. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

46. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or

17

on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

**K.    Miscellaneous**

47.    This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

48.    Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

49.    The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

50.    Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

51.    The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated

to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

52.    The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

53.    Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

19

54. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

_____
By:

Dated: _____


**FOR HOMESMART INTERNATIONAL, LLC**

*Matt Widdows*
_____
By:

Dated: 3/26/2026_____

20

54.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*
By: Paul Geske

Dated: March 28, 2026

**FOR HOMESMART INTERNATIONAL, LLC**

By:

Dated:

20

# Exhibit 4

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) | No. 24-cv-9039 No. 24-cv-11735 |
| | ) ) | No. 25-cv-04207 |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and The National Association of REALTORS® ("Opt-In Settlor" or "NAR") as of the last signature date below.

**A.     Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

Docusign Envelope ID: BDC80774-E692-8CED-8371-E318DE585AA1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Class Period" with respect to Opt-In Settlor means:

   i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

ii.  From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

iii.  From January 25, 2013 to date of Class Notice for homes in Wyoming;

iv.  From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

v.  From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

vi.  From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, and Virginia;

vii.  From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, South Carolina, and Washington; and

viii.  From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2.  "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3.  "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to

appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired (including, for avoidance of doubt, expiration of the time to file a petition for writ of certiorari with the U.S. Supreme Court or the disposition of any such petition) or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4. "Hooper" means the case captioned *1925 Hooper LLC et al. v. The Nat'l Ass'n of Realtors et al.*, No. 1:23-cv-5392-MHC (N.D. Ga.).

5. "Keel II" means the case captioned *Keel et al. v. Charles Rutenberg Realty, Inc. et al.*, No. 4:25-cv-00759-SRB (W.D. Mo.).

6. "Lutz" means the case captioned *Lutz et al. v. HomeServices of America, Inc. et al.*, No. 24-cv-10040 (S.D. Fl.).

7. "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Batton v. The National Association of REALTORS*, No. 21-cv-00430 (N.D. Ill.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid directly or indirectly to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

8. "Released Parties" means:

4

Docusign Envelope ID: BDC80774-E692-8CFD-8371-F318DE585AA1

i.      Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their and licensees' officers, directors, shareholders, managers, managing directors, employees, agents, and independent contractors.

ii.     Any REALTORS® (persons who are members of the National Association of REALTORS®), REALTOR-Associate® Members, and REALTOR® Member Boards that do not operate an unincorporated multiple listing service, and all of their respective past and present, direct and indirect, predecessors, successors (all as defined in SEC rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), and all of their officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, that (i) is a member of the National Association of REALTORS® on the date of Class Notice; (ii) complies with NAR rules and policies as reflected in the practice changes in Paragraph 30

Docusign Envelope ID: BDC80774-E692-8CED-8371-F318DE585AA1

of this Opt-In Agreement; and (iii) does not assert any claims in the time period specified in Paragraph 32 they may have against the National Association of REALTORS®, any REALTOR® Member Boards, or any REALTOR® MLS based on any or all of the same factual predicates for the claims alleged in the Litigation or the practice changes in this Opt-In Agreement. Any Settlement Class Member shall have the right to inquire of the National Association of REALTORS® as to whether a person is a REALTOR®, REALTOR-Associate® Member, or REALTOR® Member Board and has satisfied the conditions for being a "Released Party," and the National Association of REALTORS® shall promptly provide this information.

iii. Any REALTOR® MLS (including a REALTOR® Member Board that operates an unincorporated multiple listing service), including its respective past and present, direct and indirect, subsidiaries, predecessors, successors (all as defined in SEC rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), and all of their officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, provided the REALTOR® MLS (i) complies with NAR rules and policies as reflected in the practice changes in Paragraph 30 of this Opt-In Agreement; and (ii) does not assert any claims in the time period specified in Paragraph 32, they may have against the National

6

Docusign Envelope ID: BDC80774-E692-8CED-8371-F318DE585AA1

Association of REALTORS®, any REALTOR® Member Boards, or any REALTOR® MLS based on any or all of the same factual predicates for the claims alleged in the Litigation or the practice changes in this Opt-In Agreement.

iv. Any non-REALTOR® MLS (including a REALTOR® Member Board that operates an unincorporated multiple listing service), including its respective past and present, direct and indirect, subsidiaries, predecessors, successors (all as defined in SEC rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), and all of their officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, but only if that non-REALTOR® MLS (i) complies with NAR rules and policies as reflected in the practice changes in in Paragraph 30 of this Opt-In Agreement; (ii) does not assert any claims in the time period specified in Paragraph 32, they may have against the National Association of REALTORS®, any REALTOR® Member Boards, or any REALTOR® MLS based on any or all of the same factual predicates for the claims alleged in the Litigation or the practice changes in this Opt-In Agreement.

v. Any real estate brokerage, including all of their respective past, present, and future, direct and indirect, subsidiaries, predecessors, successors (all as defined in SEC rule 12b-2 promulgated pursuant to the Securities Exchange

7

Act of 1934), and all of their franchisees, officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, but only if that brokerage (i) has a REALTOR® as a Principal with membership in the National Association of REALTORS® on the date of Class Notice; (ii) has a Principal who was a Participant in any MLS (including a Member Board that operates an unincorporated multiple listing service) at any time during the Class Period; (iii) complies with NAR rules and policies as reflected in the practice changes in Paragraph 30 of this Opt-In Agreement; and (iv) does not assert any claims, in the time period specified in Paragraph 32, they may have against the National Association of REALTORS®, any REALTOR® Member Boards, or any REALTOR® MLS based on any or all of the same factual predicates for the claims alleged in the Litigation or the practice changes in this Opt-In Agreement. Any Settlement Class Member shall have the right to inquire of the National Association of REALTORS® as to whether a Person is a REALTOR®, REALTOR-Associate® Member, or REALTOR® Member Board and has satisfied the conditions for being a "Released Party," and the National Association of REALTORS® shall promptly provide this information.

vi. Notwithstanding the foregoing, "Released Parties" as used in this Opt-In Agreement shall not include any persons or entities that have settled or been named as a defendant in any lawsuit or action alleging claims that share the

8

same factual predicate as those asserted in the Litigation as of April 10, 2026 when Opt-In Settlor announces this Settlement publicly, including, for avoidance of doubt, the defendants that are or were named in the Litigation, Burnett, Gibson, Keel, Keel II, Hooper, or Lutz.

vii.     This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

9.     "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

10.     "Settlement" means the settlement of the Released Claims against Opt-In Settlor and the Released Parties as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

11.     "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson, Keel,  Keel II, or Hooper, but only as to Opt-In Settlor.

12.     "Opt-In Settlor Monetary Amount" shall be $52,250,000.00.

### C.    **Operation of the Settlement**

13.    Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement and confirmation in writing that Opt-In Settlor has selected Option 1 as defined in Section G of the Class Settlement Agreement.

