



FILED
5/29/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAN

DMITRY SHKIPIN (*pro se*)
support@homeopenly.com
325 Sharon Park Dr. #416
Menlo Park, CA 94025
Telephone: 650.281.6962

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| James Tuccori, et al.<br><br>       Plaintiff,<br><br>  v.<br><br>At World Properties, LLC, et al.<br><br>       Defendant. | Case No.: 1:24-cv-00150<br><br>**GEODOMA'S STATEMENT IN SUPPORT OF CONSUMERS**<br><br>Judge:     Hon. Lindsay C. Jenkins |

## STATEMENT

Your Honor, respectfully and fully aware of the value of your time, I am now taking the opportunity to correct certain information in my Amicus Brief (ECF 149). *Errare humanum est* (to err is human) ... *sed perseverare autem diabolicum* (to persist in error is of the devil).

According to Consumers' recent Motion (ECF 168) *"26 Settling Parties have collectively agreed to contribute a total of $120,334,500 to the Global Settlement Fund. By any measure, this is an exceptional result for the Settlement Class"* where *"only approximately 21-24% of homebuyers have "buyer-only" claims unreleased by the home seller settlements"* where *"[o]ne would therefore expect the settlements in this case to be—at most—between 1/10 (10%) and 1/8 (12.5%) of the direct purchaser settlements before accounting for any other factors"* where *"[t]he settlements here are thus equal to* **12.57%** *(120,334,500/957,023,154) of the direct purchaser settlements"* when compared with Gibson et al. home seller settlements.

I learned about the 12.5% figure only after I submitted my Amicus Brief (ECF 149), in which I had incorrectly estimated potential damages and the Tuccori et al. lawsuit at $100 billion, compared to $200 billion in potential damages in Gibson et al. In this new perspective (taking into account the correct 12.5% ratio between these lawsuits), the proposed $120,334,500 Global Settlement Fund makes more sense in comparison to the much greater $957,023,154 settlement yield in Gibson et al.

However, the rest of my argument described in the Amicus Brief (ECF 149) still holds water:

> **(1)** **The estimated damages in the Tuccori et al. and Gibson et al. lawsuits getting settled are in the hundreds of billions USD, and**

> **(2)** **The *proposed* Practice Changes aimed at addressing the conduct that led to the litigation are not going to produce any viable outcomes until all seller concessions**

GEODOMA'S STATEMENT IN SUPPORT
OF CONSUMERS

Case No.: 1:24-cv-00150

> **made to cover buyer-paid commissions when working with NAR-affiliated MLS Participants are properly capped as Interested Party Contributions (IPCs), until the <u>Gibson et al.</u> Settlement Agreement is set to expire on August 17, 2031.**

According to the HousingWire Article titled, "***What's different about the $200B(!)***

***Gibson commission lawsuit,***" published on November 8, 2023, by Brooklee Han -

The Missouri judge who oversaw the landmark Sitzer/Burnett real estate commission lawsuit will also preside over the Gibson lawsuit brought by Michael Ketchmark, who represented the plaintiffs in Sitzer/Burnett.

The class action-seeking Gibson case was assigned to Judge Stephen Bough, whose forthcoming injunctive relief ruling in the Sitzer/Burnett case is keeping the real estate industry rapt. ***Damages for the Gibson suit could exceed $200 billion before automatic trebling, according to comments Ketchmark shared with Inman News.***

"One of our goals in filing the Gibson case is to make sure any changes are brought nationwide," Ketchmark told the publication. "We're extremely focused on making sure any change that comes from this is real change."

Prior to the filing of the Gibson suit, the Moehrl commission lawsuit in Illinois was considered the largest threat to the industry, with trebled damages that could reach roughly $40 billion.

Accepted by the court on Oct. 31, 2023, the Gibson lawsuit pits three Missouri home sellers, Don Gibson, Lauren Criss and John Meiners, against National Association of Realtors, Compass, eXp World Holdings, Redfin, Weichert Realtors, United Real Estate, Howard Hanna and Douglas Elliman.

