**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARK TUCCORI, et al.,<br>Plaintiffs,<br>v.<br>AT WORLD PROPERTIES, LLC, et al.,<br>Defendants. | Case No. 1:24-cv-00150<br><br>Hon. Lindsay C. Jenkins |

# OBJECTION TO *TUCCORI* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER FED. R. CIV. P. 23(h), [Dkt. 197]

# OBJECTION TO *BATTON* PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS UNDER FED. R. CIV. P. 23(h) [Dkt. 195]

# AND CONTINGENT OBJECTION TO THE PROPOSED PLAN OF ALLOCATION UNDER FED. R. CIV. P. 23(e)

**TABLE OF CONTENTS**


**Page**

TABLE OF AUTHORITIES ........ ii

OBJECTOR BACKGROUND ........ 1

INTRODUCTION ........ 2

I. PLAINTIFFS' FORGOT TO EXCLUDE OVER $1 MILLION IN COSTS, AND BOTH *TUCCORI* AND *BATTON* FAILED TO BUILD AN *EX ANTE* MARKET UNDER *BROILER II* ........ 4

A. Plaintiffs offered no *ex ante* bids for a bare assertion of a "one third" fee, and *Batton* plaintiffs' disclosed no Rule 23(h)(1) notice at all with their fee motion ........ 5

B. The seller-side MDL (*Burnett* trial, *Moehrl* class) significantly reduced nonpayment risks before the 2021 analog (*Batton*) stayed its case in October 2024 ........ 6

C. No State AG *ex ante* retainer allowed any complex, antitrust, or real estate cases to take even half of either *Tuccori* or *Batton*'s proposed ~$38 million fees ........ 9

D. *Tuccori*'s early settlement exceeds securities and antitrust case benchmarks ........ 11

II. PLAINTIFFS' FIVE-YEAR OBJECTION HISTORY REQUIREMENT DID NOT HELP TO IMPROVE THE RULE 23(e) OBJECTION PROCESS AT ALL ........ 12

III. HUANG RESERVES HIS CONTINGENT OBJECTION IN THE POSSIBLE EVENT OF A ZERO-DOLLAR RECOVERY IN LIGHT OF *BATTON'S* FEE-SHARING DISPUTES ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allicks v. Omni Specialty Packaging, LLC*, 2020 WL 5648132 (W.D. Mo. Sept. 22, 2020) 13

*Briseno v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) .................................................. 8

*Burnett v. Nat'l Ass'n of Realtors*, 2026 WL 2421806 (8th Cir. Aug. 24, 2026).......... 6, 7, 8

*Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121 (7th Cir. 2023).................... 2

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) .................................................. 13

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) ........................................................ 6

*Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414 (7th Cir. 2015) ................................... 5, 15

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429 (7th Cir. 1994) ....... 5, 15

*In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) .................................. 14

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)......................... 8

*In re Broiler Chicken Antitrust Litig.*, 142 F.4th 568 (7th Cir. 2025) ........... 2, 3, 4, 7, 8, 12

*In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023) .................................. 9

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637, Dkt. 8404 (N.D. Ill. May 21, 2026) ................. 1, 3, 5, 6, 7, 15

*In re Broiler Chicken Antitrust Litig.*,
No. 1:16-cv-08637, Dkt. 8405 (N.D. Ill. May 21, 2026) ....................................... 6

*In re Broiler Chicken Antitrust Litig.*,
No. 16 C 8637, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) .................................. 5

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667 (9th Cir. 2025)...................... 12

*In re Optical Disk Drive Prods. Antitrust Litig.*, 2022 WL 1955672 (9th Cir. June 6, 2022) 1

*In re Optical Disk Drive Prods. Antitrust Litig.*,
No. 3:10-md-02143, Dkt. 3067 (N.D. Cal. Oct. 18, 2021).................................... 1

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998) ................ 8

*In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022) ..................................... 7, 8, 9, 13

*In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*,
869 F.3d 551 (7th Cir. 2017) ........................................................................ 14

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ................................ 4, 7, 8, 11

*Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939) .......................................... 4

*Kukorinis v. Walmart Inc.*, 2021 WL 8892812 (S.D. Fla. Sept. 21, 2021) ......................... 2

*Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985 (9th Cir. 2023) ........................................... 9

*Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ............. 6, 7

*Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399 (7th Cir. 2000) ............................ 5, 15

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) ........................... 2, 3, 4, 5, 6, 12, 14

*Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020) ....................................... 2, 12, 13

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ................ 2, 3, 4, 5, 8, 12, 14

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) .................................. 4, 5

*Rodriguez v. Google LLC*, No. 20-cv-4688-RS (N.D. Cal. Aug. 28, 2026) ............... 3, 6, 7, 8

*Roundy's Inc. v. NLRB*, 674 F.3d 638(7th Cir. 2012) ........................................................ 8

*Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013) .................................. 7, 8

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ................................................... 6

