**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAMES TUCCORI, *et al.*, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AT WORLD PROPERTIES, LLC, *et al.*,

Defendants.

Case No. 1:24-cv-00150

Judge Lindsay C. Jenkins

***BATTON*** **COUNSEL'S AND PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS**

There is only one question the Court must answer to decide this motion: Did *Batton* Counsel perform work that benefited the *Batton* Defendant[1] common fund? Alan Hirsch, Diane Sheehey & Tom Willging, Fed. Jud. Ctr., *Awarding Attorneys' Fees and Managing Fee Litigation* 71 (3d ed. 2015). *Tuccori* Counsel do not dispute that *Batton* Counsel are the only counsel that litigated against the *Batton* Defendants. They do not dispute that they, in contrast, did not sue the *Batton* Defendants, brief or defeat motions, engage in adversarial discovery, or otherwise litigate against the *Batton* Defendants. Nor do they dispute that in the Seventh Circuit, the market rate for legal services is dependent on assumed risk (*In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)), and that they did not assume any risk as to the *Batton* Defendants. *Batton* Counsel are the *only* counsel to have rendered any litigation services at any risk on behalf of homebuyers against the *Batton* Defendants. *Batton* Counsel's work created and benefited the *Batton* Defendant common fund.

Unable to point to *what* they did to reach the *Batton* Defendant settlements, *Tuccori* Counsel attempt to explain the *why*. *Tuccori* Counsel's single explanation—that the *Batton* Defendants settled with them because *Batton* Counsel were unwilling to settle a buyer-only class—is simply untrue. At no point did *Batton* Counsel refuse to negotiate a buyer-only class with any defendant. Indeed, *Batton I* defendant RE/MAX had no trouble settling a buyer-only class with *Batton* Counsel. The reality is that without *Batton* Counsel's groundwork and progression towards a credible threat of trial, the *Batton* Defendants would have had no reason to offer up $114 million.

Each of *Tuccori* Counsel's remaining arguments are only a distraction from this reality, and each quickly outs itself as a straw man, unsupported by fact, logic, or the law. At bottom, *Tuccori* Counsel's choice to rush to settlement rather than litigate ensures that the settlements are

[1] Capitalized terms have the same meaning as in *Batton* Counsel's and Plaintiffs' opening motion. *See* ECF No. 195 ("Motion or "Mot.") at 1 n.2.

procedurally and substantively unfair and should not be approved. But if the settlements are approved, the settlement fund exists because of *Batton* Counsel's work, and *Batton* Counsel are entitled to fees under controlling Seventh Circuit law.

## ARGUMENT

### I. It Is Improper to Defer *Batton* Counsel's Motion Until After Final Approval

To be sure, *Batton* Counsel request fees *in the alternative* to their objection. *See* ECF No. 207 ("Objection") at 20-26. *Batton* Counsel's Motion sets forth numerous cases demonstrating that *Batton* Counsel are entitled to compensation should the settlements be approved notwithstanding their objection. ECF No. 195 ("Mot.") at 8-11. *Tuccori* Counsel neither address these cases nor cite contrary cases of their own. ECF No. 209 ("Resp.") at 8-9.

Where, as here, different sets of attorneys "disagree among themselves about fees," "a blanket delegation to lead counsel is inappropriate." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 943–44 (N.D. Ill. 2022) (Lee, J.). It is particularly inappropriate for *Tuccori* Counsel, who are defending against breach of fiduciary duty and reverse auction allegations, to be given sole power to determine fees payable to the very counsel challenging their conduct. Rather than asking the fox to guard the henhouse, the district court must "resolve disputes" over the allocation of attorneys' fees. *In re Seresto Flea & Tick Collar Mktg., Sales Pracs. & Prods. Liab. Litig.*, 178 F.4th 1043, 1050 (7th Cir. 2026); *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279–80 (7th Cir. 2002) (the district judge is a "fiduciary of the class" who must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions"). And as *Tuccori* Counsel's own authority states, the proper time to challenge the allocation of fees is when Class Counsel make their fee motion (*Seresto Flea*, 178 F.4th at 1049)—in other words, now.