14.    As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

### D.    **Stipulation to Class Certification**

15.    Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

16.    The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

17.    Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.**     **Approval of this Opt-In Agreement**

18.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

19.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

20.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

21.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil

11

Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

22.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

23.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

24.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

25.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c. directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d. reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

26. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.** **Releases, Discharge, and Covenant Not to Sue**

27. Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties

Docusign Envelope ID: BDC80774-E692-8CED-8371-F318DF585AA1

from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct.  In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

28.     The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims. Nevertheless, the Releasing Parties expressly, fully, finally, and forever settle and release, and, upon the Effective Date, shall be deemed to have, and by operation of the final judgment and order of dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, without regard to the subsequent discovery or existence of such other, different, or additional facts. The Releasing Parties hereby expressly waive and release, solely with respect to

14

the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

29.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement,

or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.      Practice Changes

30.      As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

      i.      eliminate and prohibit any requirement by Opt-In Settlor, REALTOR® MLSs, or Member Boards that listing brokers or sellers must make offers of compensation to buyer brokers or other buyer representatives (either directly or through buyers), and eliminate and prohibit any requirement that such offers, if made, must be blanket, unconditional, or unilateral;

      ii.      prohibit REALTOR® MLS Participants, subscribers, other real estate brokers, other real estate agents, and their sellers from (a) making offers of compensation on the MLS to buyer brokers or other buyer representatives (either directly or through buyers) or (b) disclosing on the MLS listing

16

broker compensation or total broker compensation (i.e., the combined compensation to both listing brokers and cooperating brokers);

iii.      require that that all REALTOR® MLS Participants working with a buyer enter into a written agreement before the buyer tours any home with the following:

a.      to the extent such a REALTOR® or Participant will receive compensation from any source, the agreement must specify and conspicuously disclose the amount or rate of compensation it will receive or how this amount will be determined;

b.      the amount of compensation reflected must be objectively ascertainable and may not be open-ended (e.g., "buyer broker compensation shall be whatever amount the seller is offering to the buyer"); and

c.      such a REALTOR® or Participant may not receive compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer;

iv.      prohibit REALTORS® and REALTOR® MLS Participants from representing to a client or customer that their brokerage services are free or available at no cost to their clients, unless they will receive no financial compensation from any source for those services;

v.      require REALTORS® and REALTOR® MLS Participants acting for sellers to conspicuously disclose to sellers and obtain seller approval for any payment or offer of payment that the listing broker or seller will make to

17

another broker, agent, or other representative (e.g., a real estate attorney) acting for buyers; and such disclosure must be in writing, provided in advance of any payment or agreement to pay to another broker acting for buyers, and specify the amount or rate of any such payment;

vi. require REALTORS® and REALTOR® MLS Participants to disclose to prospective sellers and buyers in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government-specified form, (b) in their agreement with buyers if it is not a government-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents are a government form, then REALTORS® and REALTOR® MLS Participants must include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable.;

vii. require that REALTORS® and REALTOR® MLS Participants and subscribers must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered to the buyer broker or other buyer representative assisting the buyer unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

18

Docusign Envelope ID: BDC80774-E692-8CED-8371-F318DE585AA1

> viii. develop educational materials that reflect and are consistent with each provision in these practice changes, and eliminate educational materials, if any, that are contrary to it.

31. The practice changes in Paragraph 30 of this Opt-In Agreement shall not prevent sellers from offering buyer concessions on a REALTOR® MLS (e.g., for buyer closing costs), so long as such concessions are not limited to or conditioned on the retention of or payment to a cooperating broker, buyer broker, or other buyer representative.

32. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 30 will sunset 3 years after Opt-In Settlor makes the final installment payment as set forth below in Paragraph 36. Moreover, if an action is brought against Opt-In Settlor by the United States Department of Justice, United States Federal Trade Commission, or any State Attorney General and a final judgment is entered by a court (with all stay rights exhausted) which requires Opt-In Settlor to adopt any practice changes that are inconsistent with the practice changes required by this Opt-In Agreement, Opt-In Settlor may comply with the terms of such judgment, unless the judgment is reversed or vacated, notwithstanding the practice changes specified in this Opt-In Agreement. In such circumstance, Opt-In Settlor will continue to be obligated to observe the practice changes specified in this Opt-In Agreement that are not affected by any such judgment.

33. Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

34. If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to

19

resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

35.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.      The Opt-In Settlor Monetary Amount**

36.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account in six installments as follows:

    i.      Opt-In Settlor will deposit $3,000,000.00 into a sub-account within the Escrow Account assigned to Opt-In Settlor within 60 days after the Court enters an order granting final approval of the Settlement and this Opt-In Agreement;

    ii.     Opt-In Settlor will deposit $3,000,000.00 into the Escrow Account by June 1, 2028 or within one year after the Effective Date, whichever is later;

    iii.    Opt-In Settlor will deposit $6,000,000.00 into the Escrow Account within one year after payment of the second installment set forth above;

    iv.     Opt-In Settlor will deposit $9,000,000.00 into the Escrow Account within one year after payment of the third installment set forth above;

    v.      Opt-In Settlor will deposit $13,000,000.00 into the Escrow Account within one year after payment of the fourth installment set forth above; and

    vi.     Opt-In Settlor will deposit $18,250,000.00 into the Escrow Account within one year after payment of the fifth installment set forth above.

37.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

38.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement. All interest accrued on the Opt-In Settlor Monetary Amount will remain in the Global Settlement Fund and be distributed in accordance with the terms of the Class Settlement Agreement.

39.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

40.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

41.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms

21

of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

42. Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

43. The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or

22

any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

44. Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

## J. **Rescission**

45. This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal or upon United States Supreme Court review, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

46. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

47. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor

agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

48.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

49.     If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

50.     Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

51.     Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a

final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

### K.     Miscellaneous

52.     This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used by any Party as an admission of any fault or omission by Opt-In Settlor, or be offered by any Party in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

53.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

54.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

25

Docusign Envelope ID: BDC80774-E692-8CED-8371-F318DE585AA1

55.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

56.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

57.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

58.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs

Docusign Envelope ID: BDC80774-E692-8CFD-8371-F318DE585AA1

and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

59.     No Party shall issue any public statement, press release or public communication regarding this Opt-In Agreement or the subject matter thereof until Opt-In Settlor has first issued an initial public statement regarding the Settlement Agreement. No party shall issue a public statement that is not consistent with the material aspects of the agreed settlement terms.

60.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*

By:  Paul Geske

Dated: April 9, 2026

**FOR THE NATIONAL ASSOCIATION OF REALTORS®**

Nykia Wright

B299BB083A9D413...

By:  Nykia Wright

Dated: 4/9/2026

27

# Exhibit 5

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |

### Opt-In Agreement

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates LLC ("Opt-In Settlor") as of the last signature date below.

**A.** **Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

B.      **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1.      "Class Period" with respect to Opt-In Settlor means:

i.  From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

ii. From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

iii. From January 25, 2013 to date of Class Notice for homes in Wyoming;

iv. From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

v. From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

vi. From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico,  North Carolina, and Virginia;

vii. From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington; and

viii. From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure

**EXECUTION COPY**

and dismissing the Litigation[1] with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4.       "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Lutz v. HomeServices of America, Inc.*, *et al.*, 4:24-cv-10040-KMM (S.D. Fla.), including, but not limited to, in any original complaints (and/or prior amended complaints therein), based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate. Notwithstanding the foregoing, Released Claims shall not include any claims alleged (or which share the same factual predicates as those claims) by persons who are putative class members, class members, or settlement class members in Gibson.

---

[1] "Litigation" is defined in the Class Settlement Agreement as Tuccori v. At World Properties, LLC, 1:24-cv-00150 (N.D. Ill.); Maslanka et al. v. Baird & Warner, Inc., No. 1:24-cv-02399 (N.D. Ill.); Hartz v. Real Estate One, Inc., No. 1:24-cv-03160 (N.D. Ill.); Wallach et al. v. Silvercreek Realty Group LLC, No. 1:24-cv-3356 (N.D. Ill.); Zawislak et al. v. Equity Realtors L.L.C. d/b/a Equity Real Estate et al., No. 24-cv-9039 (N.D. Ill.); Lopez v. NextHome, Inc. et al., No. 24-cv- 11735 (N.D. Ill.); Lopez v. Jennifer Ames Chicago, Inc., No. 1:25-cv-04207 (N.D. Ill.).