Like the Sitzer/Burnett, Moehrl and Nosalek lawsuits, the Gibson suit accuses the defendants of conspiring to inflate real estate agent commissions in violation of the Sherman Antitrust Act. According to the plaintiffs' initial complaint filing, the "cornerstone of the conspiracy" is NAR's cooperative compensation rule, which requires all home sellers to make a blanket, unilateral offer of buyer broker compensation when listing a property on the MLS.

While many aspects of this lawsuit mirror that of the Sitzer/Burnett suit, including the lead attorney for the plaintiffs, the allegations made, and the judge overseeing the case, there are some notable differences in Gibson, including the much larger defendant list; the evidence that will be presented; and the fact that ***the suit encompasses home sales nationwide***, not just in Missouri. (Source: https://www.housingwire.com/articles/whats-different-about-the-200b-gibson-commission-lawsuit/ )

GEODOMA'S STATEMENT IN SUPPORT
OF CONSUMERS                                           3                          Case No.: 1:24-cv-00150

If we are to apply this $200 billion estimate (which is, by itself, a reasonable potential damages estimate in Gibson et al. lawsuit, based on $1.8 billion verdict in Burnett et al. and Moehrl et al. cases extrapolated nationwide) against the 12.5% ratio, **the potential damages in this lawsuit can be correctly estimated at $25 billion.**

The $25 billion divided by $120 million is still firmly separated by a ratio of 200/1 (a half-of-a-penny-on-a-dollar). For this reason (if nothing else), I urge this Court to carefully consider the simple fact that the *proposed* Practice Changes in the Settlement Agreement are "blanket" and not catalytic to make any difference. In fact, the *proposed* Practice Changes will only further facilitate NAR's lies and NAR's anticompetitive conduct. It is a well-established fact that nothing has changed since the Gibson et al. settlement took effect on August 17, 2024 –

> Anecdotal evidence from inside the industry suggests you will have to pay near 6%. One real-estate broker who is a member of the Moneyist Facebook (META) Group is less optimistic about any significant reduction in commission rates. "***That lawsuit essentially did nothing but add more paperwork.*** Essentially if you want to sell your house and be protected as much as possible, you'll pay 5%-6%, usually split between your agent and the buyer's agent," she wrote. (Source: https://www.morningstar.com/news/marketwatch/2026052523/im-selling-my-1-million-home-will-my-agent-really-charge-less-than-a-6-commission )

Today, two homebuyers, Buyer A and Buyer B, want to purchase a $1M home in Illinois. Both of them hire NAR-affiliated MLS Participants and sign the required Buyer Broker Agreements (BBAs) to receive lawful professional real estate settlement services (hopefully, free from 25%-40% RESPA-banned kickbacks shelled out into Zillow Preferred (Flex), Realtor.com (OpCity-UpNest), Rocket/Rocket Homes, Redfin Partner Program, Lower.com/OJO, Opendoor Key Agent/Opendoor Home Loans, HomeStory, Blend Realty, Better.com Real Estate, Veterans United Home Loans/Veterans United Realty, New American Funding/NAF Homes, HomeLight,

Clever Real Estate, IDEAL AGENT, EffectiveAgents, FastExpert, TopAgentsRanked, SOLD.com, homegenius, HouseCanary (ComeHome), Dave Ramsey RamseyTrusted Agent, "Real Estate Agents Glenn Beck Trusts," etc.)

Buyer A goes out of their way to negotiate a competitive 1% fee ($10,000), and Buyer B simply accepts the "typical" 3% fee ($30,000) without hard negotiations (or any other negotiated rates: I am merely suggesting these figures as an example.) Buyer A submits an offer for $1,010,000 with a concession request for $10,000, and Buyer B submits an offer for $1,030,000 with a concession request for $30,000. The seller nets the same exact amount from either offer - the seller literally does not care which one of these offers to accept.