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ......................................................... 14

*Walters v. Target Corp.*, 2019 WL 6467705 (S.D. Cal. Dec. 2, 2019) ............................. 13

**Statutes**

Ariz. Rev. Stat. § 41-4803 .................................................................................. 9

Fla. Stat. § 16.0155........................................................................................ 11

Ky. Rev. Stat. § 45A.717 ................................................................................. 10

Ohio Rev. Code § 9.492 ................................................................................... 11

**Rules**

Fed. R. Civ. P. 23 .......... 12, 13, 14

Fed. R. Civ. P. 23(e)(5) advisory committee's note to 2018 amendment .......... 1

Fed. R. Civ. P. 23(h)(1). .......... 2, 8

Fed. R. Civ. P. 24 .......... 2

Fed. R. Civ. P. 59(e) .......... 2

Fed. R. Evid. 702 .......... 8

Fed. R. Evid. 704 .......... 8

N.D. Ill. L.R. 40.4 .......... 7

**Other Authorities**

Brief Amicus Curiae of Alex Kozinski in Support of Appellants, *Corrente v. Charles Schwab Corp.*, No. 25-40774 (5th Cir. Mar. 30, 2026), Dkt. 88 .......... 2

*Contracts with the Office of the Attorney General*, Ky. Att'y Gen., https://www.ag.ky.gov/Pages/contracts.aspx (last visited Sept. 14, 2026) .......... 10

Janeen McIntosh et al., *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Econ. Consulting Jan. 24, 2023) .......... 11, 12

Joshua Davis & Rose Kohles Clark, *2022 Antitrust Annual Report: Class Actions in Federal Court* (Sept. 2023), https://ssrn.com/abstract=4586022 .......... 11, 12

*RealPage Antitrust Litigation*, Cohen Milstein, https://www.cohenmilstein.com/case-study/realpage-antitrust-litigation/ (last visited Sept. 14, 2026) .......... 10

*RealPage Rent Price-Fixing Antitrust – Arizona*, Hagens Berman, https://www.hbsslaw.com/cases/realpage-rent-price-fixing-state-of-arizona (last visited Sept. 14, 2026) .......... 10

## OBJECTOR BACKGROUND

Shiyang Huang is an absent class member who timely submitted a claim (ID: Y9U4ZTVB). Huang, also a former named plaintiff in class actions, has helped return ~$27 million in cash to class members. He prays that this Court "avoid[s] unduly burdening class members who wish to object, and ... recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards." Fed. R. Civ. P. 23(e)(5) advisory committee's note to 2018 amendment.

District courts and State AGs have repeatedly validated Huang's objections:

***In re Broiler Chicken Antitrust Litig.:*** In this District, Judge Durkin awarded Huang fees after finding that the class saved about $3 million from his objection that expenses must be excluded before percentage fees are calculated under circuit law. No. 1:16-cv-08637, Dkt. 8404 at 5–7, 13 (N.D. Ill. May 21, 2026). Judge Durkin specifically recognized that Huang "seek[s] to benefit the Class," and upheld his additional objections that increased class fund by $0.5 million, *after* Huang moved for an award.

***In re Optical Disk Drive Prods. Antitrust Litig.:*** Huang was credited for a $21 million fee reduction, meriting a $500 award *despite opposition*. No. 3:10-md-02143, Dkt. 3067 at 2 (N.D. Cal. Oct. 18, 2021). An attorney who incorporated Huang's objection won Huang's issue on appeal to add $3.65 million, losing every other issue. *In re Optical Disk Drive Prods. Antitrust Litig.*, 2022 WL 1955672 (9th Cir. June 6, 2022).

***Corrente v. Charles Schwab Corp.,* No. 25-40774 (5th Cir.)*:*** In Huang's pending appeal before the Fifth Circuit, the State of Iowa joined Huang as a fellow appellant and a former Ninth Circuit Chief Judge filed a brief amicus curiae for both appellants. Brief

Amicus Curiae of Alex Kozinski in Support of Appellants, *Corrente v. Charles Schwab Corp.*, No. 25-40774 (5th Cir. Mar. 30, 2026), Dkt. 88.

***Kukorinis v. Walmart Inc.***: Huang's objection led class counsel to voluntarily withdraw over $1.25 million in requested fees and $60,000 in expenses. Huang sought only an $1 token award. 2021 WL 8892812, at *7 & n.4 (S.D. Fla. Sept. 21, 2021).

All of Huang's nominal awards came after *results*, not side deals. Huang also briefed as *amicus curiae* three times in Ninth Circuit class-action appeals alone.[1] He has never withdrawn objections for any payment under Fed. R. Civ. P. 23(e)(5)(B). If any objector or intervenor settles objections for private payoffs, disgorgement is required. *Pearson v. Target Corp.* 968 F.3d 827 (7th Cir. 2020). Huang intends to appear remotely.