## II. *Batton* Counsel's Efforts Created, Maintained, and/or Enhanced the Common Fund

### A. The Settlements Exist Because of the *Batton* Cases

The efforts that *Tuccori* Counsel dismiss (at 1) as "tilting at windmills" include defeating ten motions to dismiss, issuing substantial discovery, producing and responding to discovery, engaging in dozens of meet and confers and several discovery hearings, and obtaining data from over 70 entities to develop a damages model with world-class experts. These efforts achieved an unbroken string of wins, defeating every *Batton* Defendant's motion to dismiss and driving the *Batton* Defendants to settlement here, sometimes within days of the decision. Objection at 9. The eight *Batton* Defendants who lost multiple motions to dismiss and faced looming expert reports and class certification paid an average of $14.25 million, while the 18 non-*Batton* defendants who faced no meaningful litigation pressure paid an average of $330,000—less than the expected cost of defense. *See Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir. 1998) ("A compromise for less than the costs of defense is a good working definition of a nuisance-value settlement."). The only defendants willing to put up real money were those who faced a ticking clock and mounting adverse decisions in the *Batton* Cases.

*Tuccori* Counsel say the "*Batton* Counsel's cases had no meaningful effect on the Settlements that Class Counsel achieved" because "*Batton* Counsel insisted on demanding compensation for homebuyers who already released their claims." Resp. at 5, 11-12. This is irrelevant as it would not erase the enormous efforts and successes of *Batton* Counsel on behalf of the homebuyer class members here. It is also patently false. *Batton* Counsel never demanded that any settlement negotiations include the potentially released claims. Ewing Decl. ¶¶ 5-6. Until RE/MAX did so in spring 2026, no *Batton* Defendant even asked *Batton* Counsel to negotiate the

narrower set of claims being settled here.[2] *Id.* When RE/MAX expressed interest in settling that narrower set of claims, *Batton* Counsel reached a settlement at a number that exceeded every settlement achieved by *Tuccori* Counsel, save one. *Id.* ¶ 7.

In a further attempt to wave away five years of work by *Batton* Counsel, *Tuccori* Counsel claim that this work consisted primarily of challenges to the release of buyer-side claims in the home seller settlements. Resp. at 4–5, 9–10. *Tuccori* Counsel conveniently omit that they initially sought to represent the very same class of homebuyers, just against a different set of defendants and three years later. *Tuccori* Counsel simply jettisoned the claims of those homebuyers who also sold homes in October 2025 when they became more difficult to litigate.

More importantly, this claim is yet another fabrication. *Batton* Counsel's "central project" has always been successfully prosecuting *homebuyers'* claims. The motion to dismiss decisions in the *Batton* Cases benefited *all* homebuyers. *Batton* Counsel engaged in extensive discovery to obtain relevant information from the home seller litigation as well as information relating specifically to homebuyer claims that was not produced in the home seller litigation. *Batton* Plaintiffs produced and responded to discovery and some sat for depositions, none of which was impacted by the scope of the homebuyer claims. The *Batton* experts used this information to develop a damages model for *all* homebuyers. Each and every one of these tasks was necessary regardless of the scope of the homebuyer class. Ewing Decl. ¶ 10. And if there were any doubt, the work *Batton* Counsel undertook in challenging the home seller settlement releases constituted less than 7.5% of *Batton* Counsel's total time in the *Batton* Cases, and *Batton* Counsel explicitly ***excluded*** that time in seeking reimbursement here. Mot. at 7 n.3; Ewing Decl. ¶ 9.

---

[2] Mindful of the confidentiality of mediation proceedings, *Batton* Counsel has not provided further detail here about its negotiations with *Batton* Defendants, but are prepared to make such submissions *in camera* at the Court's request.

*Tuccori* Counsel try to prove that this time was "wasted" by speculating that, had *Batton* Counsel prevailed in challenging the homeseller settlement releases, the claims of the buyer-only class would have been diluted. Resp. at 10. *Tuccori* Counsel contradict themselves. As an example of this purported dilution, they calculate (incorrectly) that *Batton* Counsel's Keller Williams settlement amounts to a $10 million distribution value to the buyer-only claims. Resp. at 5. But they previously claimed $10 million was "well in line with" their own *Batton* Defendant settlements. ECF No. 110 at 7. Moreover, *Tuccori* Counsel evidently see some value in *Batton* Counsel's work as they rely on *Batton* Counsel's expert to justify their settlements.[3] Resp. at 5 n.5.