4

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

5. "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

6. "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

7. "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

8. "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement

5

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett or Gibson , but only as to Opt-In Settlor.

9. "Opt-In Settlor Monetary Amount" shall be thirty million dollars ($30,000,000.00).

**C. Operation of the Settlement**

10. Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement, which confirms in writing that Opt-In Settlor has selected Option 1 as defined in Section G of the Class Settlement Agreement, and attended an in person mediation conducted by Judge James F. Holderman (Ret.).

11. As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D. Stipulation to Class Certification**

12. Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13. The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes

6

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

other than for purposes of the Settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

## E.     Approval of this Opt-In Agreement

15.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

18.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

19.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, only to the extent that such information is both reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett or Gibson, within 30 days after Settlement Class Counsel files the Notice Motion.

21.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be

8

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22. In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c. directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d. reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be

9

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

24.      Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation and/or *Lutz v. HomeServices of America, Inc., et al.*, 4:24-cv-10040-KMM (S.D. Fla.), as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct.  In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

25.     The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

26.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation and/or *Lutz v. HomeServices of America, Inc., et al.*, 4:24-cv-10040-KMM (S.D. Fla.)), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation and/or *Lutz v. HomeServices of America, Inc., et al.*, 4:24-cv-10040-KMM (S.D. Fla.).

## G.     <u>Practice Changes</u>

27.     As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors) will implement or maintain the following Practice Changes:

- advise and periodically remind Opt-In Settlor's company-owned brokerages, franchisees (if any), and their agents that there is no Opt-In Settlor requirement that they must make offers of compensation to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

- require that any Opt-In Settlor company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (i) in their listing agreement if it is not a government or MLS-specified form, (ii) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (iii) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any Opt-In Settlor franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

- prohibit all Opt-In Settlor company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free (unless they are, in fact, not receiving any compensation for those services from any party);

- require that Opt-In Settlor company-owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

- prohibit Opt-In Settlor company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or

13

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

taking manual actions to filter out or restrict MLS listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

- advise and periodically remind Opt-In Settlor company-owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

- for each of the above points, for company-owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

- display offers of compensation made by listing brokers or agents, where such compensation data is available and/or provided by Opt-In Settlor company-owned brokerages for all active listings by Opt-In Settlor on its own brokerage website(s), and shared on bhhs.com or that brokerage's associated Opt-In Settlor regional franchise network website(s), and require company owned brokerages (and recommend and encourage that franchisees and agents) include their cooperative compensation offers (if any) on any listings that they publicly display or share with prospective buyers through IDX or VOW displays, or through any other form or format. For purposes of this paragraph, " Opt-In Settlor own brokerage" includes Opt-In Settlor 's subsidiary-owned brokerages and its franchisees.

14

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

- Nothing in this Opt-In Agreement requires that Opt-In Settlor 's owned brokerages eliminate minimum commission requirements, nor shall anything in this Settlement Agreement constitute approval by Plaintiffs or their counsel of any minimum commission requirements employed by Opt-In Settlor or Opt-In Settlor 's owned brokerages.

28.     If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

29.     Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

30.     If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.     The Opt-In Settlor Monetary Amount**

32.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows:

    i.  $10,000,000 within thirty days after the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice, notwithstanding any appeals.

    ii.  $3,250,000 on or before July 1, 2027.

    iii.  $3,250,000 on or before July 1, 2028.

    iv.  $3,250,000 on or before July 1, 2029.

    v.  $3,250,000 on or before July 1, 2030.

    vi.  $7,000,000 on or before July 1, 2031.

In Opt-In Settlor's sole discretion, Opt-In Settlor may satisfy its payment obligations hereunder by remitting its payment obligations early.

33.    In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount. Under no circumstances will Opt-In Settlor be required to pay costs above and beyond the express payment obligations in this Opt-In Agreement.

34.    The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

35.    Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

36.    There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

16

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

37. As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

38. Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

39.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

40.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.     Rescission**

41.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless

18

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

42. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

43. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

44. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

45. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

46. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, and defenses relating to arbitration, in the event of the rescission of this Agreement.

47. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

K. **Miscellaneous**

48. This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation and in *Lutz v. HomeServices of America, Inc., et al.*, 4:24-cv-10040-KMM (S.D. Fla.). This Opt-In Agreement,

the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded or otherwise becomes ineffective. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction, arbitration, and failure to state a claim.

53.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In

21

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*
_____
By: Paul Geske

Dated: April 17, 2026

22

BoldSign Document ID: 65d78156-84ad-46bc-83ce-ec5e526aaa72

**EXECUTION COPY**

**FOR HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, AND HSF AFFILIATES LLC**

*Chris Kelly*                                        President & CEO

By:   Chris Kelly

Dated:   04/17/2026

23

# Exhibit 6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Compass, Inc. ("Opt-In Settlor") as of the last signature date below.

**A.     Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Class Period" with respect to Opt-In Settlor means:

    i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

    ii.   From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

    iii.   From January 25, 2013 to date of Class Notice for homes in Wyoming;

    iv.   From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

    v.   From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

    vi.   From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, and Virginia;

    vii.   From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington; and

    viii.   From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2.    "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3.    "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to

3

appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4.      "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Batton et al. v. Compass, Inc. et al.*, No. 1:23-cv-15618 (N.D. Ill.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

5.      "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees,

4

agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

6.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

7.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

8.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

9.      "Opt-In Settlor Monetary Amount" shall be $7,331,250.

**C.      Operation of the Settlement**

10.      Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement confirming that Opt-In Settlor has selected "Option 2" as defined in Section G of the Class Settlement Agreement.

11.     As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.     Stipulation to Class Certification**

12.     Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13.     The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     Approval of this Opt-In Agreement**

15.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

18.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

19. To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20. Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

21. Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22. In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

    a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

    b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal

Rules of Civil Procedure and directing its consummation according to its terms;

c.      directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d.      reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23.     As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

24.     Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in

9

law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

25. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

10

WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26. The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.    Practice Changes

27. As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and

11

future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

i. advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

ii. require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their

12

agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

28. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

13

29.     Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

30.     If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

## H.     The Opt-In Settlor Monetary Amount

32.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows: $1,000,000.00 within 14 days of the entry of an order granting preliminary approval to this Opt-In Agreement, with the remaining balance due within 14 days after the Effective Date.

33.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

34.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

14

35.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

36.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

37.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs,

15

and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

38.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

39.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

40. Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J. Rescission**

41. This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

42. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

43. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

44. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal

of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

45. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

46. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

47. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or

18

on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

### K.     Miscellaneous

48.     This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated

to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

53.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55.     Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Opt-In Agreement.