Because the economic value difference between $1,010,000 and $1,030,000 is negligible, Buyer A and Buyer B are making nearly identical offers for the same home, but they are also paying very different commissions ($10,000 vs. $30,000). This is why the United States Government strictly caps concessions made toward buyer-paid closing costs as Interested Party Contributions (federally-funded mortgage loans are not meant to pay for real estate commissions; they are primarily meant to fund the actual appraised value of the home). GSE's Interested Party Contributions caps protect the borrower, the lender, and the overall integrity of the transaction.

According to NAR, *"the total value of concessions is typically limited to a percentage of the home's sale price, with maximum seller concessions set between 3%-6%, but this may vary."* (Source: https://www.nar.realtor/closing/seller-concession ) which is how the United States Government equalizes the problem for homebuyers being able to ask for reasonable concessions to help them cover buyer-paid closing costs, made as part of their home purchase offers.

To create a viable catalyst for Buyer B to negotiate their "typical" 3% fee ($30,000) for a competitive 1% fee ($10,000), Buyer B must be told that these fees expressly count toward the

maximum seller concessions limits set between 3%-6%. When counted against the IPCs limits, the higher 3% fee ($30,000) brokerage fee becomes a deterrent against the 3%-6% IPCs caps. IF (and ONLY IF) Buyer B has an incentive to to preserve 3%-6% IPCs caps for other valuable concessions, such as 2/1 builder buydowns, etc. (See: https://selling-guide.fanniemae.com/sel/b2-1.4-04/temporary-interest-rate-buydowns ), then the much lower alternative 1% fee ($10,000) is truly "worth it" to negotiate over.

For this reason, when Buyer B signs Buyer Broker Agreements (BBA), they must be made fully responsible for this obligation, in order for them to have a genuine reason to negotiate 3% fee ($30,000) down to 1% fee ($10,000).

When home seller negotiates and pays for the "full" 6% fee ($60,000) that is then shared with the buyer broker pursuant to cooperative brokerage arrangement made in a real estate brokerage capacity, subject to the Real Estate Settlement Procedures Act (RESPA) 12 C.F.R. 1024.14(g)(1)(v) and 12 U.S.C. 2607(c)(3) exemption, home seller pays for this fee with reduced net equity (which gives them a reason to negotiate this "full" 6% fee ($60,000) to a lower figure.) However, when a home seller is presented with two competing offers from Buyer A and Buyer B with two different concession requests ($10,000 and $30,000) to cover buyer-paid closing costs, the seller only cares about the net amount between the two purchase offers.

As my Amicus Brief (ECF 149) explains, NAR currently lies about this distinction with a false claim that *"Fannie Mae and Freddie Mac published explicit confirmations that [until August 17, 2031] commissions for [NAR-affiliated MLS Participants] buyer agents paid by the seller would not count against the buyer."* However, this lie is also a massive False Claims Act (FCA) liability - our Government is being lied to by 1,500,000+ NAR-affiliated MLS Participants who finance their buyer-paid commissions outside of the statutory IPCs caps.

The NAR's lies about this do not go away, but, more importantly, they impede an open marketplace by removing an economic incentive for homebuyers to negotiate real estate commissions. The NAR's lies do not solve anything, because they exist with the sole reason: to preserve the cartel against the fundamental requirement produced by the Gibson et al. Settlement Agreement that mandates that NAR-affiliated MLS Participants buyer commissions are negotiated by homebuyers and be treated as the ***buyer's responsibility***.