**INTRODUCTION**

Huang does not oppose final approval under Rule 23(e), but Plaintiffs' fee request and *Batton* plaintiffs' notice-less Rule 23(h) motion raise a few significant concerns:

***First,*** Plaintiffs (and *Batton* plaintiffs)[2] forfeited all *ex ante* market rate analysis while seeking a fee beyond the *Broiler Chicken* MDL, where the Seventh Circuit *reviewed ex ante fee bids* to set a 26.6% fee for counsel. *In re Broiler Chicken Antitrust Litig.* (*Broiler II*), 142 F.4th 568, 576 (7th Cir. 2025). Instead, both quote a 2021 *interim* fee order, but

[1]***Batton v. Nat'l Ass'n of Realtors,* No. 1:21-cv-00430 *(N.D. Ill.):*** Huang recently moved for class settlement reconsideration and intervention under Fed. R. Civ. P. 59(e) and 24 as he flagged *Batton* plaintiffs' "one third" fee was $1.77 million beyond the fee ratio methodology under *Redman v. RadioShack Corp.,* 768 F.3d 622, 630 (7th Cir. 2014) and *Pearson v. NBTY, Inc.,* 772 F.3d 778, 781 (7th Cir. 2014), plus $100,000+ in non-reimburseable legal research costs under *Craftwood II, Inc. v. Generac Power Sys., Inc.,* 63 F.4th 1121, 1129 (7th Cir. 2023). Huang's motion is pending. *See also* Exhibit C (Huang's objection history).

[2] *Batton* plaintiffs filed a Rule 23(h) motion too, Dkt. 195, but they cannot "share" $38 million when *Tuccori* sought less than *Batton*'s motion—$37.9 million—and *Batton* has not caused any notice to be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

not Judge Durkin's May 2026 ruling setting 26.6% fee for all subclasses in *Broilers* Dkt. 8405 (Exhibit A), or *two published opinions* rejecting the "standard one-third" fee notion twice in *Broilers* alone. "[W]hy [both sets of counsel] did not disclose the information detailed above at the very least" is unknown. Dkt. 103. Even Boies Schiller Flexner's $425 million class-action *jury verdict* win against Google only pays "one third," *Rodriguez v. Google LLC,* No. 20-cv-4688-RS (N.D. Cal. Aug. 28, 2026), a rate *Tuccori* (and *Batton*) now seek without reconstructing *the ex ante* market, and *Tuccori* shared no lodestar.

*Tuccori* plaintiffs are far more procedurally compliant than *Batton*. *Pearson,* 772 F.3d at 781; *Redman,* 768 F.3d at 630. though the numbers are still incorrect. They tried to follow *Redman/Pearson* by excluding notice costs, but calculated a fee for paying all "current and ongoing expenses in excess of one million dollars", Dkt. 197 at 8, not what *Redman/Pearson* intended. Each $38 million is *multiplies* of what State AGs pay for hiring counsel: ***doubles*** D.C. AG's 15% fee for hiring Cohen Milstein ($16.8 million), and ***quadruples*** Hagens Berman's *two antitrust* fee deals with Arizona AG (~$9.13 million).

***Second,*** Plaintiffs' five-year objection disclosure requirement is meritless: it did not deter either *Batton* plaintiffs' fee request or their speculations of "reverse auctions."

***Third,*** Huang preserves a contingent objection in light of *Batton*'s fee disputes, if *Batton* causes zero relief for the smallest claimants or the diversion of funds to *cy pres*.

## LEGAL STANDARD

Each fee applicant bears the burden of showing reasonableness of a fee request. This circuit requires a "market-mimicking approach," which aims "to approximate the terms that the parties would have negotiated ex ante." *Broiler II,* 142 F.4th at 573.

*Synthroid,* 264 F.3d at 718 ("The best measure of the cost of legal services is what people will pay for them in the market."). *Synthroid* guides to review, *e.g.,* (1) actual retainer agreements negotiated at arm's length by sophisticated clients, (2) empirical data from securities class actions for institutional investors, and (3) fee structures established through competitive bidding or auctions. 264 F.3d at 719–20. The *ex ante* market reconstruction must be objective, not cherry-picked. *Broiler II*, 142 F.4th at 573–74.

This Court is a "fiduciary of the class[.]" *Pearson,* 772 F.3d at 780. Under *Redman/Pearson*, fee percentages must be evaluated against actual net class recovery excluding all costs: "[T]he ratio that is relevant to assessing the reasonableness of the attorneys' fee … is the **ratio of (1) the fee to (2) the fee plus what the class members received.**" *Redman,* 768 F.3d at 630 (emphasis added); *id.* at 630 ("Administrative costs should not have been included in calculating the division of the spoils between class counsel and class members."); *Pearson,* 772 F.3d at 781 (same).