Moreover, under *Tuccori* Counsel's logic, class actions should not exist at all. The addition of any class member necessarily "dilutes" the other class members' recovery, to the extent the defendant's resources are limited. That is why class members are offered the opportunity to opt out and pursue their claims on their own. But the point of class actions is to secure the best possible recovery for class members who are unable to litigate for themselves. *Batton* Counsel engaged independent allocation counsel to separately represent the interests of the two groups of class members (buyer-only and buyer-seller), and to value their respective claims with the information available at that time. *Tuccori* Counsel, in contrast, simply abandoned most of their homebuyer clients the moment their claims required additional work.

*Tuccori* Counsel's reliance on *Arkin v. Pressman, Inc.*, 38 F.4th 1001 (11th Cir. 2022), is likewise misplaced. *Arkin* holds that non-class counsel who benefit the class are entitled to fees

[3] *Tuccori* Counsel's use of *Batton* Counsel's expert estimation of the size of the buyer-only class is particularly problematic. The expert estimated that the buyer-only class consisted of 21–28% of all homeowners. *Batton I*, ECF No. 243-4 at ¶ 341. *Tuccori* Counsel used the lowest amount in this range, and then shaved off another 1%. Had *Tuccori* Counsel advocated for at least the midpoint rather than the lowest possible damages number, the *Batton* Defendants' settlements would have been tens of millions of dollars higher. If this is an example of *Tuccori* Counsel's advocacy for the buyer-only claims, it is no surprise that the *Batton* Defendants' settlements are too low.

when they preserve the bulk of claims through an early filing. The Eleventh Circuit affirmed the denial of fees to non-class counsel there because counsel forfeited that benefit by dismissing and refiling their case elsewhere. *Id.* at 1010–11. Here, *Batton* Counsel did not forfeit the benefit of their early filing, which is proven by *Tuccori* Counsel giving the *Batton* Defendants a release based on the filing of the *Batton* cases. The *Batton I* Court's observation remains: *Batton* Counsel has "done the bulk of the work here and done a tremendous job." ECF No. 195-1, Ex. A at 13:20-24.

### B. *Tuccori* Counsel's Additional Arguments Fail to Rebut the Fact that the *Batton* Cases Benefited the Settlements

First, *Tuccori* Counsel cannot escape the fact that the *Batton* Defendant settlements extend the duration of the settlements' releases to cover three times the damages that could have been recovered in this case.[4] Either the settlements include additional compensation directly attributable to the timely-filed *Batton* Cases, or *Tuccori* Counsel gave away years of valuable claims for free. The former requires compensation to *Batton* Counsel; the latter is a breach of fiduciary duty.

Second, as purported evidence that the *Batton* Cases had no impact on the *Batton* Defendant settlements, *Tuccori* Counsel claim they reached "comparable" settlements with the non-*Batton* Defendants. Resp. at 12. But they previously proclaimed that the *Batton* Defendants' settlements "in the aggregate are even stronger[.]" ECF No. 168 at 2. *Tuccori* Counsel cannot have it both ways. In fact, the actual numbers indicate the settlements are *not* comparable, for the non-*Batton* Defendants settled at what appears to be nuisance values. *See infra* p. 3.

Third, if the non-*Batton* Defendant settlements were comparable to the *Batton* Defendant settlements, this would only render the settlements more suspect. As Judge Hunt found during her

[4] As an example, Illinois's antitrust statute of limitations is four years. The challenged conduct ended in August 2024. *Tuccori* Counsel's filing against Anywhere in February 2026 permitted them to claim 30 months' worth of damages in Illinois within the statute of limitations. *Batton* Counsel's filing in January 2021, by contrast, permitted them to claim 91 months' worth of damages in Illinois within the statute of limitations—three times more.