**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*

By: Paul Geske

Dated: <u>April 11, 2026</u>


**FOR COMPASS, INC.**

By: Chahira Solh
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
csolh@crowell.com
949-263-8400

Dated: <u>April 10, 2026</u>

21

# Exhibit 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES TUCCORI, individually and on )
behalf of similarly situated individuals, et al. )    No. 1:24-cv-00150
    )
    *Plaintiffs,*    )    Hon. Lindsay C. Jenkins
    )
    v.    )    Consolidated with:
    )
AT WORLD PROPERTIES, LLC, an Illinois )    No. 24-cv-02399
Limited Liability Company, et al.    )    No. 24-cv-03160
    )    No. 24-cv-3356
    *Defendant.*    )    No. 24-cv-9039
    )    No. 24-cv-11735
    )    No. 25-cv-04207
    )

## Opt-In Agreement

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and eXp World Holdings, Inc. ("Opt-In Settlor") as of the last signature date below.

**A.** **Recitals**

WHEREAS, Plaintiffs and other home buyers have filed lawsuits, including the above-caption action and *Batton, et al. v. Compass, Inc., et. al.*, No. 23-cv-15618 (N.D. Ill.) claiming that real estate brokerages and the National Association of Realtors ("NAR") conspired to fix the rate of commissions paid to real estate brokers through adherence to certain NAR Rules and that the purported conspiracy adversely impacted the commissions paid or the price of homes purchased by home buyers.

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling

1

57687443.1

Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement

2

57687443.1

Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1.    "Class Period" with respect to Opt-In Settlor means:

        i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

        ii.    From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

        iii.    From January 25, 2013 to date of Class Notice for homes in Wyoming;

        iv.    From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

        v.    From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

        vi.    From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, and Virginia;

3

vii.     From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington; and

viii.     From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2.     "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3.     "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4.     "Hooper" means the case captioned *1925 Hooper LLC et al. v. The Nat'l Ass'n of Realtors et al.*, No. 1:23-cv-5392-MHC (N.D. Ga.).

5.     "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Hooper* based on any or all of the same factual predicates as those claims,

4

including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

6. "Released Parties" means Opt-In Settlor, eXp Realty, and all of their respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

7. "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their

5

57687443.1

capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

8.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

9.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Hooper, but only as to Opt-In Settlor.

10.      "Opt-In Settlor Monetary Amount" shall be $4,335,000.00.

## C.      Operation of the Settlement

11.      Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement confirming that Opt-In Settlor has selected "Option 2" as defined in Section G of the Class Settlement Agreement.

12.      As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

## D.      Stipulation to Class Certification

13.      Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement

6

is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

14.     The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

15.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     Approval of this Opt-In Agreement**

16.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

17.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement.

7

57687443.1

Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

18. To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

19. Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

20. To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

8

21.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Hooper within 30 days after Settlement Class Counsel files the Notice Motion.

22.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

23.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

      a.     certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

      b.     approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

      c.     directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

9

57687443.1

d.      reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

24.      As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

25.      Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that

57687443.1

share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

26.     The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above,

11

without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

27.    The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.    Practice Changes

28.    As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates,

12

57687443.1

predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

i. advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that as a seller's agent there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

ii. require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their

13

57687443.1

agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) to identify properties that fit their client's needs regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities and the client has not directed them not to do so;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

29.     If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 28 will sunset 5 years after the Effective Date.

30.     Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

31.     If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

32.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.     The Opt-In Settlor Monetary Amount**

33.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows: $1,000,000 within 30 days after the entry of an order granting preliminary approval to this Opt-In Agreement, with the remaining balance due within 30 days after the Effective Date.

34.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

35.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

15

57687443.1

36. Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

37. There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

38. As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation

16

among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

39.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

40.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

57687443.1

41.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.     Rescission**

42.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

43.     A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

44.     If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

45.     If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or

18

renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

46.     If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

47.     Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

48.     Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and

19

any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

## K.    Miscellaneous

49.    This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

50.    Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

51.    The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

52.    Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

53.    The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed

20

by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

54. The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

55. Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In

21

Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

56. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*

By: Paul Geske

Dated: April 14, 2026

**FOR EXP WORLD HOLDINGS, INC.**

By:

Dated: 4-14-26

22

# Exhibit 8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, COURTNEY FOREGGER, KEVIN CWYNAR, DAWID ZAWISLAK, MICHAEL D'ACQUISTO, and ALEJANDRO LOPEZ a/k/a ALEJANDRO LOPEZ, individually and on behalf of similarly situated individuals, | ) ) ) ) ) ) ) | No. 1:24-cv-00150<br><br>Hon. Lindsay C. Jenkins<br><br>Consolidated with: |
| *Plaintiffs*, | ) ) ) | No. 24-cv-02399<br>No. 24-cv-03160 |
| v. | ) ) | No. 24-cv-3356<br>No. 24-cv-9039 |
| AT WORLD PROPERTIES, LLC, *et al.*, | ) ) | No. 24-cv-11735<br>No. 25-cv-04207 |
| *Defendants*. | ) | |

## <u>OPT-IN CLASS SETTLEMENT AGREEMENT WITH FATHOM REALTY, LLC</u>

This Opt-In Class Settlement Agreement with Fathom Realty, LLC (the "Opt-In Agreement") is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Defendant Fathom Realty, LLC ("Opt-In Settlor") as of the last signature date below.

### A.      <u>Recitals</u>

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement (ECF 58-1) with certain Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations in this Litigation and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

B.    **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

2

1.      "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

2.      "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

3.      "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

4.      "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities

3

Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

5.     "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

6.     "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

7.     "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes, defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in *Burnett*, *Gibson*, or *Keel*, but only as to Opt-In Settlor.

8.  "Opt-In Settlor Monetary Amount" shall be $250,000.00.

**C.  Operation of the Settlement**

9.  Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor must deliver to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement Agreement both of the following: (i) an executed version of this Opt-In Agreement, and (ii) a confirmation in writing that Opt-In Settlor has selected either "Option 1," "Option 2," or "Option 3" as defined in Section G of the Class Settlement Agreement. In the event that Opt-In Settlor selects Option 3, Opt-In Settlor must also deliver to Settlement Class Counsel a declaration sworn pursuant 28 U.S.C. § 1746 by a competent officer of Opt-In Settlor accurately attesting to the Opt-In Settlor's Total Transaction Volume for each of the most recent four calendar years.

10.  As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.  Stipulation to Class Certification**

11.  Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Class Action Settlement Agreement or this Opt-In Agreement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

12.  The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or

5

concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement, and none of them shall be admissible in evidence for any such purpose in any proceeding.

13.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     <u>Approval of this Opt-In Agreement</u>**

14.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

15.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall have a reasonable opportunity to review and comment on the proposed preliminary approval order, but not the preliminary approval motion, and Plaintiffs shall reasonably consider Opt-In Settlor's comments.

16.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of

6

seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

17.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

18.     To mitigate the costs of notice, Plaintiffs shall disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

19.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in *Burnett*, *Gibson* or *Keel*, within 30 days after Settlement Class Counsel files the Notice Motion.

20. Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, on behalf of Opt-In Settlor, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

21. In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the text of which Opt-In Settlor shall have an opportunity to review and comment upon, and Plaintiffs shall reasonably consider Opt-In Settlor's comments. The terms of the final approval order will include, at a minimum, the substance of the following provisions:

a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c. directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d. reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

8

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

22. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

23. Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct.  In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued

9

from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

24. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim,

10

whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

25.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

**G.      Practice Changes**

26.     As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

      i.     advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

11

ii. require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

27. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 26 will sunset 5 years after the Effective Date.

28. Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its reasonable best efforts to implement the Practice Changes specified in this Section.

29. If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to

resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

30.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel and ordered by the Court.