Half-truths are often more dangerous than outright lies because they contain just enough truth to appear credible. This is exactly what NAR did by establishing a cardinally false claim that *"Fannie Mae and Freddie Mac published explicit confirmations that [until August 17, 2031] commissions for [NAR-affiliated MLS Participants] buyer agents paid by the seller would not count against the buyer."* This Court is well-versed in logic, and it must see the rudimentary lie that the NAR used to misinterpret the actual guidance that strictly applies to closing costs paid by a seller (i.e., costs that are the ***seller's responsibility***) *"are not subject to the IPC limits."* (Source: https://singlefamily.fanniemae.com/media/38706/display )

This Court holds the full power to fix NAR's false misinterpretations about IPCs limits produced by the Gibson et al. Settlement Agreement, by expressly adjusting the *proposed* Practice Changes in the Tuccori et al. Settlement Agreement to clarify that all concessions made by home sellers toward NAR-affiliated MLS Participants buyer-paid commissions post-settlement are Interested Party Contributions (IPCs) made by third parties with a vested interest in the transaction to cover costs that are the ***buyer's responsibility***.

The NAR cartel caused an estimated $25,000,000,000 price-fixing fraud damages, yet it continues to celebrate the inadequacy of the *proposed* Practice Changes produced by a series of lawsuits posted against them: *"Importantly, there are no additional practice changes for member*

*agents and brokers stipulated by this settlement."* (Source:

https://www.nar.realtor/magazine/real-estate-news/law-and-ethics/judge-preliminarily-approves-tuccori-home-buyer-class-action-settlement )

> "The impediment to action advances action. What stands in the way becomes the
> way." - Marcus Aurelius

As an illegal cartel that has engaged in a $25,000,000,000 felony, NAR inadvertently advances action against itself by explicitly stating how *important* it is for the cartel of 1,500,000+ NAR-affiliated MLS Participants to NOT have any *"additional practice changes."* After all, ***"That lawsuit essentially did nothing but add more paperwork."***

Your Honor, respectfully, please think about what the NAR just published here: *"Importantly, there are no additional practice changes for member agents and brokers stipulated by this settlement."* (Source: https://www.nar.realtor/magazine/real-estate-news/law-and-ethics/judge-preliminarily-approves-tuccori-home-buyer-class-action-settlement ) This statement is a lie. This Court's preliminary approval, indeed, DOES include *"additional practice changes"* - but because these *proposed* Practice Changes are, indeed, "blanket" and not catalytic, the NAR treats them as non-existent and dismissive. This is how brazen this cartel truly is.

NAR does not respect the Constitutional Article III power of this Court: the entire federal court system was engaged to fix NAR's flawed rules used to maintain a price-fixing cartel. NAR wants nothing to change, yet this Court's entire function is to produce a positive change in how Persons (Source: https://schema.org/Person ) Corporations and Government (Source: https://schema.org/Organization ) behave in its jurisdiction.

***"That lawsuit essentially did nothing but add more paperwork"*** is the most disrespectful admission that NAR cartel could possibly have made (this statement ***was*** made by an NAR-

affiliated MLS Participant on social media, where they say exactly what they think) - it implies that NAR cartel was merely a subjected to frivolous litigation by evil class action lawyers who improperly targeted them for what otherwise was perfectly lawful conduct. In reality, NAR was targeted for highly illegal conduct, and the cartel thinks they got away clean to settle $25,000,000,000 in potential damages for $120,334,500 with *"no additional practice changes."*

Your Honor, I invite you to adjust the *proposed* Practice Changes as described in my Amicus Brief (ECF 149), so that your greater effort **becomes the way** for the NAR to remove and re-state the outcome of the $25,000,000,000 Tuccori et al. class action lawsuit as following:

> "Importantly, there are now cardinal additional practice changes for member agents and brokers stipulated by this settlement. Until August 17, 2031, optional concessions for NAR-affiliated MLS Participants buyer agents offered by the seller DO count as Interested Party Contributions (IPCs), and services of NAR-affiliated MLS Participants buyer agents are neither free nor such buyer-paid commissions may be classified as closing costs paid by a seller."

Thank you for your time,


I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 29, 2026


*/s/ Dmitry Shkipin*

Dmitry Shkipin, pro se