Plaintiffs shared no lodestar; but the early settlement supports its disclosure.[3]

## I. PLAINTIFFS' FORGOT TO EXCLUDE OVER $1 MILLION IN COSTS, AND BOTH *TUCCORI* AND *BATTON* FAILED TO BUILD AN *EX ANTE* MARKET UNDER *BROILER II*

Plaintiffs advertise their fee petition as "31.5% of the gross Global Settlement Fund" or "33.25% of the Net Settlement Fund." Dkt. 197 at 2, 8 & n.5. Neither is true. The 31.5% gross figure is decidedly irrelevant because "[t]he ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of

[3] *Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse"); *Redman*, 768 F.3d at 638. It is notable that both motions cited *Broiler II*'s legal standards. "To conceal the applications and in particular their bottom line paralyzes objectors… and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002).

(1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630; *Pearson,* 772 F.3d at 781 (same). The 33.25% correctly removed $6.3 million in notice costs, but the *denominator* remains a moving target. The $37.9 million *bundle* includes "excess of [$1] million" in various costs.[4] Dkt. 197 at 8, Dkt. 197-1 at 13–14. Assuming ~$38 million includes *perhaps* $1.5 million in expenses, the fee ratio is 32.3%, which *still doubles* D.C. AG's Cohen Milstein fee (~15% net) and *quadruples* Hagens Berman's statutory fee rate with Arizona AG in two antitrust cases. *Infra* Part C.

The uncategorized expenses within the attorneys' fee package, Dkt. 197 at 8 & n.5, obscures whether it includes impermissible computerized legal research costs, which *Batton* did, Dkt. 195-1 at 15, requesting $33,922.07 by ignoring circuit law. Judge Durkin recently agreed with Huang that $36,294.38 legal research expenses in *Broilers* cannot be reimbursed.[5] Here, nondisclosure "paralyzes" Huang's analysis that now allows the Court to reject *Batton's* $33,922.07. *Reynolds*, 288 F.3d at 286; *Redman,* 768 F.3d at 638 ("no excuse for permitting so irregular, indeed unlawful, a procedure.").

### A. Plaintiffs offered no *ex ante* bids for a bare assertion of a "one third" fee, and *Batton* plaintiffs' disclosed no Rule 23(h)(1) notice at all with their fee motion

Plaintiffs' fee motion failed to offer ***any*** *ex ante* bids in comparable antitrust cases (*Batton* plaintiffs too; Dkt. 195 at 12–13). Both relied on an *interim* order [6] as the law for "one third," but both *Tuccori* and *Batton*'s fee petitions ignore the *mootness* of that order

---

[4] *Batton*'s counsel recently rejected this view in *Batton* Dkt. 364. Huang will only point them to Judge Posner's own words: "[t]hose costs are part of the settlement but not part of the value received from the settlement by the members of the class." *Pearson,* 772 F.3d at 781.

[5] *Broilers,* No. 1:16-cv-08637, Dkt. 8404 at 4–5, citing *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409–10 (7th Cir. 2000); *Goesel v. Boley Int'l (H.K.) Ltd.,* 806 F.3d 414, 424–25 (7th Cir. 2015); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1440–41 (7th Cir. 1994).

[6] *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250 (N.D. Ill. Dec. 1, 2021)

because Judge Durkin ultimately set all subclasses' fee award to 26.6% in *Broilers,* after two successive appeals and two published appellate opinions on fee issues alone. No. 1:16-cv-08637*,* Dkts. 8404, 8405 (N.D. Ill. May 21, 2026). One might ask "why [both plaintiffs] did not disclose the information detailed above at the very least[.]" Dkt. 103. And no citation can stop forfeiting a market-mimicking bid review *to the facts of this case.*

Plaintiffs' motion (Dkt. 197 at 6–8) instead says a market is "one-third" by string-citing random cases,[7] *forfeiting the duty to identify comparable ex ante bids back in '23-'24*.

But consider *Broilers* (consumers track): Hagens Berman and Cohen Milstein's 26.6% was barely a positive lodestar multiplier after briefing class-certification motions, with no competing firms jockeying for the *Broiler* class counsel appointment.[8] On *ex post* evidence, *Rodriguez v. Google LLC* (N.D. Cal. 2026) is one relevant class: Boies Schiller Flexner got a "one third" fee from a litigation class—a $425 million jury verdict. But Plaintiffs (and *Batton*) want "one third" too, without committing to the same riskiness.

*Tuccori* (and *Batton,* but not Huang) obviously ***bear the burdens*** of reconstructing an *ex ante* market. Huang's State AG fee grid analysis, *infra,* perhaps aren't perfect, but it is wild that Huang did more analysis *more than Tuccori* (plus *Batton*) under *Broiler II*.

**B. The seller-side MDL (*Burnett* trial*, Moehrl* class)[9] significantly reduced nonpayment risks before the 2021 analog (*Batton*) stayed its case in October 2024**

Judge Wood certified a *Moehrl* class in 2023 in and ***Burnett*** plaintiffs secured a historic $1.7 billion jury verdict at trial before settling nationwide with *Moehrl*'s class.