final approval of the Keller Williams and RE/MAX settlements, the settlements reached in *Batton I* were "not likely at the outset of the Action" and "*the quality of legal service provided by [Batton] Counsel produced the Settlements.*" *Batton I*, ECF No. 352 (emphasis added). Yet, if this Court takes *Tuccori* Counsel at their word, *Tuccori* Counsel placed *no* value on the litigation leverage gained in the *Batton* Cases. This is contrary to how settlements normally work. Settlement values are generally expected to increase as the case progresses. *In re Stericycle Sec. Litig.*, 35 F.4th 555, 566 (7th Cir. 2022) (vacating fee award, noting "all other things being equal, a case that settled before the motion-to-dismiss stage, for instance, would be expected to result in a lower fee than a case that proceeded all the way to trial or beyond").[5] Indeed, of the *Batton* Defendants who previously discussed settlement, each is willing to pay higher settlement amounts now than those same Defendants offered *Batton* Counsel before they defeated motions to dismiss, acquired data, and disclosed a class-wide damages model. Ewing Decl. at ¶ 8. Ignoring the *Batton* Cases' leverage surely resulted in undervaluing the classes' claims. If *Tuccori* Counsel truly viewed *Batton* as irrelevant, the settlements should be rejected; if they did not, *Batton* Counsel deserve compensation for the significant value they created.

### C. *Tuccori* Counsel Fail to Rebut *Batton* Counsel's Request for One-Third of the *Batton* Defendant Settlement Fund

*Tuccori* Counsel do not dispute that one-third of a common fund is an appropriate fee award in a complex class action case (Mot. at 12-13) but contend that *Batton* Counsel should receive zero. Their arguments fail. First, *Batton* Counsel cannot be likened to the attorneys who did not move for fees in *Burnett* even though they had sued two of the opt-in defendants there. Resp. at

[5] *See also* Ellen M. Ryan & Laura E. Simmons, Cornerstone Research., *Securities Class Action Settlements:2013 Review and Analysis* 20 (2014) (concluding "Settlement amounts tend to increase as litigation progresses"), https://securities.stanford.edu/research-reports/1996-2013/Settlements-Through-12-2013.pdf; Jeffrey M. Senger, *Decision Analysis in Negotiation*, 87 Marq. L. Rev. 723, 733 (2004) (concluding settlement values should increase as litigation progresses).

12. Those two defendants paid less than 0.5% of the settlement fund combined; the litigation they were previously involved in was stayed since inception; the opt-in settlements occurred within six months of the original case filing; and the opt-ins were negotiated with the attorneys who prosecuted the case though trial. *See Friedman v. The Real Estate Board of N.Y.*, No. 1:24-cv-405. The attorneys who merely filed a complaint and did not seek fees are far more comparable to *Tuccori* Counsel than *Batton* Counsel.

*Tuccori* Counsel's further argument that *Batton* Counsel can only be awarded fees from any improvement in settlement values created by their objection is backwards. Resp. at 8–9. It is the *later*-filing counsel who are entitled only to fees resulting from incremental improvements created by their work. *See Reynolds*, 288 F.3d at 286 ("class counsel" who filed the *later* suit were the ones whose compensation "must be proportioned to the *incremental* benefits they confer on the class, not the total benefits"). This is the same principle described in *In re Trans Union Corp. Priv. Litig.*, 629 F.3d 741, 747 (7th Cir. 2011), where class counsel who arrived later to "realize" the value of litigation previously filed by others were entitled only to the market value of the limited services they provided, not the "surplus" that their services created. *Batton* Counsel are thus entitled to the market value for the services they provided to fully litigate the homebuyer claims, which required millions of dollars in expense and tens of millions of dollars in attorney time with significant risk of nonpayment.

*Tuccori* Counsel, in contrast, deserve no compensation because their reverse auction settlements harmed the class. Objection at 20–25. Nor did the opt-in mechanism help "create[] the impetus for the Settlements." Resp. at 11. The opt-in mechanism is merely a tool for initiating settlement discussions, and one rendered taboo by *Reynolds*. At the very most, the market value of the limited services *Tuccori* Counsel provided—mediation and settlement agreement drafting with

no risk of nonpayment—is the lodestar they incurred as to the *Batton* Defendants, but they have not provided sufficient information to determine that amount. Objection at 27–29.