**H.     The Opt-In Settlor Monetary Amount**

31.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account in three installments as follows:

First installment: $83,300, which is due within ten (10) business days of the Effective Date

Second installment: $83,300, which is due no later than one year after first installment

Third installment: $83,400, which is due no later than one year after second installment

32.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

33.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

34.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

35.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded

14

from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

36.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

37.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to

15

the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

38.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

39.     Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.      Rescission**

40.     This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement as to Opt-

16

In Settlor or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving the Settlement and this Opt-In Agreement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

41. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

42. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Opt-In Settlor elects in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

43. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

44. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global

17

Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

45.    Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

46.    Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

## K.    **Miscellaneous**

47.    The Opt-In Agreement resulted from arm's-length settlement negotiations between the Plaintiffs' counsel and counsel for Opt-In Settlor, including lengthy negotiations over the terms and contours of this Opt-In Agreement. Opt-In Settlor and Plaintiffs entered into this Opt-In Agreement after they considered the risks and costs of continuing litigation. Opt-In Settlor and

18

Plaintiffs agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The terms of the Opt-In Agreement must be kept strictly confidential until a motion for preliminary approval is filed, except as necessary for Opt-In Settlor to meet its financial reporting obligations or consult with any of its lenders or creditors, or as required by law.

48.     This Opt-In Agreement, the final judgment, any and all negotiations, documents, and discussions associated with them, and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-

In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

53.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54.     This Agreement may be executed in counterparts by Plaintiffs and Opt-In Settlor, and a facsimile or pdf signature exchanged by hand, mail, or electronic mail shall be deemed an original signature for purposes of executing this Agreement.

55.     Each of Plaintiffs and Opt-In Settlor acknowledge that they have been and are being fully advised by competent legal counsel of their own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that each of Plaintiffs' and Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such counsel and of their own free will. Plaintiffs and Opt-In Settlor submit to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach

20

an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

56.     Each of the undersigned represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*
By: Paul Geske

Dated: April 13, 2026

**FOR FATHOM REALTY, LLC**

By:     Marco Fregenal

Dated:     4/9/26

21

# Exhibit 9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendants*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Realty ONE Group Inc. and Kempa and Associates LLC d/b/a Realty ONE Group Excel (together, "Opt-In Settlor") as of the last signature date below.

**A.      Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.**     **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1.     "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

2

2. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

3. "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Cwynar v. The Real Brokerage, Inc., et al.*, No. 1:25-cv-07289 (N.D. Ill.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

4. "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers,

3

employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

5.       "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

6.       "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

7.       "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

8.       "Opt-In Settlor Monetary Amount" shall be $500,000.00.

4

**C.** **Operation of the Settlement**

9. Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement.

10. As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.** **Stipulation to Class Certification**

11. Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

12. The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

13. Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.      Approval of this Opt-In Agreement**

14.      The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

15.      As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

16.      To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

17.      Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil

6

Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

18.     To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

19.     Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

20.     Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

21.     In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c. directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d. reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e. determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

22. As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

F. **Releases, Discharge, and Covenant Not to Sue**

23. Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties

8

from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

24.  The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

25.     The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty,

10

malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.     Practice Changes

26.     As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

i.     advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

ii.     require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend

11

and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.     prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv.     require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v.      prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi.     advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

12

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

27. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 26 will sunset 5 years after the Effective Date.

28. Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

29. If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

30. Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

## H. The Opt-In Settlor Monetary Amount

31. As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account as follows:

i. $200,000 to be deposited by 6/1/28

ii. $200,000 to be deposited by 2/15/29

iii. $100,000 to be deposited by 8/15/29

32.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

33.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

34.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

35.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

36.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the

14

Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

37.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

38.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released

Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

39.    Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.    Rescission**

40.    This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

41.    A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

42.    If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

16

43. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

44. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

45. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

46. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of

17

Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

### K. Miscellaneous

47. This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

48. Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

49. The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

50. Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

18

51.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

52.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

53.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on

19

such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

54. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*
By: Paul Geske

Dated: April 21, 2026

**FOR REALTY ONE GROUP INC.**

By: Leo Caseria

Dated: 4/21/26

**FOR KEMPA AND ASSOCIATES LLC D/B/A REALTY ONE GROUP EXCEL**

By: Leo Caseria

Dated: 4/21/26

20

# Exhibit 10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendant*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and Umro Realty Corp d/b/a The Agency ("Opt-In Settlor") as of the last signature date below.

**A.     Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

## B.      Definitions

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1.      "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

2

2.     "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

3.     "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Cwynar v. The Real Brokerage, Inc., et al.*, No. 1:25-cv-07289 (N.D. Ill.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

4.     "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers,

3

employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees, agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

5.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

6.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

7.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

8.      "Opt-In Settlor Monetary Amount" shall be $300,000.00.

4

**C.      Operation of the Settlement**

9.      Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel within 180 days after the entry of an order granting preliminary approval to the Class Settlement Agreement an executed version of this Opt-In Agreement.

10.      As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.      Stipulation to Class Certification**

11.      Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

12.      The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

13.      Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

5

**E.      Approval of this Opt-In Agreement**

14.      The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

15.      As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

16.      To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

17.      Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

18. To mitigate the costs of notice, Plaintiffs shall endeavor to disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

19. Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

20. Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

21. In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

7

a.  certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

b.  approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c.  directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d.  reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United State District Court for the Northern District of Illinois, Eastern Division; and,

e.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

22.  As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

23.  Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties

8

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

24. The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

25. The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty,

10

malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G.    Practice Changes

26.    As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

i.    advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

ii.    require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend

11

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

12

vii.    for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

27.    If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 26 will sunset 5 years after the Effective Date.

28.    Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its best efforts to implement the Practice Changes specified in this Section.

29.    If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

30.    Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel.

**H.    The Opt-In Settlor Monetary Amount**

31.    As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account in accordance with the following schedule: $300,000 of total payments comprised of: a) $7,000 per month for 35 months **commencing on the later of**: i) July 1, 2028 or ii) the first of the month following completion of settlement payments required pursuant to the Supplemental Settlement Agreement to Appendix C – Brokerage "Opt In" Agreement in *Burnett v. The National*

*Association of Realtors*, Case No. 19-cv-00332-SRB and *Moehrl v. The National Association of Realtors*, Case No. 19-cv-01610-ARW; and b) a final lump sum payment in month 36 of $55,000.

32.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

33.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

34.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

35.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

36.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms

14

of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs, and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

37.     Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

38.     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or

15

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

39. Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.** **Rescission**

40. This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment modifying or setting aside this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

41. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

42. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor

agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

43. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

44. If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

45. Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

46. Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a

17

final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

## K.     Miscellaneous

47.     This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

48.     Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

49.     The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

18

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

50.     Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

51.     The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

52.     The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

53.     Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs

Docusign Envelope ID: 45A1DAED-E9A6-4701-923B-1FCC5D8DA436

and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

54.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*

By: CB7151FB17954DB...

Dated: _4/13/2026_

**FOR UMRO REALTY CORP D/B/A THE AGENCY**

*Rainy Austin*

By: 08CB80D36C204A7...

Dated: _4/13/2026_

20

# Exhibit 11

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES TUCCORI, individually and on behalf of similarly situated individuals, et al. | ) ) ) | No. 1:24-cv-00150 |
| *Plaintiffs*, | ) ) | Hon. Lindsay C. Jenkins |
| v. | ) ) | Consolidated with: |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company, et al. | ) ) ) | No. 24-cv-02399 No. 24-cv-03160 No. 24-cv-3356 |
| *Defendants*. | ) ) ) ) | No. 24-cv-9039 No. 24-cv-11735 No. 25-cv-04207 |
| | ) | |

**Opt-In Agreement**

This Opt-In Agreement is made and entered into by and between Plaintiffs, both individually and on behalf of the Settlement Class, and United Real Estate Holdings, LLC d/b/a United Real Estate Group ("Opt-In Settlor") as of the last signature date below.