[7] *E.g., Pearson,* 772 F.3d at 778 (fraud); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (ponzi scheme); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (securities fraud).

[8] And other *Broilers* subclasses' counsel even had negative lodestar multipliers (below 1.0x) because ***relevant ex ante bids*** led to **a 26.6% fee rate** without regard to a lodestar multiplier.

[9] *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023); *Burnett v. Nat'l Ass'n of Realtors*, 2026 WL 2421806 (8th Cir. Aug. 24, 2026).

Both ***Burnett*** and ***Moehrl*** significantly reduced noncollection risk under the same industry-conspiracy theory, and ***Batton*** admits to be similar to *Burnett* and tried to derailing it. *Batton* Dkt. 154 (TRO denied). Then, ***Tuccori*** started months after ***Moehrl*** certified a class.[10] Whether *Batton* plaintiffs did much more, they started before *Tuccori.*

It is undisputed that *Tuccori* settlements came out of *Tuccori* counsel's hours. But *Tuccori* joined late, so the reward is also lower: Plaintiffs failed to even justify 26.6% when *Broilers* was going alone. *Broiler II*, 142 F.4th at 575–76. Here, the alleged real estate conspiracy attracted a stampede of competing counsel in *Burnett*, *Moehrl*, *Batton*, and only then, ***Tuccori***—*sheltering six more sibling class actions* under Local Rule 40.4 (Dkt. 52, granted by Dkt. 66). This influx of competing firms demonstrates low perceived risk and the opposite of *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013), where "no other law firm was willing to serve as lead counsel." *Id.* at 958. An unearned windfall fee will not only harm class members through excessive fees, but ***also slight hardworking trial lawyers who truly litigate meritorious cases*** *by rewarding get-rich-quick class actions*. Granting a "one third" windfall for *Tuccori* and *Batton* as if they had litigated novel issues, certified classes (*Broilers, Moehrl*), or had invested in litigation with a risk of nonpayment to reach jury verdicts (*Rodriguez, Burnett*) will effectively invert governing circuit law (*Broiler II*) on the market mimicking approach for fees.

*Tuccori (*and *Batton* to an extent) cannot claim the noncollection risk that ***Moehrl*** and ***Burnett*** took. Cases after mega-settlements on similar facts are "'clear winners' from the start." *Synthroid*, 264 F.3d at 723. The $120 million settled for pennies on the dollar,

---

[10] *In re Stericycle Sec. Litig.*, 35 F.4th 555, 564 (7th Cir. 2022) ("The prior litigation strengthened the securities plaintiffs' case and substantially reduced lead counsel's risk of nonpayment.").

not jury verdicts *Burnett* or *Rodriguez* with exceptional work: the megafund is "merely a [result] of the size of the class and has no direct relationship to the efforts of counsel." [11]

*Tuccori* appears to bore a lower risk of nonpayment, a significant enough factor that a lodestar cross-check appears necessary even for a percentage-based fee proposal. And this circuit has "reversed a fee award when 'the district court did not give sufficient weight to the early stage' of settlement." *Broiler II*, 142 F.4th at 576 (quoting *Stericycle*, 35 F.4th at 566). Here, no lodestar information is available to evaluate under *Stericycle.*[12]

Relatedly, *Batton* plaintiffs also filed a motion to seek (or share) a fee *even higher than Tuccori's fee motion,* without any Rule 23(h)(1) class notice, recycling the same lodestar that got $9.5 million without excluding any expenses under *Redman/Pearson*. [13] Though this Court urged parties to discuss *fee-sharing,* it would be strange if *Batton*

---

[11] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 339 (3d Cir. 1998)); *Silverman,* 739 F.3d at 959 ("it is accordingly hard to justify awarding counsel as much of the second hundred million as of the first. The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases.")

[12] It is possible that *Batton*'s "Counsel may have frittered away hours on pointless motions or unnecessary discovery, padding the lodestar … Or maybe [*Batton*] devoted tremendous hours but achieved very little for the class." *Briseno v. Henderson,* 998 F.3d 1014, 1026 (9th Cir. 2021).

[13] Dkt. 195 at 3 (*Batton*); *Redman,* 768 F.3d at 630 ("[T]he ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received.")