## III. *Tuccori* Counsel's Attacks on *Batton* Counsel's Expenses and Lodestar Are Unfounded

Individual scrutiny of highly detailed line-item time entries is unnecessary when considering a fee request. *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). Yet, incredibly, *Tuccori* Counsel attack *Batton* Counsel's expense and lodestar submissions, which are supported by detailed summaries of time by timekeeper and expenses by category, despite *Tuccori* Counsel seeking $38 million in fees without *any* information whatsoever about their lodestar and expenses (likely because they are seeking an almost unheard of 5-10x lodestar).

Specifically, *Tuccori* Counsel characterize *Batton* Counsel's fee request as duplicative because *Batton* Counsel were awarded fees in connection with the Keller Williams and RE/MAX settlements. But that fee award was less than half of *Batton* Counsel's lodestar in that case and did not account for the benefits they provided the class with respect to the NAR and Anywhere settlements. Indeed, it is common for plaintiffs' counsel in large, multi-defendant cases with multiple settlements at different points in time to receive multiple fee awards. *See, e.g. Sullivan et al. v. Barclays et al.*, No. 1:13-cv-02811, ECF No. 435 (S.D.N.Y. May 18, 2018) (multiple fee awards to class counsel); *id.*, ECF No. 550 (S.D.N.Y. Nov. 15, 2022); *id.*, ECF No. 592 (S.D.N.Y. Nov. 1, 2023).

*Tuccori* Counsel also repeatedly tout their supposed "efficiency" compared to *Batton* Counsel's time and expenses, Resp. at 12, but a certain amount of speed and cost savings is entirely expected—and not to be rewarded—when counsel's involvement is limited solely to settling claims being litigated and settled elsewhere. After all, patent infringement is remarkably efficient, but the law discourages it because it dissuades innovation and risk taking (just as here).

With respect to *Batton* Counsel's expenses, *Tuccori* Counsel falsely claim the requested expenses are duplicative of expenses incurred in *Batton I*. Resp. at 14–15. *Batton* Counsel explicitly stated these expenses were incurred in *Davis*, *Lutz*, and *Batton II*. ECF No. 195-2 at ¶ 11; ECF No. 195-3 at ¶ 11. *Batton* Counsel's $1.3 million in unreimbursed expert expenses[6] were incurred preparing reports to be disclosed in *Lutz*, which were due April 15, 2026. That date was not moved until April 13, 2026, after most of the work had been performed. ECF No. 195-1 at ¶ 42. *Batton* Counsel could not ignore court-ordered deadlines because defendants might settle with attorneys who had no case against them in another district (from which they were previously dismissed for a lack of jurisdiction). Indeed, HomeServices' settlement here was not announced until April 16, 2026, and the court did not stay remaining deadlines until June 2026.

## IV. Modest Service Awards to the *Batton* Plaintiffs Are Proper

*Batton* Plaintiffs were the first to sue the *Batton* Defendants and the only ones to produce document and respond to discovery. As such, *Batton* Plaintiffs, like *Batton* Counsel, are the only ones to have performed work to assist in creating the litigation pressure that drove the settlements here. The modest request of $5,000 each is well justified. Mot. at 15.

## CONCLUSION

For these reasons, *Batton* Counsel and Plaintiffs request that, should the Court approve the *Batton* Defendant settlements, the Court grant *Batton* Counsel's motion.

[6] *Batton* Counsel will submit their out-of-pocket invoices and time entries to the Court upon request; if requested, *Tuccori* Counsel should be required to do the same.

Dated: October 1, 2026

Respectfully submitted,

*/s/ Randall P. Ewing*
George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Ryan Z. Cortazar (Ill. Bar No. 6323766)
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
(312) 641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Vincent Briganti (*pro hac vice*)
Margaret MacLean (*pro hac vice*)
Noelle Forde (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
(914) 997-0500
vbriganti@lowey.com
mmaclean@lowey.com
nforde@lowey.com

Steven M. Berezney (N.D. Ill. Bar No. 56091)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
(314) 241-4844
sberezney@koreintillery.com

*Attorneys for Batton Counsel and Batton Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, which will send notification of the same to all counsel of record in this matter.

*/s/ Randall P. Ewing, Jr.*