**A.      Recitals**

WHEREAS, Plaintiffs have entered into a Class Settlement Agreement with the Settling Defendants to resolve certain claims stemming from Plaintiffs' allegations that the Settling Defendants participated in a conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act and certain state laws;

WHEREAS, Plaintiffs, through their counsel, have conducted an investigation into the facts and the law regarding Opt-In Settlor's alleged participation in the alleged conspiracy to raise, fix, maintain, or stabilize real estate broker commissions in violation of Section 1 of the Sherman Act, state antitrust laws, and state consumer protection laws, and have concluded that a settlement

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members;

WHEREAS, Opt-In Settlor denies Plaintiffs' allegations and any charges of wrongdoing or liability of any kind but nevertheless has decided to enter into this Opt-In Agreement to avoid the expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by the Class Settlement Agreement and this Opt-In Agreement, and to put to rest with finality all claims and allegations that Plaintiffs and Settlement Class Members have or could have asserted against Opt-In Settlor; and

WHEREAS, Opt-In Settlor has agreed, in addition to providing the monetary compensation set forth below, to implement certain practice changes, each as set forth in this Opt-In Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Plaintiffs, individually and on behalf of the Settlement Class, and Opt-In Settlor that certain actual or potential claims be settled, compromised, and dismissed with prejudice as to Opt-In Settlor and, except as hereinafter provided, without costs as to Plaintiffs, the Settlement Class, or Opt-In Settlor, subject to the approval of the Court, on the following terms and conditions:

**B.** **Definitions**

Plaintiffs and Opt-In Settlor agree that the capitalized terms used in this Opt-In Agreement shall be defined and interpreted in accordance with the definitions set forth in the Class Settlement Agreement unless otherwise specified herein. The following terms, as used in this Opt-In Agreement only, have the following meanings:

1. "Class Period" with respect to Opt-In Settlor means:

    i. From January 25, 2006 to date of Class Notice for homes in Puerto Rico;

2

ii. From January 25, 2011 to date of Class Notice for homes in Rhode Island and Louisiana;

iii. From January 25, 2013 to date of Class Notice for homes in Wyoming;

iv. From January 25, 2015 to date of Class Notice for homes in Alabama, Connecticut, Hawaii, Indiana, Maine, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Vermont, and Wisconsin;

v. From January 25, 2016 to date of Class Notice for homes in Arkansas, Kentucky, Illinois, Iowa, Missouri, Utah, and West Virginia;

vi. From January 25, 2017 to date of Class Notice for homes in Arizona, California, Washington D.C., Delaware, Florida, Georgia, Idaho, Nebraska, Nevada, New Hampshire, New Mexico,  North Carolina, and Virginia;

vii. From January 25, 2018 to the date of Class Notice for homes in Alaska, Colorado, Kansas, Maryland, Mississippi, Montana, Oklahoma, and South Carolina, and Washington; and

viii. From January 25, 2019 to date of Class Notice for homes in Texas and for all other homes across the United States.

2. "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

3. "Effective Date" means the date when both of the following conditions have occurred: (a) the Court has entered a final judgment and order approving the Class Settlement Agreement and this Opt-In Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Litigation with prejudice; and (b) the time for appeal or to seek permission to

appeal from the Court's approval of the Class Settlement Agreement and this Opt-In Agreement and the entry of a final judgment has expired or, if appealed, approval of the Class Settlement Agreement and this Opt-In Agreement and the final judgment have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

4.      "Released Claims" means any and all state and federal claims regardless of the cause of action arising from or related to conduct that was or could have been alleged in the Litigation or in *Batton et al. v. Compass, Inc. et al.*, No. 1:23-cv-15618 (N.D. Ill.) based on any or all of the same factual predicates as those claims, including but not limited to claims based on antitrust laws, consumer protection or other state laws, and/or anticompetitive conduct relating to the commissions negotiated, offered, obtained, or paid to brokerages, or the impact of the foregoing on the purchase price, in connection with the purchase of residential real estate.

5.      "Released Parties" means Opt-In Settlor and all of its respective past, present, and future direct and indirect parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, licensees, officers, directors, managing directors, shareholders, members, managers, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all of their franchisees' and sub-franchisors' and licensees' officers, directors, shareholders, members, managers, managing directors, employees,

4

agents, and independent contractors. This Opt-In Agreement shall not result in the release of any claims against any other party or non-party not specifically listed herein.

6.      "Releasing Parties" means Plaintiffs and any Settlement Class Members, including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, members, shareholders, managers, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or the Settlement Class Members.

7.      "Settlement" means the settlement of the Released Claims against Opt-In Settlor as contemplated by the Class Settlement Agreement and this Opt-In Agreement.

8.      "Settlement Class" means the class of persons that will be certified by the Court for Settlement purposes defined in Paragraph 15 of the Class Settlement Agreement. The Settlement Class shall not include individuals who have separately released the Released Claims against Opt-In Settlor in a court approved class settlement in Burnett, Gibson or Keel, but only as to Opt-In Settlor.

9.      "Opt-In Settlor Monetary Amount" shall be $487,500.00.

**C.      Operation of the Settlement**

10.     Plaintiffs and Opt-In Settlor agree that, as a condition precedent for this Opt-In Agreement to become effective, Opt-In Settlor has delivered to Settlement Class Counsel an executed version of this Opt-In Agreement confirming that Opt-In Settlor has selected "Option 1" as defined in Section G of the Class Settlement Agreement.

5

11.     As a condition for being a Released Party, Opt-In Settlor agrees to be bound by this Opt-In Agreement, including the practice changes reflected in Section G of this Opt-In Agreement.

**D.     Stipulation to Class Certification**

12.     Plaintiffs and Opt-In Settlor hereby stipulate, for purposes of the Settlement only, that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes. The Plaintiffs and Opt-In Settlor further stipulate that if, for any reason, the Settlement is rescinded, then the Plaintiffs' and Opt-In Settlor's stipulation to class certification as part of the Settlement shall become null and void.

13.     The Class Settlement Agreement, this Opt-In Agreement, and any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of the Opt-In Agreement, shall not be construed as or deemed to be evidence of an admission or concession by Opt-In Settlor that a class should be or should have been certified for any purposes other than for purposes of the Settlement , and none of them shall be admissible in evidence for any such purpose in any proceeding.

14.     Opt-In Settlor reserves all of its legal rights and defenses with respect to any claims brought by individuals who timely and validly request to be excluded from the Settlement Class.

**E.     Approval of this Opt-In Agreement**

15.     The Plaintiffs and Opt-In Settlor agree to make reasonable best efforts to effectuate this Opt-In Agreement in conjunction with the Settlement, including, but not limited to, seeking the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Litigation as against the Opt-In Settlor.

16.     As set forth in Paragraph 40 of the Class Settlement Agreement, no later than 35 days after the end of the Opt-In Period, Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve this Opt-In Agreement. The motion shall be accompanied by a proposed amended complaint adding Opt-In Settlor as a defendant in the Litigation. The motion shall include a proposed form of order preliminarily approving the Opt-In Agreement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of the Settlement. Unless agreed otherwise, Opt-In Settlor shall not have an opportunity to review and comment on the preliminary approval motion.