*Batton* plaintiffs also filed a Professor Silver "opinion", Dkt. 195-4, injecting "legal arguments that should be presented to the court in counsel's analysis, not expert opinion testimony." *Roundy's Inc. v. NLRB,* 674 F.3d 638, 648 (7th Cir. 2012) (collecting cases). Because judges are already *legal experts*, Fed. R. Evid. 702 and 704 "prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *Id.*

On the merits, Professor Silver even suggests a one-third fee "significantly understates the risk that *Batton* Counsel actually incurred." Dkt. 195-4 at 10. But "the district court must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001). "No rational person would spend, say, $1 million in legal fees— and endure the hassles and headaches of litigation— to recover only relief that is a small fraction of that amount." *Lowery v. Rhapsody Int'l, Inc.,* 75 F.4th 985, 994 (9th Cir. 2023).

plaintiffs withdraw their "reverse auction" claim, as soon as they can get a share of the fees. Dkts. 195, 199. Huang insists the class should not pay more out of *Batton*'s bitter fee dispute. *Stericycle*, 35 F.4th at 569 & n.10 ("lead counsel's request was never going to be the final word on the subject—the fee still had to be approved by the district court."). It will be absurd if both sets of counsel each receives a "one third" fee, ***leaving far below "one third" after expenses for the class.*** *Batton* plaintiffs say *Tuccori* deals are "reverse auctions", but seeking fees before objecting to the settlement suggests their definition of reverse auctions is largely self-serving.[14] *Batton*'s bitter *fee-sharing disputes* must have no spillover against innocent class members. Any fee must be reasonable under circuit law.

### C. No State AG *ex ante* retainer allowed any complex, antitrust, or real estate cases to take even half of either *Tuccori* or *Batton*'s proposed ~$38 million fees

State AGs also pay *ex ante* fees for private counsel in complex, antitrust, real estate cases. It is obvious states have *parens patriae* powers, and do not need to certify class actions. But the opportunity to litigate for selected cases must be economically enticing enough ***to forgo other opportunities elsewhere***. *In re Broiler Chicken Antitrust Litig.* (*Broiler I*), 80 F.4th 797, 804 (7th Cir. 2023) (relevance of out-of-circuit cases). Most State AG retainer agreements[15] and statutory schedules consistently calculate contingency fees as a percentage of net recovery—real dollars going to the beneficiaries.

---

[14] It is remarkable that *Batton* plaintiffs complain that "reverse auction" happened, Dkt. 157-1 at 1, but (1) claimed they cannot explain why under the Rule 23 objection process, *id., and* (2) first requested a fee before derailing the alleged "reverse auction" settlement. Dkt. 195.

[15] Huang has reviewed almost all contracts below except Hagens Berman's Amazon retainer (verified by Hagens Berman signatories on Arizona's complaint). The retainer contracts are often needles in a haystack, with agreed rates in one page of hundreds, or the contract only points to the governing state statute. Huang shares the exhibits (as proof) but also supplies an Excel spreadsheet summarizing different State AGs' fee grids in detail. *See* Exhibit B.

**Hagens Berman signed 2 deals with Arizona AG in 2023–2024 (Ex Ante):** Ariz. Rev. Stat. § 41-4803 sets the fee: *25% of the first $10 million, 20% of the next $5 million, 15% of the next $5 million, 10% of the next $5 million, and 5% of any recovery over $25 million,* of net recovery. Hagens Berman Sobol Shapiro LLP took Arizona's terms in antitrust lawsuits against RealPage (November 2023) and Amazon (May 2024). The schedule yields net fee rate of 8.1%, barely 1/4 of *Batton* and *Tuccori*'s request.

**The DC AG's Housing and RealPage Retainer (*Ex Ante*):** The D.C. Attorney General hired Cohen Milstein for RealPage antitrust cases at 15% flat of net recovery (10% pre-complaint, 18% at trial). Applied to the ~$112.5 million, 15% yields about **$16.88 million**—less than half of counsel's $37.91 million pursuit.[16] It got $1.4 million.

***Ex Post* 2026 Real Estate Antitrust Retainer for Kentucky:** Recent retainers confirm this pricing structure ex post. DiCello Levitt accepted Kentucky's statutory declining schedule (Ky. Rev. Stat. § 45A.717:) to sue *RealPage* in 2026, which calls for **$7.88 million** on this ~$112.5 million net recovery. Kentucky settled for $115,000.[17]

**Indiana's EpiPen Antitrust Retainer (Ex Ante):** Indiana's retainer with outside counsel in the *EpiPen* antitrust litigation, executed in late 2023, with fee rates lower than AZ/OH/FL statutory rates (0% up to $2 million, then 25%/20%/15%/10%/5%). *Tuccori* would get **$8.63 million** under that schedule. Indiana settled for $6.25 million. [18]

---

[16] *RealPage Antitrust Litigation*, Cohen Milstein, https://www.cohenmilstein.com/case-study/realpage-antitrust-litigation/ (last visited Sept. 14, 2026).
[17] *Contracts with the Office of the Attorney General*, Ky. Att'y Gen., https://www.ag.ky.gov/Pages/contracts.aspx (last visited Sept. 14, 2026).
[18] *Indiana to Receive $6.25 Million in EpiPen Price Gouging Settlement*, Indianapolis Star, reprinted in InkFreeNews (Feb. 12, 2026), https://www.inkfreenews.com/2026/02/12/indiana-to-receive-6-25-million-in-epipen-price-gouging-settlement/.