17.     To the extent the Court finds that this Opt-In Agreement does not meet the standard for preliminary approval, Plaintiffs and Opt-In Settlor will negotiate in good faith to attempt to modify the Opt-In Agreement to be resubmitted for approval, either directly or with the option of seeking assistance of the Special Master for Mediation, and will endeavor to resolve any issues to the satisfaction of the Court.

18.     Plaintiffs and Opt-In Settlor agree to the use of the Settlement Administrator to administer the Settlement's notice and claims process. Subject to approval by the Court, the Settlement Administrator will undertake a method of providing notice to the Settlement Class Members of this Opt-In Agreement in conjunction with notice and claims administration of the Class Settlement Agreement that meets the requirements of due process and Federal Rule of Civil Procedure 23 and is substantially similar to the forms of notice provided under the Class Settlement Agreement. Settlement Class Members who file a claim to receive compensation from the Class Settlement Agreement will be deemed to also make a claim for compensation under this Opt-In Agreement unless they affirmatively state they are not claiming relief under this Opt-In Agreement.

7

Docusign Envelope ID: 9842E775-CA05-44C8-BB76-C59AF0E85BB4

19. To mitigate the costs of notice, Plaintiffs shall disseminate a combined notice to the Settlement Class of the Class Settlement Agreement and this Opt-In Agreement along with any other settlements with other opt-in settlors that have been or are reached by the end of the Opt-In Period. The Notice Motion and the Notice Form shall be governed by Sections J, K, and L of the Class Settlement Agreement.

20. Opt-In Settlor agrees to cooperate with Settlement Class Counsel and the Settlement Administrator by providing contact information for Settlement Class Members, to the extent that such information is reasonably accessible and is the type of data provided by the Opt-In Settlor (if any) in Burnett, Gibson or Keel, within 30 days after Settlement Class Counsel files the Notice Motion.

21. Within ten (10) calendar days after the filing with the Court of this Opt-In Agreement and the accompanying motion papers seeking its preliminary approval, the Settlement Administrator shall, at Opt-In Settlor's expense, cause notice of this Opt-In Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

22. In connection with the filing of a motion seeking final approval of the Settlement, Plaintiffs shall timely seek entry of a final judgment and order as to Opt-In Settlor, the terms of which will include, at a minimum, the substance of the following provisions:

    a. certifying the Settlement Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of the Settlement;

    b. approving finally the Class Settlement Agreement and Opt-In Agreement and their terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal

8

Rules of Civil Procedure and directing its consummation according to its terms;

c.      directing that, as to Opt-In Settlor only, the Litigation be dismissed with prejudice and, except as provided for herein, without costs;

d.      reserving exclusive jurisdiction over the Settlement and this Opt-In Agreement, including the interpretation, administration, consummation, and enforcement of the Settlement, to the United States District Court for the Northern District of Illinois, Eastern Division; and,

e.      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment in the Litigation as to Opt-In Settlor shall be final.

23.    As of the execution date of this Opt-In Agreement, Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement and the Opt-In Agreement shall not be rescinded except in accordance with Section J. This Opt-In Agreement shall become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**F.      Releases, Discharge, and Covenant Not to Sue**

24.    Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in

9

law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of Class Notice of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Litigation, as well as any claims that share any or all of the same factual predicates as those claims, including but not limited to similar state and federal statutes and other law potentially applicable to such alleged conduct. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (a) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of Class Notice; and (b) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims. For avoidance of doubt, this release extends to, but only to, the fullest extent permitted by law.

25.     The Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming Effective, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE,

10

WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR" or any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Effective, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

26. The Releasing Parties intend by this Opt-In Agreement to settle with and release only the Released Parties, and Plaintiffs and Opt-In Settlor do not intend this Opt-In Agreement, or any part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort claim based on a factual predicate in the Litigation), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a Settlement Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Settlement Class Member paid an excessive commission or home price based on a factual predicate in the Litigation.

## G. Practice Changes

27. As soon as practicable, and in no event later than thirty (30) days after the Effective Date, Opt-In Settlor (defined for purposes of this Paragraph to include Opt-In Settlor's present and

11

Docusign Envelope ID: 9842F775-CA05-44C8-BB76-C59AF0E85BB6

future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors, and franchisees) will implement or maintain the following Practice Changes:

i. advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

ii. require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government or MLS-specified form, (b) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then the Opt-In Settlor will require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that any franchisees and their

12

agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free unless they will receive no financial compensation from any source for those services;

iv. require that company owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind company owned brokerages and their agents of their obligation (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

28. If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 27 will sunset 5 years after the Effective Date.

13

29.     Opt-In Settlor acknowledges that the Practice Changes set forth herein are a material component of this Opt-In Agreement and agrees to use its reasonable best efforts to implement the Practice Changes specified in this Section.

30.     If any disputes arise regarding the scope of the foregoing commitments to change practices or compliance with said commitments, Plaintiffs and Opt-In Settlor shall attempt to resolve it by agreement. If they are unable to resolve their dispute, they shall have the option to refer the dispute to the Special Master for Mediation for binding resolution.

31.     Opt-In Settlor agrees to provide proof of compliance with these practice changes if requested by Settlement Class Counsel and ordered by the Court.

## H.     The Opt-In Settlor Monetary Amount

32.     As consideration for the agreements and releases set forth herein, and in exchange for the full, complete, and final settlement of the claims asserted in the Litigation as provided in this Agreement, Opt-In Settlor shall deposit the Opt-In Settlor Monetary Amount into the Escrow Account in four installments as follows:

First installment of $97,500.00: Due within ten (10) business days of the Effective Date

Second installment of $121,875.00: Due one year after the first installment

Third installment of $121,875.00: Due one year after the second installment

Fourth installment of $146,250.00: Due one year after the third installment

33.     In no event will Opt-In Settlor's monetary liability with respect to the Settlement exceed the Opt-In Settlor Monetary Amount.

34.     The Escrow Account and Global Settlement Fund will be administered, and funds from it dispersed and distributed, as set forth in Sections I, M, N, and P of the Class Settlement Agreement.

14

35.     Opt-In Settlor will not have any responsibility for, or liability in connection with, the Global Settlement Fund, including, but not limited to, the investment, administration, maintenance, or distribution thereof.

36.     There will be no reduction of the Opt-In Settlor Monetary Amount or the Global Settlement Fund based on any Settlement Class Members who submit requests to be excluded from the Settlement. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Opt-In Settlor regardless of the claims that are made.

37.     As set forth in Section M of the Class Settlement Agreement, the distribution of the Global Settlement Fund shall be administered pursuant to the Plan of Allocation proposed by Settlement Class Counsel in their sole discretion and subject to the approval of the Court. Opt-In Settlor will have no participatory or approval rights with respect to the Plan of Allocation. It is understood and agreed by Plaintiffs and Opt-In Settlor that any proposed Plan of Allocation, including, but not limited to, any adjustments to the amount(s) of Settlement Class Members' payments, is completely independent of and is not a part of this Opt-In Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Opt-In Agreement. Plaintiffs and Opt-In Settlor shall be bound by the terms of this Opt-In Agreement irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Opt-In Agreement or otherwise operate to terminate, modify, or cancel this Opt-In Agreement. Neither the Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Settlement Class Counsel, Plaintiffs,

15

Docusign Envelope ID: 9842E775-CA05-44C8-BB76-C59AF0E85BB4

and/or any other person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation.