**Ohio's complex litigation retainers (*Ex Ante*):** Ohio's statutory schedule matches Arizona and Florida's statutory rates. Ohio Rev. Code § 9.492; Fla. Stat. § 16.0155 (same). In September 2024, Boies Schiller Flexner represented Ohio against United Wholesale Mortgage's wholesale mortgage business. In November 2023, a group of lawyers also represented Ohio against Willis Towers Watson. Both retainers used the same grid as Hagens Berman took for Arizona: **$9.13 million.**

State AG *ex ante* rates would pay between $8 million (KY) and $17 million (D.C.). Yet *Tuccori* and *Batton*'s counsel requested ~$38 million each, and $76 million in total.

**D. *Tuccori*'s early settlement exceeds securities and antitrust case benchmarks**

Beyond State AG retainers, "[a] second benchmark for determining legal fees is data from securities suits where large investors have chosen to hire counsel up front. Data about these ex ante arrangements have been widely available since the changes to securities practice wrought by legislation in the mid-1990s." *Synthroid,* 264 F.3d at 720.

***Ex post* NERA Securities Class Action Benchmark:** The *2022 version* (published in 2023) data show that for settlements between $100-$500 million, the median total attorneys' fees and expenses is **26.0%** total, or $29.25 million inclusive of expenses. Janeen McIntosh et al., *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* 21, Figure 22 for $100-500 million (NERA Econ. Consulting Jan. 24, 2023).

**2022 Antitrust Annual Report (32.0% All-In of Net Fund):** Available to *Tuccori* plaintiffs by year 2023, the *2022 Antitrust Annual Report* reports an all-inclusive median of **32.0%** (30.0% fee plus 2.0% expenses) for antitrust settlements of $100 million or more. Applied to the ~$112.5 million true net fund base, this benchmark would lead to

about **$36 million (32.0%).**[19] Notably, the benchmark covers all fees *and all* expenses, unlike Plaintiffs' fee proposal would require the class to shoulder $6.3 million for notice.

**The Ninth Circuit 25% Benchmark (Fee-Only on Net Fund):** The 25.0% benchmark allows **$28.13 million** in fees under the parallel of *Redman/Pearson* net-fund doctrine. *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 680 (9th Cir. 2025).

Here, *Tuccori* settled with "no real litigation," at an "early stage," likely for fees "disproportionate to the work expended by class counsel." *Broiler II,* 142 F.4th at 576.

Each $38 million fee would amount to $44.2 million / 39.3% including notice.

*Compared to NERA Median (26.0% All-In):* Each fee request is 13% higher ($13 million higher). *Compared to 2022 Antitrust Report Median (30.0% Fee / 32.0% All-In):* Plaintiffs' request is 7.3% higher ($6.7 million higher). *Compared to Ninth Circuit 25% Benchmark:* Plaintiffs' fee is 8.7% higher ($9.78 million higher) under *California Pizza Kitchen*, even generously assuming all costs (e.g., legal research costs) were recoverable.

## II. PLAINTIFFS' FIVE-YEAR OBJECTION HISTORY REQUIREMENT DID NOT HELP TO IMPROVE THE RULE 23(e) OBJECTION PROCESS AT ALL[20]

Huang has no intent or history of compromising, or settling objections for selfish, personal gain. But here, *all* objectors must file a five-year objection history for nothing.[21]

And that requirement *did* nothing—it did not stop *Batton* plaintiffs from speculating about "reverse auctions," cannot stop *Batton* from trying to derail the

---

[19] Davis & Clark, *2022 Antitrust Annual Report: Class Actions in Federal Court* 32, Figure 14 (Sept. 2023), https://ssrn.com/abstract=4586022

[20] Huang's experience suggests that *questionable settlements* often use this clause as a procedural barricade, *i.e.,* they often accompany *objectionable settlement*.

[21] Huang is pleased that *Pearson v. Target Corp.*, 968 F.3d 827, 829–30 (7th Cir. 2020), disgorged selfish objectors' private payoffs for abusing Rule 23 objections' purpose). Further, Rule 23(e)(5)(B) now requires disclosures of all kinds of side settlements—*Batton* is also included.

settlements, and will not stop *Batton* from pursuing fee awards from the very "reverse auction" settlements they alleged to be. As the Seventh Circuit emphasized in *Pearson*, "the merits of an objection are relevant, not amateurism or experience." 968 F.3d at 831 n.1; *accord Stericycle,* 35 F.4th at 572 (rejecting ad hominem attacks on a frequently successful objector as "improper and not at all persuasive"). District courts also often reject such papers as "too onerous" and "designed to discourage objections." *Walters v. Target Corp.*, 2019 WL 6467705, at *15 (S.D. Cal. Dec. 2, 2019); *Allicks v. Omni Specialty Packaging, LLC,* 2020 WL 5648132, at *13–14 (W.D. Mo. Sept. 22, 2020).