38.    Subject to the terms of the Class Settlement Agreement, and subject to Court approval, Plaintiffs may apply to the Court for an award of past, current, or future reasonable litigation costs and expenses, an award of reasonable attorneys' fees, and any service award(s) to the class representative(s). Any such awards shall be payable solely from the Global Settlement Fund, including the Opt-In Settlor Monetary Amount, subject to Court approval.

39.    The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for the class representative(s) to be paid out of the Global Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any Order or proceeding relating to a request for attorneys' fees and reimbursement of expenses or service awards, or any appeal from any such Order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the Settlement. Except as otherwise provided herein, Opt-In Settlor nor any other Released Party under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel and/or Plaintiffs or any fee and expense award, or service award, in the Litigation. The Releasing Parties will look solely to the Global Settlement Fund for monetary relief and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Opt-In Settlor or the Released Parties.

16

40. Opt-In Settlor has no responsibility to make any filings relating to the Global Settlement Fund or to pay taxes or tax expenses with respect thereto, and has no liability or responsibility for the taxes or expenses incurred in connection with taxation matters.

**J.      Rescission**

41. This Opt-In Agreement will be deemed rescinded 30 days after an Order from the Court declining to certify the Settlement Class as defined in the Class Settlement Agreement and this Opt-In Agreement, declining to grant preliminary or final approval of the Settlement or this Opt-In Agreement in all material respects, or materially modifying or setting aside this Opt-In Agreement or any judgment approving this Settlement in any material respects on appeal, unless Plaintiffs and Opt-In Settlor agree in writing that the Opt-In Agreement shall continue within twenty-nine (29) days of the order.

42. A modification or reversal on appeal of any amount of the Global Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses or service awards shall not be deemed a modification of all or a part of the terms of this Opt-In Agreement or the final judgment and order.

43. If the Class Settlement Agreement is rescinded pursuant to Section P of the Class Settlement Agreement, then Settlement Class Counsel shall provide Opt-In Settlor notice of the rescission and this Opt-In Agreement shall also be rescinded unless Plaintiffs and Opt-In Settlor agree in writing within ten (10) days of the event triggering rescission that this Opt-In Agreement shall continue.

44. If this Opt-In Agreement is rescinded, Plaintiffs and Opt-In Settlor agree that pending deadlines applicable to Opt-In Settlor in the Litigation (if any) that were mooted by the execution of this Opt-In Agreement shall be reset, and no Party shall contend that filing or renewal

17

of any motions or pleadings were rendered untimely or were waived by operation of this Opt-In Agreement.

45.     If this Opt-In Agreement is rescinded, Opt-In Settlor will no longer be a Released Party, it will not be bound by this Opt-In Agreement, and the Settlement Administrator shall return Opt-In Settlor's Balance (defined below) to Opt-In Settlor from the Escrow Account within thirty (30) days of the rescission (the "Recission Date"). Opt-In Settlor's Balance is equal to the Opt-In Settlor's Monetary Amount paid into the Escrow Account as of the Recission Date, less the Opt-In Settlor's Share (defined below) of permitted expenses paid from or incurred against the Global Settlement Fund as of the Recission Date, plus the Opt-In Settlor's Share of interest paid into or accrued in the Global Settlement Fund as of the date of the Recission Date. The Opt-In Settlor's Share is equal to the amount of the Opt-In Settlor Monetary Amount paid into the Global Settlement Fund as of the Recission Date divided by the total of all Settling Defendants' and opt-in settlors' Monetary Amounts paid into the Escrow Account as of the Recission Date.

46.     Opt-In Settlor does not waive, and hereby expressly reserves, all of its legal rights and defenses, including, but not limited to, any defenses relating to the lack of personal jurisdiction, in the event of the rescission of this Agreement.

47.     Opt-In Settlor warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Opt-In Agreement is executed. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Opt-In Settlor's Monetary Amount, or any portion thereof, by or on behalf of Opt-In Settlor to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such amount is not promptly deposited in the Escrow Account by or

18

on behalf of Opt-In Settlor, then, at the election of Class Counsel, this Opt-In Agreement may be terminated and the releases given and the judgment entered as to Opt-In Settlor pursuant to the Settlement shall be null and void.

**K.      Miscellaneous**

48.      This Opt-In Agreement and any actions taken to carry out the Settlement are not intended to be, nor shall they be deemed or construed to be, an admission or concession of liability or of the truth or validity of any claim or allegation, defense, or point of fact or law on the part of any party. Opt-In Settlor denies the material allegations in the Litigation. This Opt-In Agreement, the fact of the Settlement, any approval proceedings, the negotiations as to the Settlement and this Opt-In Agreement, and any related documents, shall not be used as an admission of any fault or omission by Opt-In Settlor, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Opt-In Settlor in any proceeding.

49.      Any disputes between Plaintiffs and Opt-In Settlor concerning this Opt-In Agreement shall, if they cannot be resolved, be presented to the Special Master for Mediation for assistance in mediating a resolution.

50.      The provisions of this Opt-In Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

51.      Any disputes relating to this Opt-In Agreement will be governed by Illinois law without regard to conflicts of law provisions.

52.      The Court shall retain jurisdiction over the interpretation, approval, implementation, and enforcement of the Class Settlement Agreement, the Settlement, and this Opt-In Agreement, but will not use that stipulation or Opt-In Settlor's agreement to be governed by Illinois law as grounds for personal jurisdiction over an Opt-In Settlor in any litigation unrelated

19

Docusign Envelope ID: 9842F775-CA05-44C8-BB76-C59AF0E85BB6

to the interpretation, approval, implementation, or enforcement of this Opt-In Agreement, including, but not limited to, litigation of claims or potential claims against Opt-In Settlor in the event that the Class Settlement Agreement and/or this Opt-In Agreement is rescinded. For the avoidance of doubt, Opt-In Settlor does not waive but rather reserves all defenses and rights, including, but not limited to, those concerning personal jurisdiction and failure to state a claim.

53. The Class Settlement Agreement (including the Exhibits and Appendices attached thereto) and this Opt-In Agreement constitute the entire agreement among Plaintiffs and Opt-In Settlor pertaining to the Settlement and resolution of any claims or potential claims against Opt-In Settlor. This Opt-In Agreement may be modified or amended only by a writing executed by Plaintiffs and Opt-In Settlor.

54. Opt-In Settlor acknowledges that it has been and is being fully advised by competent legal counsel of Opt-In Settlor's own choice and fully understands the terms and conditions of the Class Settlement Agreement and this Opt-In Agreement, and the meaning and import thereof, and that Opt-In Settlor's execution of this Opt-In Agreement is with the advice of such Opt-In Settlor's counsel and of Opt-In Settlor's own free will. Opt-In Settlor submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of this Opt-In Agreement, including but not limited to, the practice changes contained therein. Plaintiffs and Opt-In Settlor each represents and warrants that it has sufficient information to reach an informed decision and has, independently and without relying upon other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Opt-In Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Opt-In Agreement.

55. Each of the undersigned represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Opt-In Agreement.

**FOR PLAINTIFFS & SETTLEMENT CLASS COUNSEL**

*Paul Geske*

By: Paul Geske

Dated: April 20, 2026

**FOR UNITED REAL ESTATE HOLDINGS, LLC D/B/A UNITED REAL ESTATE GROUP**

Signed by:

*M. Daniel Duffy*

ECD740617745459...

By: M. Daniel Duffy

Dated: Apr 20, 2026 | 4:03 PM PDT

21