Demanding a five-year scavenger hunt has little relevance to deterring improper objections: Yet, Plaintiffs' notice penalizes all objectors with an irrelevant paper chase to "properly" object to Plaintiffs' $38 million fee request.

In practice, this feature selectively sandbags all *experienced* objectors. But just as this Court is not deciding Plaintiffs' motion because *Tuccori's attorneys have won or lost other cases in the past*, this requirement is wholly irrelevant to the merits and unduly burdensome under Rule 23(e)(5)(A). Good-faith objectors should not be sandbagged by procedural attacks. *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014).

## III. HUANG RESERVES HIS CONTINGENT OBJECTION IN THE POSSIBLE EVENT OF A ZERO-DOLLAR RECOVERY IN LIGHT OF *BATTON'S* FEE-SHARING DISPUTES

While the settlement fund appears large, *Batton* Plaintiffs' *"reverse auction" and fee-seeking* disputes may put the entire settlement under water. Thus Huang preserves his objection to the settlement if *Batton* plaintiffs successfully scoops a "one third" fee without Rule 23(h)(1) notice, resulting in zero-recovery for the smallest claimants, or a diversion of funds to *cy pres*: the Plan of Allocation has clauses to enable both. Dkt. 200.

There is a nonzero likelihood *Batton* plaintiffs may cause activation of the "big fish eat small fish" or "cy pres" provisions.[22] *But cf. Redman*, 768 F.3d at 638 (rejecting handicapped disclosure for Rule 23(h) motion). Under *Uzuegbunam v. Preczewski*, 592 U.S. 279, 286 (2021), Article III standing requires some favorable redress, or *effectual relief*. As this Circuit emphasized, if a class settlement does not provide "'effectual relief'" to the class and its "'principal effect' is to 'induce the defendants to pay the class's lawyers enough to make them go away,' then the class representatives have failed in their duty under Rule 23 to 'fairly and adequately protect the interests of the class.'"[23]

**CONCLUSION**

For the foregoing reasons, Huang believes final approval of under Rule 23(e) can be supported; however, Objector Huang respectfully requests these narrower relief:

**1. Limit Total Fee Award Against the Net Fund:** (a) calculate a net settlement fund amount exclusive of all litigation costs, notice costs that will not reach class members before fees under *Redman* and *Pearson*; (b) apply a ratio closer to the ***median*** AZ/FL/OH AGs' statutory rate to the net settlement fund for early stage of the case.

Both Rule 23(h) fee applicants provided no *ex ante* market-mimicking analysis, forfeiting the issue. *Batton* plaintiffs' fee motion (especially as a fee-requesting motion) failed to cause *any* Rule 23(h)(1) class notice and fails on that procedural ground alone.

---

[22] The Allocation Plan allows Plaintiffs to declare that administering claims to a particular claimant exceeds the award's value, authorizing an undefined "alternative minimum payment" fixed *post hoc* and reallocating stripped funds to remaining (larger) claimants. Dkt. 200-1 ¶ 12. Counsel also may exclude smallest claimants or donate to non-profits. Dkt. 200-1 ¶ 14. With enough claims, even a modest fund (less if *Batton's* fee extraction succeeds) can quickly run out, risking administrative non-distributability: entry buyers' claims will be absorbed by luxury buyers or *cy pres*. Claims deadline is long after the objection deadline expires.

[23] *In re Subway Footlong Sandwich Mktg. & Sales Pracs. Litig.*, 869 F.3d 551, 556 (7th Cir. 2017), quoting *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752–53 (7th Cir. 2011)).

This Court should not grant *Tuccori* more than **15% of net recovery** as in D.C. AG's fee grid, and should not grant more than **20% net recovery** as to all fee requests.

**2. Disallow Computerized Legal Research Costs:** This Court should strike all of *Tuccori's* and *Batton*'s legal research cost ($33,922.07, Dkt. 195-1 at 15) as double-billing any attorney's fee award under *Craftwood, Haroco*, *Montgomery*, *Goesel*, and *Broilers.*

**3. Waive Five-Year Objection History Disclosure Requirement:** except disclosures of Rule 23(e)(5)(B) settlements, or particularly private payments for settling objections or appeals without any actual, concrete, or measurable class-wide benefits.

**4. Contingent Objection to Distribution:** Huang conditionally does not oppose Rule 23(e) settlement approval or the Plan of Allocation at this juncture, but expressly preserves an objection that the settlement distribution must not lead to a zero-dollar distribution to him as a result of *Tuccori's* fee-sharing disputes, *e.g.,* with *Batton* plaintiffs.

Date: September 15, 2026

Respectfully Submitted,

/s/ Shiyang Huang
Shiyang Huang
2813 SW Rother Rd.,
Topeka, KS 66614
(314) 669-1858
defectivesettlement@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on or before September 15, 2026, I filed the foregoing via CM/ECF.

/s/ Shiyang Huang